# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF ALABAMA
### NORTHERN DIVISION

| | | |
|---|---|---|
| TREVA THOMPSON, et. al., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | CIVIL ACTION NO. |
| v. | ) | **2:16-cv-783-WKW** |
| | ) | |
| STATE OF ALABAMA, et. al., | ) | |
| | ) | |
| Defendants. | ) | |

## MOTION FOR PRELIMINARY INJUNCTION AND BRIEF IN SUPPORT

J. MITCH MCGUIRE (ASB-8317-S69M)
MCGUIRE & ASSOCIATES, LLC
31 Clayton Street
Montgomery, AL 36104
(334) 517-1000
jmcguire@mandabusinesslaw.com

DANIELLE LANG (CA Bar No: 304450)
J. GERALD HEBERT (VA Bar No: 38432)
CAMPAIGN LEGAL CENTER
1411 K Street NW Suite 1400
Washington, DC 20005
(202) 736-2200
dlang@campaignlegalcenter.org
ghebert@campaignlegalcenter.org

JAMES U. BLACKSHER (ASB-2381-S82J)
P.O. Box 636
Birmingham, AL 35201
(205) 591-7238
jblacksher@ns.sympatico.ca

JESSICA RING AMUNSON (DC Bar No: 497223)
JENNER & BLOCK LLP
1099 New York Ave. NW, Ste. 900
Washington, DC 20001
(202) 736-6000
jamunson@jenner.com

PAMELA KARLAN (NY Bar No: 2116994)
STANFORD LAW SCHOOL
559 Nathan Abbott Way
Stanford, CA 94305
(650) 725-4851
karlan@stanford.edu

ADERSON B. FRANCOIS (DC Bar No: 498544)
INSTITUTE FOR PUBLIC REPRESENTATION
GEORGETOWN UNIVERSITY LAW CENTER
600 New Jersey Avenue NW
Washington, DC 20001
(202) 662-6721
abf48@georgetown.edu

ARMAND G. DERFNER (SC Bar No: 1650)
DERFNER & ALTMAN
575 King Street, Suite B
Charleston, S.C. 29403
(843) 723-9804
aderfner@derfneraltman.com

*Counsel for Plaintiffs and Plaintiff Class*

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ..........................................................................iv

INTRODUCTION ................................................................................. 1

FACTUAL BACKGROUND ................................................................... 4

ARGUMENT......................................................................................... 10

   I.  **Plaintiffs Are Likely to Succeed on the Merits of Their Claims of Arbitrary Disenfranchisement, Counts 6-10 of the Complaint.**.................. 11

   II.  **The Requested Relief is Appropriate to Remedy the Harms of Alabama's Unconstitutional System.** .............................................. 13

      1.  Alabama Must Reinstate Recently Denied HB 282 Voters to the Voter Registration List.................................................................. 15

      2.  Alabama Must Update Its Voting Materials to Advise Voters and Registrars of HB 282's Eligibility Requirements. ............................... 18

   III.  **The Balance of the Equities and Public Interest Weigh In Favor of the Requested Relief.** ...................................................................... 20

CONCLUSION ...................................................................................... 22

# TABLE OF AUTHORITIES

## CASES

*ACLU of Fla., Inc. v. Miami–Dade Cnty. Sch. Bd.*, 557 F.3d 1177 (11th Cir. 2009). 11

*Burdick v. Takushi*, 504 U.S. 428 (1992) .................................................................... 11

*Bush v. Gore*, 531 U.S. 98 (2000) (per curiam) .......................................................... 12

*Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532 (1985) ...................................... 11

Consent Decree, Doc. 67-1, *Ga. St. Conf. of the NAACP v. Hancock Cty. Bd. of Elections*, No. 5:15-cv-414-CAR (M.D. Ga. Mar. 1, 2017) ..................................... 17

*Cramp v. Bd. of Pub. Instruction of Orange Cnty., Fla.*, 368 U.S. 278 (1961).......... 12

*Fish v. Kobach*, 189 F. Supp. 3d 1107 (D. Kan. 2016)................................................ 22

*Harris v. Graddick*, 593 F. Supp. 128 (M.D. Ala. 1984)............................................ 21

*Hobson v. Pow*, 434 F. Supp. 362 (N.D. Ala. 1977)............................................. 13, 16

*Hunter v. Underwood*, 471 U.S. 222 (1985) ............................................................... 13

*League of Women Voters of N.C. v. North Carolina*, 769 F.3d 224 (4th Cir. 2014)4, 21

*Mathews v. Eldridge*, 424 U.S. 319 (1976)................................................................. 11

*Mo. St. Conf. of the NAACP v. Ferguson-Florissant Sch. Dist.*, 219 F. Supp. 3d 949 (E.D. Mo. 2016) ....................................................................................................... 18

*N.C. St. Conf. of the NAACP v. N.C. St. Bd. of Elections*, No. 1:16-cv-1274, 2016 WL 6581284 (M.D. N.C. Nov. 4, 2016).................................................................. 16, 21

*Obama for Am. v. Husted*, 697 F.3d 423 (6th Cir. 2012)............................................. 4

Order Regarding Agreed Interim Plan for Elections, *Veasey v. Abbott*, No. 2:13-CV-00193 (S.D. Tex. Aug. 10, 2016) ..................................................................... 18, 20

*Purcell v. Gonzalez*, 549 U.S. 1 (2006) ........................................................................ 4

*Palmer v. Braun*, 287 F.3d 1325 (11th Cir. 2002) ..................................................... 10

*Project Vote, Inc. v. Kemp*, 208 F. Supp. 3d 1320 (N.D. Ga. 2016)............................ 17

*Project Vote/Voting for America, Inc. v. Long*, 682 F.3d 331 (4th Cir. 2012)............ 17

*Reynolds v. Sims*, 377 U.S. 533 (1964) ........................................................ 21

*Richardson v. Ramirez*, 418 U.S. 24 (1974) ............................................... 13

*Screen v. Bankston*, 498 So. 2d 770 (La. Ct. App.), *writ denied*, 496 So. 2d 337 (La. 1986) ...................................................................................................... 16

*Swann v. Charlotte-Mecklenburg Bd. of Ed.*, 402 U.S. 1 (1971) ............................... 14

*U.S. Student Ass'n Found. v. Land,* 585 F. Supp. 2d 925 (E.D. Mich. 2008) ........... 16

*United States v. Alabama*, 857 F. Supp. 2d 1236 (M.D. Ala. 2012) ............... 16, 18, 21

*United States v. Georgia*, 892 F. Supp. 2d 1367 (N.D. Ga. 2012) ........... 18, 19, 20, 21

*United States v. Virginia*, 518 U.S. 515 (1996) ........................................... 14

*Veasey v. Abbott*, 830 F.3d 216 (5th Cir. 2016) ........................................... 18

*Williams v. Taylor*, 677 F.2d 510 (5th Cir. 1982) ......................................... 12

**STATUTES**

2017 Ala. Laws Act 2017-378 ................................................................... 1, 7

National Voter Registration Act, 52 U.S.C. §§ 20501 et seq. ......................... 15, 17, 19

Ala. Code § 17-1-3 .............................................................................. 20, 21

Ala. Code § 17-3-2 .................................................................................. 20

Ala. Code § 17-3-30.1 ................................................................................. 5

**OTHER AUTHORITIES**

Connor Sheets, *Registering felons to vote in jail: How a new Alabama law impacts voting rights, politics*, Alabama.com, June 29, 2017, http://www.al.com/news/index.ssf/2017/06/registering_to_vote_in_jail_ho.html. ... 6

Jason Johnson, *Felons play a role in Alabama's electorate*, Lagniappe Weekly, Oct. 19, 2016, https://lagniappemobile.com/felons-play-role-alabamas-electorate/ ........ 7

Joey Ripley, *New Alabama law more clearly defines which felons can lose their voting rights*, June 21, 2017, http://wrbl.com/2017/06/21/new-alabama-law-more-clearly-defines-which-felons-can-lose-their-voting-rights/ ....................................... 6

Josh Moon, *Committee working to restore felons' voting rights*, Montgomery Advertiser, Jan. 23, 2016,

http://www.montgomeryadvertiser.com/story/news/local/blogs/moonblog/2016/01/2 3/committee-working-restore-felons-voting-rights/79089626/. ............................... 5

Kendall Clinton, *Paul Lee: New felony voter law will eliminate confusion*, Dothan Eagle, May 25, 2017, http://www.dothaneagle.com/news/government/paul-lee-new-felony-voter-law-will-eliminate-confusion/article_05be90f4-41a0-11e7-a41e-cb604a4c97fe.html ....................................................................................... 6

Kim Chandler, *Alabama law could allow more felons to vote*, Associated Press, June 5, 2017, http://www.birminghamtimes.com/2017/06/alabama-law-could-allow-more-people-to-vote/. ........................................................................... 6, 7

Michele Gerlach, *Which felonies disqualify voters?*, The Andalusia Star-News, Mar. 10, 2017, http://www.andalusiastarnews.com/2017/03/10/which-felonies-disqualify-voters/ ...................................................................................... 6

*New law clears up voting confusion for Alabamians with a felony*, WSFA 12, May 24, 2017, http://www.wsfa.com/story/35512463/new-law-clears-up-voting-confusion-for-alabamians-with-a-felony. ........................................................... 6, 7

Sam Levine, *Alabama Won't Help Disenfranchised Citizens Understand If They Can Now Vote,* June 21, 2017, http://www.huffingtonpost.com/entry/alabama-moral- . 8

1 *Voting Rights Act: Evidence of Continued Need, Hearing Before the Subcom. on the Constitution of the H. Comm. on the Judiciary*, 109th Cong. 97 (2006) ................ 14

**INTRODUCTION**

Since 1996, Alabama has disenfranchised thousands of eligible voters under an arbitrary and discriminatory standard. As state officials, including Defendant Merrill, have repeatedly acknowledged, the prior system required individual county registrars to make subjective and contradictory determinations of citizens' eligibility to vote on an ad hoc basis. On May 25, Governor Ivey signed the Felony Voter Disqualification Act, House Bill 282 ("HB 282"), which seeks to put an end to this unconstitutional system by establishing a comprehensive list of crimes that "involve moral turpitude." 2017 Ala. Laws Act 2017-378 (attached as Ex. A). HB 282 has the potential to restore access to the franchise for thousands of eligible voters who should never have been denied their rights in the first place.

But without a few key actions by the State, many of these voters will continue to suffer the harms of Alabama's prior unconstitutional scheme and will be denied meaningful relief. After all, thousands of *eligible* voters have been affirmatively denied the right to vote under the unconstitutional system. As far as these citizens are concerned, nothing has changed. The State told each of them they could not register, and the State has not since told them otherwise. Under these circumstances, enfranchising voters on the pages of the Alabama State Code is not enough to remedy the harm. Defendants must ensure that they are enfranchised on the pages of the State's voter rolls as well.

Yet Defendants have refused to take *any* meaningful action to implement HB 282 and advise voters of their rights, including publicizing the new eligibility

requirements on the Secretary of State's website, updating voter registration forms, or issuing guidance to registrars. The next statewide election in Alabama is the special primary election for United States Senator on August 15, 2017. The registration deadline is July 31, 2017. Absent immediate relief from this Court, thousands of eligible voters risk losing the opportunity to vote in yet another election.

This motion for a preliminary injunction seeks relief solely for those voters whose voting rights under Section 177 of the Constitution have been affirmed by HB 282 (hereinafter "HB 282 voters"). Given the urgency of the upcoming deadline, Plaintiffs have also filed a concurrent motion to shorten Defendants' time to respond to one week, due July 7, 2017, and request that the Court set a hearing during the week of July 10, 2017 as soon as is practicable.

Pursuant to Federal Rule of Civil Procedure 65, Plaintiffs ask this Court to issue a preliminary injunction ordering Defendants to provide the following immediate and sensible relief to implement HB 282 and remedy the State's prior unlawful disenfranchisement of HB 282 voters:

(1) Provide notice of HB 282's voting eligibility standards on the Alabama Voter Registration Form and submit a change to the Election Assistance Commission to provide notice of HB 282's voting eligibility standards in Alabama's state-specific instructions on the Federal Voter Registration Form;

(2) Provide notice of HB 282's voting eligibility standards on the Secretary of State's website, and in any materials distributed by the Secretary of State regarding voting eligibility requirements;

(3) Reinstate recently denied HB 282 voters—voters whose registration applications were wrongfully denied or who were wrongfully struck from the voter registration rolls in the last two years, and whose eligibility was affirmed by HB 282—to the voter registration rolls, and provide them with individual notice of their eligibility to vote;

(4) Disclose all voter registration applicants and voter registrants denied the right to vote on the basis of conviction in the past two years;

(5) Provide mandatory training regarding the proper implementation of HB 282 for the upcoming imminent elections;[1]

(6) Implement a public education plan that will adequately educate voters with convictions who have been previously misinformed about their voting rights by state officials of their eligibility to vote; and

(7) Any other relief the Court deems just and proper.

Absent this relief, HB 282 cannot remedy the decades of misinformation and confusion wrought by the vague moral turpitude standard.

---

[1] On June 30, 2017, Defendants' counsel provided Plaintiffs with written guidance they have distributed to all county registrars. Plaintiffs 'counsel have not had an opportunity to carefully review this guidance for substance but Defendants' counsel has stated that this written guidance on HB 282 was given to all registrars via email.

The foregoing requests for relief only ask that the State ensure eligible voters are informed of their right to vote and are provided meaningful access to the franchise. Therefore, the public interest and balance of the equities weigh heavily in favor of this sensible and tailored relief. *See League of Women Voters of N.C. v. North Carolina*, 769 F.3d 224, 247–48 (4th Cir. 2014) ("By definition, '[t]he public interest ... favors permitting as many qualified voters to vote as possible.'" (quoting *Obama for Am. v. Husted*, 697 F.3d 423, 437 (6th Cir. 2012) and citing *Purcell v. Gonzalez*, 549 U.S. 1, 4 (2006) (the public has a "strong interest in exercising the fundamental political right to vote"))).

This relief will impose no meaningful burden on Defendant Merrill. As the State's chief election officer, he has a responsibility to take many of these actions and to provide guidance to voters and registrars regarding voter eligibility requirements. The State has no valid interest in withholding this vital information from voters or refusing notice to eligible voters previously misinformed of their rights. Ensuring that all eligible voters have a meaningful opportunity to exercise the franchise is in accord with the public interest, the mission of the Office of the Secretary of State, and the explicit stated purpose of HB 282.

## FACTUAL BACKGROUND[2]

Before passing HB 282, Alabama had no uniform system for the disenfranchisement of individuals with felony convictions. Individual county

---

[2] The factual allegations and legal framework underlying this motion are laid out in detail in the complaint, Doc. 1, and the lengthy motion to dismiss briefing, Docs. 43, 48, before this Court. For purposes of brevity, this brief focuses primarily on new facts relevant to the passage of HB 282 and this motion.

registrars from 1996 until the present have been tasked with deciding on an ad hoc basis whether convictions "involved moral turpitude," leading to a system of entirely arbitrary disenfranchisement in violation of the First and Fourteenth Amendments. *See* Complaint, Doc. 1, Counts 6-10.

If there were any doubt about this unconstitutional state of affairs, the text of HB 282 and statements made by Defendant Merrill and state legislators leading up to its passage erase it. HB 282 itself recognizes the arbitrariness of Alabama's current pre-HB 282 enforcement of Section 177's disenfranchisement provision: "Under general law, there is no comprehensive list of felonies that involve moral turpitude which disqualify a person from exercising his or her right to vote. Neither individuals with felony convictions nor election officials have a comprehensive, authoritative source for determining if a felony conviction involves moral turpitude and is therefore a disqualifying felony." Ala. Code § 17-3-30.1(b)(1)(b) (as enacted by HB 282).

In January 2016, in explaining the necessity of HB 282's passage, Defendant Secretary of State Merrill stated: "Right now, we have people in certain positions who are determining the eligibility of citizens to vote based on nothing more than their own interpretations of the law. That's not right. It's not fair."[3] Thus, Secretary Merrill concluded that HB 282 was necessary to "protect the right to vote for citizens of the state."[4] On May 24, 2017, he further explained the past unconstitutional system: "For example marijuana possession, they might list that as a crime of moral turpitude,

---

[3] Josh Moon, *Committee working to restore felons' voting rights*, Montgomery Advertiser, Jan. 23, 2016, http://www.montgomeryadvertiser.com/story/news/local/blogs/moonblog/2016/01/23/committee-working-restore-felons-voting-rights/79089626.
[4] *Id.*

whereas only distribution of that drug or that substance would really be considered a crime of moral turpitude."[5] After the law passed, Secretary Merrill said it was necessary because "registrars and election officials . . . don't know what a crime of moral turpitude is because different people have different interpretations."[6]

One of the main sponsors of the bill, Senator Cam Ward, explained: "What moral turpitude meant in Shelby County could have been something totally different in Talladega County."[7]  Other legislators reiterated the necessity of HB 282 in light of the complete lack of uniformity in felony disenfranchisement:

- "[Registrars are] not sure whether they should sign them up to vote or not. . . . That has been a problem in this state for many years." – Rep. Paul Lee (R-Dothan).[8]

- "Look at the constitution of 1901, there really was not a definition of moral turpitude. . . . . It was kind of lenient and open for interpretation, which led to a lot of individuals losing their voter rights. Some would say they shouldn't have based on the crimes they committed." – Rep. Chris Blackshear (R-District 80).[9]

- "As a result, boards of registrars across the state had their own definitions of moral turpitude. We needed to make it uniform." – Rep Mike Jones (R-Andalusia).[10]

---

[5] *New law clears up voting confusion for Alabamians with a felony*, WSFA 12, May 24, 2017, http://www.wsfa.com/story/35512463/new-law-clears-up-voting-confusion-for-alabamians-with-a-felony.

[6] Connor Sheets, *Registering felons to vote in jail: How a new Alabama law impacts voting rights, politics*, Alabama.com, June 29, 2017,
http://www.al.com/news/index.ssf/2017/06/registering_to_vote_in_jail_ho.html.

[7] Kim Chandler, *Alabama law could allow more felons to vote*, Associated Press, June 5, 2017, http://www.birminghamtimes.com/2017/06/alabama-law-could-allow-more-people-to-vote.

[8] Kendall Clinton, *Paul Lee: New felony voter law will eliminate confusion*, Dothan Eagle, May 25, 2017, http://www.dothaneagle.com/news/government/paul-lee-new-felony-voter-law-will-eliminate-confusion/article_05be90f4-41a0-11e7-a41e-cb604a4c97fe.html.

[9] Joey Ripley, *New Alabama law more clearly defines which felons can lose their voting rights*, June 21, 2017, http://wrbl.com/2017/06/21/new-alabama-law-more-clearly-defines-which-felons-can-lose-their-voting-rights.

[10] Michele Gerlach, *Which felonies disqualify voters?*, The Andalusia Star-News, Mar. 10, 2017, http://www.andalusiastarnews.com/2017/03/10/which-felonies-disqualify-voters.

Secretary Merrill confirmed repeatedly that the law was "not clear" and left the decisions regarding citizens' right to vote "up to the Board of Registrars"; that such uncertainty should not exist "when it comes to people being able to vote";[11] and that the law "sowed confusion"[12] which led to inconsistent results, such as the improper disenfranchisement for certain drug crimes.[13]

Recognizing this untenable system of disenfranchisement, Governor Ivey signed HB 282 on May 25, 2017. HB 282 defines "felony involving moral turpitude" for the first time and establishes that "a person is disqualified to vote" pursuant to Section 177 of the Constitution only if convicted of one of 46 types of criminal offenses, spanning from violent crimes such as murder, manslaughter, and rape, to property crimes such as theft and robbery. The effective date of HB 282 is August 1, 2017. 2017 Ala. Laws Act 2017-378, at § 3. Therefore, it will be in effect for the next election in Alabama, the August 15, 2017 special primary election for United States Senator.

Yet, since the passage of HB 282, Defendant Merrill has refused to take any of the steps necessary to remedy this prior unconstitutional system and ensure that all eligible voters have meaningful access to the franchise. A month after passage of HB 282, even the most facile implementation steps—such as updates to the State's website and registrations—have not been taken. Secretary Merrill reportedly said "he was unaware of people being wrongly told they couldn't vote," and that "he wasn't

---

[11] Jason Johnson, *Felons play a role in Alabama's electorate*, Lagniappe Weekly, Oct. 19, 2016, https://lagniappemobile.com/felons-play-role-alabamas-electorate.
[12] Kim Chandler, *supra* note 7.
[13] *New law clears up voting confusion for Alabamians with a felony*, *supra* note 5.

going to make an effort to focus on whose felony convictions will no longer disqualify them."[14] He further stated: "I'm not going to spend state resources dedicating to notifying a small percentage of individuals who at some point in the past may have believed for whatever reason they were disenfranchised."[15]

The reason, of course, that many individuals "believed" they were disenfranchised is that they were in fact disenfranchised: their voter registration applications were rejected or their names were removed from the voter registration rolls based on their convictions. In just the past several weeks, Plaintiffs' counsel has identified numerous eligible voters who were denied the right to vote under the prior unconstitutional system.

For example, John Doe[16] has prior felony convictions—such as possession of a forged instrument and possession of a controlled substance—that do not meet the definition of "moral turpitude" in HB 282. Yet when Mr. Doe attempted to register to vote in 2014, he received a letter from the Jefferson County Board of Registrars informing him that he was not eligible to vote because he had been convicted of a felony involving moral turpitude. *See* Ex. B.

Likewise, Mark Irby was convicted of possession of a controlled substance, a crime that does not involve moral turpitude under HB 282. He attempted to register to vote in person before the 2004 election, but was informed that he had a

---

[14] Sam Levine, *Alabama Won't Help Disenfranchised Citizens Understand If They Can Now Vote,* June 21, 2017, http://www.huffingtonpost.com/entry/alabama-moral-turpitude_us_594a8335e4b0177d0b8af45f.
[15] *Id.*
[16] Name redacted for privacy.

disqualifying felony conviction. Mr. Irby then applied for a Certificate of Eligibility to Vote ("CERV") in October 2013. In a bizarre response that only reinforces the prevalent confusion, he received a letter from the Board of Pardons and Paroles indicating that his crime was not one "involving moral turpitude"—but also that he was not eligible to vote until his fines (for his non-disqualifying crime) were paid. *See* Ex. C. Mr. Irby, an eligible voter without a disqualifying felony conviction, was twice told by the state that he could not exercise his right to vote, and has been denied that right in every election since at least 2004.

In addition to these individuals, Plaintiffs' counsel has already identified nearly three dozen likely eligible voters who have been unlawfully denied the right to vote. These are individuals with convictions for crimes that do *not* involve moral turpitude under HB 282 but who have nonetheless had their voter registration applications denied on the basis of a "disqualifying" felony conviction. Several of these individuals have attempted to have their rights restored through the CERV process, but have not yet been able to register because their applications are still pending or were rejected. This small sample, consisting of individuals who have had the support of organizations like Greater Birmingham Ministries in navigating the registration and CERV process, likely represents only the tip of the iceberg.

Shortly after the passage of HB 282, Plaintiffs' counsel sent opposing counsel a letter requesting the above-outlined relief, indicating that Plaintiffs believed such relief would resolve Counts 6-10 in this matter. *See* Ex. D. After two weeks, on June 23, 2017, opposing counsel indicated that the Secretary of State would not agree on

any terms regarding the implementation of HB 282. Counsel met and conferred on June 29, 2017 regarding this motion but Defendants could not commit to taking any defined action to implement HB 282. Based on Secretary Merrill's public statements and counsel's representations, it does not appear that he intends to engage in any voter education about HB 282 outside of attending a few events paid for, organized, and hosted by outside groups.

A month after passage, the Secretary of State's website does not include any information about HB 282 or the specific felony convictions that now disqualify otherwise eligible voters. *See* Ex. E. The Alabama voter registration form continues to ask voters to affirm that they have not been convicted of a "disqualifying felony" without further guidance, and the Alabama state-specific instructions for the federal form still ask voters to affirm that they have not been convicted of a "felony involving moral turpitude" without any information about the HB 282 crimes. *See* Exs. F, G. Essentially, the only way that potential voters with convictions can determine their eligibility to vote is to find the statute in the Alabama code or seek legal advice.

## ARGUMENT

The decision to issue a preliminary injunction lies within the sound discretion of the Court. *Palmer v. Braun*, 287 F.3d 1325, 1329 (11th Cir. 2002). To succeed on a motion for a preliminary injunction, Plaintiffs must demonstrate:

> (1) [they have] a substantial likelihood of success on the merits; (2) irreparable injury will be suffered unless the injunction issues; (3) the threatened injury to the movant[s] outweighs whatever damage the proposed injunction may cause the opposing party; and (4) if issued, the injunction would not be adverse to the public interest.

*ACLU of Fla., Inc. v. Miami–Dade Cnty. Sch. Bd.*, 557 F.3d 1177, 1198 (11th Cir. 2009).

## I.  Plaintiffs Are Likely to Succeed on the Merits of Their Claims of Arbitrary Disenfranchisement, Counts 6-10 of the Complaint.

Plaintiffs are likely to succeed on the merits of their claims challenging Alabama's standardless enforcement of the "moral turpitude" provision of Section 177. It is beyond reasonable debate that a system of widespread, arbitrary, and standardless disenfranchisement violates core First and Fourteenth Amendment principles. Thus, Plaintiffs are likely to succeed on their claims that:

(1) This standardless approach, coupled with the requirement that voters affirm that they do not have a conviction for a "disqualifying felony" to register to vote, imposed an undue burden on eligible voters with convictions because they could not reasonably determine their eligibility to register to vote (Counts 6 and 7), *see Burdick v. Takushi*, 504 U.S. 428, 434 (1992) (holding that when the right to vote is "subjected to 'severe' restrictions, the regulation must be narrowly drawn to advance a state interest of compelling importance");

(2) This standardless approach, administered by individual untrained registrars without a pre-deprivation hearing, had a high risk of erroneous deprivation of the fundamental right to vote and therefore violated potential voters' procedural due process rights (Count 8), *see Mathews v. Eldridge*, 424 U.S. 319, 335 (1976) (holding that the procedural due process inquiry balances the nature of the right, the risk of erroneous deprivation, and the government's interests); *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 542 (1985) ("[T]he root requirement of the Due Process

Clause" is "that an individual be given an opportunity for a hearing *before* he is deprived of any significant property interest." (quotation marks omitted));

(3) This standardless approach to the "moral turpitude" provision rendered it unconstitutionally vague (Count 9), *see Cramp v. Bd. of Pub. Instruction of Orange Cty., Fla.*, 368 U.S. 278, 287 (1961) ("The vice of unconstitutional vagueness is further aggravated where, as here, the statute in question operates to inhibit the exercise of individual freedoms affirmatively protected by the Constitution."); and

(4) This standardless approach led to arbitrary disenfranchisement of voters in violation of the core protections of the Equal Protection Clause (Count 10), *see Bush v. Gore*, 531 U.S. 98, 105-06 (2000) (per curiam) ("The recount mechanisms . . . do not satisfy the minimum requirement for nonarbitrary treatment of voters necessary to secure the fundamental right. . . . The problem inheres in the absence of specific standards to ensure its equal application."), *Williams v. Taylor*, 677 F.2d 510, 516 (5th Cir. 1982) ("A state may make a completely arbitrary distinction between groups of felons so as to work a denial of equal protection with respect to the right to vote when it administers a statute, fair on its face, with an unequal hand.").

Plaintiffs detailed the well-established legal support for their constitutional claims regarding the standardless enforcement of the "moral turpitude" provision in their opposition to Defendants' motion to dismiss and do not repeat it in full here. *See* Opp. to Mot. to Dismiss, Doc. 48, at 34-68. Any possible factual doubts regarding the lack of uniformity prior to HB 282 are conclusively resolved by HB 282's acknowledgment of the inadequacy of the prior system, as well as the statements by

Defendant Merrill and by numerous legislators, including sponsors of HB 282. *See supra* pages 6-7.

Regardless of the precise reach of *Richardson v. Ramirez*, 418 U.S. 24 (1974), it cannot possibly excuse the widespread, arbitrary, and standardless disenfranchisement of individuals based on the inherently subjective determinations of individual registrars that prevailed in Alabama for the last twenty years, *see id.* at 56 (remanding the question of whether California's felony disenfranchisement provision had "such a total lack of uniformity in county election officials' enforcement . . . as to work a separate denial of equal protection"). The Supreme Court has made clear that felony disenfranchisement laws are still subject to Equal Protection Clause scrutiny if they violate that clause's anti-discrimination principle. *See Hunter v. Underwood*, 471 U.S. 222, 233 (1985); *see also Hobson v. Pow*, 434 F. Supp. 362, 367 (N.D. Ala. 1977) ("No compelling, or even rational, state policy has been suggested to explain why conviction of men for assault and battery against the spouse is a cause for disqualification while the conviction of women for the same offense is not disqualifying.").

Because Alabama's system of disenfranchisement unquestionably—and admittedly—led to the arbitrary deprivation of fundamental rights, Plaintiffs are likely to succeed on their above-listed claims.

## II. The Requested Relief is Appropriate to Remedy the Harms of Alabama's Unconstitutional System.

HB 282 provides a roadmap for Alabama to correct the harms of its prior unconstitutional system and extend the right to vote in a uniform manner. Yet HB

282 alone cannot remedy these past wrongs. The requested relief is appropriate to remedy the State's erroneous deprivations of rights and ensure that HB 282 voters have an equal opportunity to participate in this upcoming election and all future elections. As detailed below, the requested relief is in accord with relief ordered by other federal courts addressing similar claims.

As with all voting violations, Alabama will never be able to remedy fully the harms imposed by this decades-long unconstitutional system of disenfranchisement. 1 *Voting Rights Act: Evidence of Continued Need, Hearing Before the Subcomm. on the Constitution of the H. Comm. on the Judiciary*, 109th Cong. 97 (2006) (noting that harmed voters cannot change past electoral outcomes, and the benefits of incumbency adhere to those elected under discriminatory procedures). Nonetheless, Plaintiffs are entitled to an effective and meaningful remedy that seeks to place harmed voters in "the position they would have occupied in the absence of [the unconstitutional action]." *United States v. Virginia*, 518 U.S. 515, 547 (1996). This Court has broad equitable powers to design an appropriate remedy for the harms imposed by this system. *Swann v. Charlotte-Mecklenburg Bd. of Ed.*, 402 U.S. 1, 15 (1971) ("Once a right and a violation have been shown, the scope of a district court's equitable powers to remedy past wrongs is broad, for breadth and flexibility are inherent in equitable remedies.").

By requiring Alabama to provide adequate notice and education to voters and reinstate eligible voters previously unlawfully rejected by state officials, this Court

can provide an equitable, reasonable, and tailored remedy for the constitutional wrongs described above.

1. **Alabama Must Reinstate Recently Denied HB 282 Voters to the Voter Registration List.**

For eligible voters that were recently denied the right to vote based on their convictions under the prior system, the most straightforward and direct remedy is their reinstatement to the voter registration rolls and an accompanying notice of that reinstatement. This would include all HB 282 eligible voters whose voter registration applications were denied or whose names were purged from the voter registration list in the last two years based on a felony conviction not listed in HB 282.

While the harms clearly go back more than two years, the requested relief is reasonably tailored based on the mandatory record-keeping requirements of the National Voter Registration Act ("NVRA"). *See* 52 U.S.C. § 20507(i)(1) (requiring maintenance of all voter registration records, including denials and purges, for at least two years). Therefore, the Secretary of State must have these records available.

Individualized restoration and notice is appropriate for these individuals because they already took all the necessary steps to vote and yet were denied the right to vote, after being told by the State (incorrectly) that their convictions were disqualifying. *See, e.g.,* Ex. B (notice to individual of disqualifying conviction). These individuals should not have to take any further steps to register to vote and, given the wrongful notices of disqualification they received, they will have no reason to believe the State will allow them to vote absent corrective notice. In other words, restoration of an erroneous deprivation of a right is meaningless if the individual is

not advised of that restoration. *See, e.g, United States v. Alabama*, 857 F. Supp. 2d 1236, 1243 (M.D. Ala. 2012) ("[M]erely extending the deadline, or agreeing to accept ballots after the State's extended March 21 deadline, is ineffective if voters do not know that ballots sent by [the] election date and received by March 31 will actually be counted.").

For these reasons, courts in similar cases have ordered the reinstatement of voters wrongfully excluded or removed from voter registration lists, accompanied by adequate notice. Most applicably, in *Hobson v. Pow*—an Alabama felon disenfranchisement case striking down the constitutional provision disenfranchising those convicted of "assault and battery on the wife" on gender discrimination grounds—the district court ordered the boards of registrars to "reinstate all voters purged under the 'assault and battery on the wife' provision and to notify all members of the plaintiff class who have been purged." 434 F. Supp. at 368; *see also N.C. St. Conf. of the NAACP v. N.C. St. Bd. of Elections*, No. 1:16-cv-1274, 2016 WL 6581284 (M.D.N.C. Nov. 4, 2016) (ordering the immediate restoration of all improperly purged voters); *U.S. Student Ass'n Found. v. Land,* 585 F. Supp. 2d 925, 950 (E.D. Mich. 2008) ("What the defendants must do, however, is restore the cancelled registrations to some status that will not by itself, as their current status does, require the rejection of a ballot cast by these voters."); *Screen v. Bankston*, 498 So. 2d 770, 772 (La. Ct. App.), *writ denied*, 496 So. 2d 337 (La. 1986) ("[T]he Court makes the rule absolute and issues herewith a writ of mandamus directing the defendant to restore the voter registration and voting rights of all voters illegally removed from the registration

records [and] directs the defendant to advertise these names appropriately . . . as having been restored to the voting rolls."); Consent Decree, Doc. 67-1, *Ga. St. Conf. of the NAACP v. Hancock Cnty. Bd. of Elections*, No. 5:15-cv-414-CAR (M.D. Ga. Mar. 1, 2017) (agreeing to the restoration of improperly purged voters to the registration list and the provision of individualized notice to those voters).

Plaintiffs also request that Defendants disclose the list of all voter applicants previously purged or denied based on convictions in the last two years, so that Plaintiffs Greater Birmingham Ministries and class counsel can engage in further targeted outreach and education to potentially affected HB 282 voters. Since these records are both discoverable and subject to public disclosure pursuant to the NVRA, this request imposes no additional burden on Defendants. 52 U.S.C. § 20507(i)(1) (requiring public disclosure of "all records concerning the implementation of programs and activities conducted for the purpose of ensuring the accuracy and currency of official lists of eligible voters"); *Project Vote/Voting for America, Inc. v. Long*, 682 F.3d 331, 336 (4th Cir. 2012) (holding that Section 8's public disclosure mandate "unmistakably encompasses completed voter registration applications"); *Project Vote, Inc. v. Kemp*, 208 F. Supp. 3d 1320, 1342-43 (N.D. Ga. 2016) (requiring the State to disclose data regarding changes in individual voter registration status, letters to applicants regarding those changes in status, the "specific reason why applicants" were rejected, and other individualized data).

## 2. Alabama Must Update Its Voting Materials to Advise Voters and Registrars of HB 282's Eligibility Requirements.

As discussed above, neither Alabama's state nor federal voter registration form has been updated to reflect HB 282's eligibility criteria nor are those criteria available anywhere on the Secretary of State's AlabamaVotes.gov website. Indeed, the Secretary of State has not issued any public guidance on HB 282's eligibility criteria.

Given the nature of the public and widespread harms caused by voting rights violations, public education and notice requirements are a hallmark of voting rights remedies. *Veasey v. Abbott*, 830 F.3d 216, 256, 271-72 (5th Cir. 2016) (noting "the State's lackluster educational efforts resulted in additional burdens on Texas voters" and directing the district court to "consider the necessity of educational and training efforts" in fashioning a remedy for the affected voters);[17] *United States v. Georgia*, 892 F. Supp. 2d 1367, 1376 (N.D. Ga. 2012) (requiring a "public awareness campaign through direct notice and use of certain media" to remedy violation of the Uniformed and Overseas Citizens Absentee Voting Act of 1986); *Alabama*, 857 F. Supp. 2d at 1243 ("The court's injunction requires broad notice be provided to inform, to the greatest extent possible, UOCAVA voters that their ballots can be received by March 31 instead of March 21, as it stood before the court's order."); *Mo. St. Conf. of the NAACP v. Ferguson-Florissant Sch. Dist.*, 219 F. Supp. 3d 949, 962 (E.D. Mo. 2016)

---

[17] On remand, Texas agreed to an interim order requiring Defendants to "develop a detailed voter education plan, including timetables, for the November 2016 general election" requiring the expenditure of at least 2.5 million dollars. Order Regarding Agreed Interim Plan for Elections, *Veasey v. Abbott*, No. 2:13-CV-00193 at *3 (S.D. Tex. Aug. 10, 2016).

(requiring a "comprehensive voter education program" as part of Section 2 Voting Rights Act remedy).

Plaintiffs' request that Defendant Secretary of State take the necessary steps to provide voter education sufficient to ensure that HB 282 can serve as a meaningful remedy for the prior unconstitutional system of arbitrary disenfranchisement. First, the Secretary of State must update the state and federal voter registration forms to inform voters of HB 282's eligibility requirements, so that voters can determine their eligibility at the point of voter registration. As discussed above, the current forms provide voters with convictions no better guidance on their eligibility than they did before the passage of HB 282. They essentially require individuals to seek legal counsel to register to vote. This is plainly untenable. The current forms perpetuate the harms of a decades-long vague and arbitrary system. They also run afoul of the NVRA's requirement that registration forms state each eligibility requirement. 52 U.S.C. §§ 20504(c)(2)(C)(i), 20506(a)(6)(A)(i)(I), 20508(b)(2)(A).

Second, Plaintiffs request that the Secretary of State feature information about HB 282's requirements on AlabamaVotes.gov. *See, e.g., Georgia*, 892 F. Supp. 2d at 1380. The current instructions on the website only tell voters that they are ineligible if they have been convicted of a "disqualifying felony," without any guidance regarding the disqualifying convictions under HB 282.

Third, Plaintiffs request that the Court order Defendants to engage in a robust voter education program akin to the ones ordered in the above-cited cases. That program should include, at minimum, (1) notice of HB 282's requirements via daily

newspapers of general circulation in the State, radio, and television; and (2) development and dissemination of educational materials for registrars and community organizations to use. *Id.*

Finally, Defendant Merrill must provide immediate and mandatory training to local registrars regarding the requirements of HB 282. For decades, local registrars—who are not required to have any legal training, Ala. Code § 17-3-2(a)—have been left to their own devices in enforcing Section 177's "moral turpitude" provision. As Secretary of State, Defendant Merrill is the State's chief elections official and is charged with "provid[ing] uniform guidance for election activities." Ala. Code § 17-1-3. Absent immediate guidance and training of the local registrars, the risk of continued haphazard and arbitrary disenfranchisement in this upcoming election is high. Therefore, relief requiring immediate guidance and training is appropriate. *See Georgia*, 892 F. Supp. 2d at 1379 (requiring training of county election officials); Order Regarding Agreed Interim Plan for Elections, *Veasey v. Abbott*, No. 2:13-CV-00193 at *3 (S.D. Tex. Aug. 10, 2016) (requiring a "detailed election official training program for the November 2016 general election").

## III. The Balance of the Equities and Public Interest Weigh In Favor of the Requested Relief.

Plaintiffs satisfy the remaining requirements for a preliminary injunction: Plaintiffs face irreparable harm absent relief, and the balance of equities favors relief, as does the public interest.

Eligible HB 282 voters plainly face irreparable injury if the State does not take these commonsense steps to implement HB 282, correct recent unlawful voter

registration purges and application denials, and educate voters about HB 282's eligibility requirements. The right to vote is fundamental and denial or abridgment of the right to vote is always an irreparable injury. *See, e.g., Harris v. Graddick*, 593 F. Supp. 128, 135 (M.D. Ala. 1984) ("[A]ny illegal impediment to the right to vote, as guaranteed by the U.S. Constitution or statute, would by its nature be an irreparable injury." (citing *Reynolds v. Sims*, 377 U.S. 533, 585 (1964)). Once voters lose the opportunity to participate in an election, "there can be no do-over and no redress." *League of Women Voters*, 769 F.3d at 247. Without these steps, the passage of HB 282 will be largely an empty gesture because eligible voters previously treated as ineligible under the pre-HB 282 unconstitutional system will have no way to know about HB 282. *See Alabama*, 857 F. Supp. 2d at 1243.

Meanwhile, Defendants will not be harmed by this relief. It falls squarely within the Secretary of State's responsibilities to update the voter registration forms, AlabamaVotes.gov, and all other voter education materials, both to reflect current Alabama law and to provide registrars with "uniform guidance" on the administration of the Election Code. *See* Ala. Code § 17-1-3. While individual notice and reinstatement will require some minor dedication of state resources, the Secretary of State already has all the necessary records to complete this task. Ultimately, "the potential hardships that [Alabama] might experience are minor when balanced against the right to vote, a right that is essential to an effective democracy." *Georgia*, 892 F. Supp. 2d at 1377; *see also N.C. NAACP*, 2016 WL 6581284 at *10 (concluding that reinstatement of voters would impose a "minimal" burden on the state and that

"any burden imposed by virtue of these likely violations must be borne by the State and the counties and not by the wrongfully purged voter").

Finally, the public interest weighs heavily in favor of the requested relief. Plaintiffs do not ask this Court to enjoin any state law at this time and seek only full implementation of governing Alabama law. Further, "'[f]avoring enfranchisement and ensuring that qualified voters exercise their right to vote is always in the public interest." *Id.* at 11 (quoting *Fish v. Kobach*, 189 F. Supp. 3d 1107, 1151-52 (D. Kan. 2016)).

## CONCLUSION

For the reasons discussed above, Plaintiffs respectfully request the Court to grant their motion for a preliminary injunction and order the requested relief outlined above. Plaintiffs attach a proposed order for the Court to consider.

June 30, 2017

Respectfully Submitted,


/s/ *Danielle Lang*
Danielle Lang (CA Bar: 304450)
J. Gerald Hebert (VA Bar: 38432)
Campaign Legal Center
1411 K Street NW Suite 1400
Washington, DC 20005
(202) 736-2200
dlang@campaignlegalcenter.org
ghebert@campaignlegalcenter.org

J. Mitch McGuire (ASB-8317-S69M)
McGuire & Associates LLC
31 Clayton Street
Montgomery, AL 36104
(334) 517-1000
jmcguire@mandabusinesslaw.com

James U. Blacksher (ASB-2381-S82J)
P.O. Box 636
Birmingham, AL 35201
(205) 591-7238
jblacksher@ns.sympatico.ca

Jessica Ring Amunson (DC Bar: 497223)
Jenner & Block LLP
1099 New York Ave. NW, Ste. 900
Washington, DC 20001
(202) 736-6000
jamunson@jenner.com

Pamela Karlan (NY Bar No: 2116994)
Stanford Law School
559 Nathan Abbott Way
Stanford, CA 94305
(650) 725-4851
karlan@stanford.edu

Aderson B. Francois (DC Bar No: 498544)
Institute for Public Representation
Georgetown University Law Center
600 New Jersey Avenue NW
Washington, DC 20001
(202) 662-6721
abf48@georgetown.edu

Armand Derfner (SC Bar No: 1650)
Derfner & Altman
575 King Street, Suite B
Charleston, S.C. 29403
(843) 723-9804
aderfner@derfneraltman.com

*Counsel for Plaintiffs and Plaintiff Class*

**CERTIFICATE OF SERVICE**

I hereby certify that, on June 30, 2017, I electronically filed the foregoing with

the Clerk of the Court using the CM/ECF system, which will send notification of such

filing to the following:

Andrew L Brasher
Office of the Attorney General
501 Washington Ave
Montgomery, AL 36130
334-353-2609
Fax: 334-242-4891
Email: abrasher@ago.state.al.us

James William Davis
State of Alabama
Office of the Attorney General
P O Box 300152
Montgomery, AL 36130-0152
334-353-1356
Fax: 334-353-8440
Email: jimdavis@ago.state.al.us

Misty Shawn Fairbanks Messick
Office of the Attorney General
501 Washington Avenue
Montgomery, AL 36130-0152
334-353-8674
Fax: 334-353-8440
Email: mmessick@ago.state.al.us

/s/ *Danielle Lang*
Danielle Lang