## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF ALABAMA
## NORTHERN DIVISION

| | |
|---|---|
| Treva Thompson, *et al.*, | |
| Plaintiffs, | **PLAINTIFFS' SUPPLEMENTAL CLASS-ACTION COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF** |
| v. | |
| John H. Merrill, in his official capacity as Secretary of State, *et al.*, | Civil Action No. 2:16-cv-783-WKW-CSC |
| Defendants. | |

Pursuant to Federal Rule of Civil Procedure 15(d), Plaintiffs file this Supplemental Complaint setting forth events that occurred after the filing of their Original Complaint on September 26, 2016 and pleading additional claims based on those events. This supplemental complaint is filed in addition to, not in replacement of, Plaintiffs' original complaint. Plaintiffs allege as follows.

### *Supplemental Factual Allegations*

1. Plaintiffs brought this case challenging Alabama's laws and procedures respecting felony disenfranchisement pursuant to the U.S. Constitution, 42 U.S.C. §1983, and the Voting Rights Act, 52 U.S.C. §10301.

2. Section 177(a) of Alabama's Constitution affirmatively guarantees the right to vote of Alabamians that meet the age, citizenship, residency, and registration qualifications and are not disqualified on the basis of Section 177(b). Section 177(a) and Section 177(c) charge the Alabama Legislature with implementing Section 177's guarantees and restrictions through statute.

3. As discussed at length in Plaintiffs' original complaint, Section 177(b) of the Alabama Constitution disenfranchises individuals "convicted of a felony involving moral turpitude" until their political rights are restored. Ala. Const. art. VIII, §177(b).

4. However, Section 177 of the Alabama Constitution does not specify any felonies "involving moral turpitude," and the Legislature did not do so until after the filing of Plaintiffs' original complaint.

5. Until the 2017 legislative session, any guidance on what felonies involved "moral turpitude" was non-exhaustive, non-authoritative, vague, and internally inconsistent.

6. In May 2017, the Alabama Legislature enacted and Governor Ivey signed into law the Felony Voter Disqualification Act, House Bill 282 ("HB 282"). 2017 Ala. Laws Act 2017-378, codified at Ala. Code § 17-3-30.1.

7. HB 282 conceded that, until its passage, "there [was] no comprehensive list of felonies that involve moral turpitude which disqualify a person from exercising his or her right to vote. Neither individuals with felony convictions nor election officials ha[d] a comprehensive, authoritative source for determining if a felony conviction involve[d] moral turpitude and [was] therefore a disqualifying felony." Ala. Code § 17-3-30.1(b)(1)(b).

8. HB 282 provides a list of forty-six disqualifying crimes tied to specific Alabama criminal code violations pursuant to Section 177. Ala. Code § 17-3-30.1(c).

9. This list includes a range of crimes not ordinarily subject to the same penalties, from various degrees of homicide and torture to non-violent trafficking in cannabis to simple non-violent theft of property and forgery convictions. *Id.*

10. HB 282 does not include bribery, perjury, abuse of public office, and other related crimes meaningfully connected to the act of voting on its list of disqualifying convictions. Yet, these were the only crimes that could take away citizens' "privilege of free suffrage" upon conviction, Ala. Const. of 1819, art. VI, § 5, in the 1819 and 1861 Alabama Constitutions, when only "male white person[s] . . . [were] entitled to vote." Ala. Const. of 1861, art. III, § 5. *See also*, Ala. Const. of 1819, art. III, § 5; Ala. Const. of 1861, art. VI, § 5.

11. On March 9, 2017, Representative John Knight entered the following statement into the House Journal: "HB 282 in its current form would enfranchise some of our citizens, so we can support it as a step in the right direction. But 'moral turpitude' was placed in the Alabama Constitution for the purpose of disfranchising African Americans, and it needs to be repealed altogether. We ask the State of Alabama to release to the public complete information about the racial impact of the crimes that this bill defines to be 'moral turpitude.'"

12. HB 282 is written in the present tense. It states that "a person is disqualified to vote by reason of conviction of a felony involving moral turpitude *only when* convicted" of the disqualifying crimes and "[t]he felonies involving moral turpitude listed in subsection (c) are the only felonies for which a person, *upon conviction,* may be disqualified from voting." Ala. Code § 17-3-30.1(c), (e) (emphasis added).

13.  The effective date of HB 282 was August 1, 2017. 2017 Ala. Laws Act 2017-378, § 3.

14.  Despite the prospective language in HB 282, the Secretary of State has unilaterally determined that HB 282, the only statute that implements Section 177, shall be applied retroactively to those convicted of crimes prior to HB 282's effective date. The Secretary of State has instructed registrars to purge voters and reject voter registrants who have convictions listed on HB 282 even if those convictions occurred prior to HB 282's passage and effective date.

15.  As a result of the Secretary of State's unilateral retroactivity determination, Plaintiffs Treva Thompson, Melissa Swetnam, Mario Dion Yow, Jennifer Zimmer, Timothy Lanier, Pamela King, and all other similarly situated individuals whose HB 282-enumerated convictions predated the HB 282's effective date are ineligible to register and vote, unless they succeed in having those rights specifically restored.

16.  As a result of HB 282, Plaintiffs Antwoine Giles and Laura Corley are now eligible to vote.

17.  Since the filing of the original complaint, Plaintiffs Anna Reynolds has received a Certificate of Eligibility to Register to Vote (CERVs) and is now eligible to vote. Plaintiff Larry Joe Newby Newby has also applied for his CERV and the Board has informed him through counsel that it will be approved.

18.  Despite HB 282's significant change to the law regarding voter eligibility, the Secretary of State has not updated the State of Alabama Mail-In Voter Registration Form ("State Form"), or alerted the Election Assistance Commission of these

eligibility changes, or requested changes to the state-specific instructions for Alabama on the National Mail Registration Form ("Federal Form").

19. The State Form informs each potential voter that to register to vote: "you must: . . . [n]ot have been convicted of a disqualifying felony, or if you have been convicted, you must have had your civil rights restored." The State Form also requires each potential voter to affirm under penalty of perjury: "I am not barred from voting by reason of a disqualifying felony conviction." The State Form provides no information regarding HB 282's list of "disqualifying convictions," or how to determine whether a conviction is disqualifying.

20. A likely and reasonable interpretation of the phrase "disqualifying felony conviction," without additional information, is that felony convictions are always disqualifying, rather than a subset of felony convictions are disqualifying.

21. The Alabama state-specific instructions on the Federal Form inform each potential voter that to register to vote: "you must: . . . not have been convicted of a felony involving moral turpitude (or have had your civil and political rights restored)." The instructions do not refer the voter to any information regarding what felonies involve "moral turpitude."

22. The Federal Form requires voters to swear/affirm that they have reviewed the state-specific instructions in the Federal Form and that they meet the eligibility requirements of their state.

23. On December 26, 2017, this Court entered a Memorandum Opinion and Order granting and denying, in part, Defendants' motion to dismiss this action in its entirety.

24. The Order dismissed Counts 3, 4, 5, 6, 7, 8, 9, 10, 14, and 15 of the original complaint on various grounds. With respect to Counts 6, 7, 8, 9, and 10, this Court held that HB 282, as described herein, mooted Plaintiffs' claims. This Court denied Defendants' motion to dismiss as to Counts 1 and 2, alleging that Section 177 was enacted and maintained with discriminatory intent; Count 11, alleging that Section 177's application violates the *Ex Post Facto* Clause; Count 12, alleging that Section 177's application violates the U.S. Constitution's prohibition on cruel and unusual punishment; and Count 13, alleging that Alabama Code Section 15-22-36.1's requirement that individuals pay all fines and fees in order to restore their right to vote violates the Fourteenth Amendment, at least as applied to those who cannot afford to pay their fines and fees.

25. Without waiving their right to appeal the dismissal of their other claims at the appropriate time, Plaintiffs submit this Supplemental Complaint to supplement only their allegations with respect to their remaining claims in light of HB 282 and to add new claims that have arisen in light of HB 282 and Defendant Merrill's improper retroactive implementation of it.

### Additional Parties

26. Plaintiff Darius Gamble is a black 42-year-old citizen of the United States who resides in Gardendale, Alabama, in Jefferson County. In or around 2008,

Plaintiff Gamble was convicted of trafficking marijuana in violation of Alabama Code Section 13A-12-231. Trafficking in cannabis is a disqualifying conviction under HB 282. Plaintiff Gamble's conviction was entered years before the passage of HB 282, but the Secretary of State considers his conviction disqualifying. Plaintiff Gamble's conviction for trafficking in cannabis did not appear on *any* of the prior lists of potentially disqualifying crimes, including Alabama Code Section 15-22-36.1(g), the 2005 Attorney General Opinion, Att'y Gen Op. No. 2005-092, 2005 WL 1121853, and the 2007 Administrative office of Courts list of "disqualifying" crimes, *see* Ex. A to Doc. 1.

27.  Plaintiff Gamble meets all the requirements for a CERV, except the payment of all legal financial obligations. In or around 2014, after the completion of his probation, Mr. Gamble applied for a CERV. His CERV application was denied based on his outstanding fines and fees. At the time of his conviction, the court imposed a $50,000 fine on Plaintiff Gamble. Ala. Code § 13-A-12-231. Mr. Gamble has regularly paid monthly installments of $25 to $50 toward his fine. Nonetheless, his outstanding fines have been compounded by a thirty percent collection fee. Ala. Code § 12-17-225.4. He currently owes $63,073.30 in fines and fees. He has no outstanding restitution. All of his outstanding legal obligations are to the State. Mr. Gamble is not financially able to pay his outstanding fines and fees in full at this time or anytime in the foreseeable future. His inability to pay these fines and fees makes him ineligible for a CERV that would restore his voting rights. Mr. Gamble wishes to vote in the 2018 and future elections.

### *Additional Party Allegations*

28. In addition to its initial allegations, organizational plaintiff Greater Birmingham Ministries ("GBM") alleges the following.

29. As a result of Defendant Merrill's implementation of HB 282 pursuant to Section 177(b), GBM must devote staff time and resources to helping those with felony convictions (1) determine whether they may be eligible to register to vote, (2) attempt to register to vote, (3) determine whether they may be eligible for a CERV, and (4) apply for a CERV.

30. As a result of Defendant Merrill's retroactive implementation of HB 282, GBM must devote more staff time and resources to these activities than would be required if HB 282 was applied only prospectively. More members of GBM's community are disenfranchised due to the retroactive application of this law.

31. As a result of Defendant Merrill's refusal to update Alabama's voter registration forms to include eligibility information for people with convictions pursuant to HB 282, GBM must devote more staff time and resources to these activities than would be required if the forms provided prospective voters with complete eligibility information. Many members of GBM's community remain confused about their eligibility to vote due to Defendant Merrill's failure to update the State and Federal voter registration forms.

### *Classes and Subclasses*

32. The passage and implementation of HB 282 necessarily changes the scope of Plaintiffs' alleged class and subclasses. The following class and two subclasses are

defined for purposes of the remaining claims and the new claims raised in this Supplemental Complaint.

33. The Plaintiff Class that Plaintiffs Gamble, Thompson, Swetnam, Yow, Zimmer, Lanier, and King seek to represent is now defined as: all persons otherwise eligible to register to vote in Alabama who are now, or who may in the future be, denied the right to vote pursuant to Section 177(b) because of a conviction for a felony "involving moral turpitude" as defined by section (c) of Alabama Code Section 17-3-30.1.

34. Plaintiffs seek relief for the entire Plaintiff Class pursuant to Counts 1, 2, and 12, which allege that Section 177(b) was enacted and maintained with discriminatory intent and imposes cruel and unusual punishment.

35. Plaintiffs also seek to represent a subclass relevant to their *Ex Post Facto* and additional Due Process claims (Counts 11, 16, and 17). Plaintiffs Gamble, Thompson, Swetnam, Yow, Zimmer, Lanier, and King seek to represent an *Ex Post Facto* subclass defined as follows: all persons otherwise eligible to register to vote in Alabama who were convicted of a felony "involving moral turpitude" as defined by section (c) of Alabama Code Section 17-3-30.1 *before* August 1, 2017 but are unable to register to vote pursuant to Defendant Merrill's retroactive implementation of Alabama Code Section 17-3-30.1 to individuals with prior convictions.

36. Plaintiffs Gamble, Swetnam, and Thompson seek to represent an Legal Financial Obligation (LFO) subclass defined as follows: all persons otherwise eligible to register to vote in Alabama who (1) are now, or who may in the future be, denied

the right to vote pursuant to Section 177(b) because of a conviction for a felony "involving moral turpitude" as defined by section (c) of Alabama Code Section 17-3-30.1; and (2) are unable to pay their fines, fees, and/or restitution due to their socioeconomic status; but (3) are otherwise eligible to apply for a CERV.

37. Pursuant to Federal Rule of Civil Procedure 23, Plaintiffs bring this action on behalf of themselves and all other similarly situated persons. Plaintiffs do not seek claims for compensatory relief. Instead, Plaintiffs seek only declaratory and injunctive relief broadly applicable to members of the Plaintiff Class and the Plaintiff Subclasses, as defined above. The requirements of Rule 23, and in particular Rule 23(b)(2), are met with respect to the Plaintiff Class and Plaintiff Subclasses, as defined above.

38. The members of the Plaintiff Class and Plaintiff Subclasses are so numerous that joinder is impracticable. The Plaintiff Class and Plaintiff Subclasses are ascertainable through Defendants' records, as well as records kept by the Alabama Circuit Clerks and the Board of Pardons and Paroles.

39. In addition to the common questions of law and fact alleged in the original complaint, common questions of law and fact predominate over questions affecting only individual class members with respect to allegations in this Supplemental Complaint. Those questions include, but are not limited to, the following:

a. Whether Defendant's retroactive application of Section 17-3-30.1 violates the *Ex Post Facto* Clause;

b.  Whether Defendants' retroactive application of Section 17-3-30.1 violates the Fourteenth Amendment; and

c.  Whether Defendants' application of Section 17-3-30.1, in whole or in part, imposes cruel and unusual punishment in violation of the Eighth Amendment.

40.  The claims of Plaintiffs Gamble, Thompson, Swetnam, Yow, Zimmer, Lanier, and King are typical of the Plaintiff Class and Plaintiff Subclasses as defined above. Plaintiffs are not aware of any conflict between their interests and those of the Plaintiff Class and Subclasses they seek to represent.

41.  Plaintiffs can fairly and adequately represent the interests of the Plaintiff Class and Plaintiff Subclasses because they are similarly situated with members of their classes. Plaintiffs have retained counsel experienced in class-action litigation and voting rights litigation to represent them and the Plaintiff Class and Subclasses for the purpose of this litigation.

42.  Defendants continue to act, or refuse to act, on grounds generally applicable to the Plaintiff Class and Plaintiff Subclasses, and final injunctive relief and corresponding declaratory relief are appropriate respecting the classes as a whole.

43.  A class action is superior to other available means for the fair and efficient adjudication of the Plaintiff Class and Plaintiff Subclasses members' claims because joinder of all members is impracticable. Absent the class action, the members of the Plaintiff Class and Plaintiff Subclasses will continue to suffer deprivation of their right to vote.

***Additional Allegations with Respect to Counts 1, 2, 11, 12, and 13***

**Count 1: Intentional Race Discrimination, 14th Amendment**
**(42 U.S.C. § 1983)**
**(All Plaintiffs and Plaintiff Class)**
**(Against Defendant Merrill, Defendant Noblin, and Defendant Class)**

44. Plaintiffs reallege the facts set forth in paragraphs 1-45, above.

45. In addition to all of the allegations in their original complaint, Plaintiffs allege the following.

46. The passage of Section 17-3-30.1—which only implements Section 177(b) of the Alabama Constitution and does not independently disenfranchise individuals— does not affect Plaintiffs' allegations that Section 177(b) of the Alabama Constitution was passed and maintained with racially discriminatory intent in violation of the Equal Protection Clause of the Fourteenth Amendment.

47. Upon information and belief, Section 17-3-30.1 does not cure, but rather maintains, the racially discriminatory impact of Section 177(b).

**Count 2: Intentional Race Discrimination, 15th Amendment**
**(42 U.S.C. § 1983)**
**(All Plaintiffs and Plaintiff Class)**
**(Against Defendant Merrill, Defendant Noblin, and Defendant Class)**

48. Plaintiffs reallege the facts set forth in paragraphs 1-45, above.

49. In addition to all of the allegations in their original complaint, Plaintiffs allege the following.

50. The passage of Section 17-3-30.1—which only implements Section 177(b) of the Alabama Constitution and does not independently disenfranchise individuals— does not affect Plaintiffs' allegations that Section 177(b) violates the Fifteenth

Amendment to the U.S. Constitution because it purposely denies and abridges Plaintiffs' and other minority voters' right to register and vote on account of race or previous condition of servitude.

51.  Upon information and belief, Section 17-3-30.1 does not cure, but rather maintains, the racially discriminatory impact of Section 177(b).

### Count 11: Retroactive Punishment, *Ex Post Facto* Clause
### (42 U.S.C. § 1983)
### (Plaintiffs GBM, Gamble, Thompson, Swetnam, Yow, Zimmer, Lanier, King and *Ex Post Facto* Subclass)
### (Against Defendant Merrill, Defendant Noblin, and Defendant Class)

52.  Plaintiffs reallege the facts set forth in paragraphs 1-45, above.

53.  In addition to all of the allegations in their original complaint, Plaintiffs allege the following.

54.  Prior to the passage of Section 17-3-30.1 in May 2017, as alleged in Plaintiffs' original complaint, determinations about disenfranchisement based on felony convictions were made on an individualized basis by registrars at the time of registration.

55.  Upon passage of Section 17-3-30.1, Defendant Merrill instructed Defendant registrars to apply Section 17-3-30.1 retroactively to disenfranchise individuals with convictions listed in Section 17-3-30.1 even if those convictions occurred prior to Section 17-3-30.1's passage and effective date.

56.  The exclusion of bribery, perjury, abuse of public office, and other related crimes meaningfully connected to the act of voting from Section 17-3-30.1's  list of

disqualifying convictions further demonstrates that Section 17-3-30.1 functions as a punishment.

57.  As to individuals with convictions prior to August 1, 2017, Section 17-3-30.1's application imposes retroactive punishment in violation of the U.S. Constitution's prohibition on *ex post facto* laws.

**Count 12: Disenfranchisement as Cruel and Unusual Punishment,**
**8th Amendment**
**(42 U.S.C. § 1983)**
**(All Plaintiffs and Plaintiff Class)**
**(Against Defendant Merrill, Defendant Noblin, and Defendant Class)**

58.  Plaintiffs reallege the facts set forth in paragraphs 1-45, above.

59.  In addition to all of the allegations in their original complaint, Plaintiffs allege the following.

60.  Plaintiffs bring this claim on behalf of the Plaintiff Class but also bring this claim in the alternative on behalf of the subclasses in paragraph 37.

61.  Similar to the registrars' prior application of Section 177(b), Section 17-3-30.1 permanently disenfranchises a broad swath of individuals convicted of vastly disparate crimes, from various degrees of homicide to assault to non-violent trafficking in cannabis to simple non-violent theft of property and forgery. It permanently disenfranchises individuals who have been convicted of many class C felonies. It imposes the same punishment on a person convicted of murder and a person convicted of a single theft crime.

62. Alabama citizens like Plaintiff Thompson and many others have been convicted of crimes for which the sentencing court imposed either no or minimal

prison time, but nonetheless face permanent exclusion from the political franchise and thus permanent exclusion from meaningful participation in our democracy. They are sentenced, in essence, to civil death.

63.  Section 17-3-30.1 is also an outlier nationwide. Only eight other states still impose permanent disenfranchisement on any subset of citizens with felony convictions, and several of those remaining eight states limit the subset of persons subjected to permanent disenfranchisement more narrowly than Section 17-3-30.1.

64. Section 17-3-30.1 imposes unusual, unreasonable, and often widely disproportionate punishment on Alabama citizens in violation of the Eighth Amendment.

### Count 13: Disenfranchisement for Failure to Pay LFOs, 14th Amendment
### (42 U.S.C. § 1983)
### (Plaintiffs GBM, Gamble, Thompson, Swetnam and LFO Subclass)
### (Against Defendant Walker)

65.  Plaintiffs reallege the facts set forth in paragraphs 1-45, above.

66.  In addition to all of the allegations in their original complaint, Plaintiffs allege the following.

67.  The passage of Section 17-3-30.1 has no impact whatsoever on the unconstitutional wealth restriction on access to the right to vote imposed by Alabama Code Section 15-22-36.1(a)(3).

68.  For those disenfranchised by Section 17-3-30.1 as applied by Secretary Merrill and who are unable to pay their fines and fees—including Plaintiffs Gamble,

Thompson, Swetnam, and the LFO subclass—the LFO requirement remains a wealth barrier to political participation.

69.  As alleged in the original complaint, Alabama Code Section 15-22-36.1(a)(3) invidiously discriminates between Alabama citizens with prior disqualifying felonies who are able to pay their legal financial obligations and those who are unable to do so, in violation of the Fourteenth Amendment.

## Supplemental Claims

### Count 16: Unlawful Deprivation of State-Created Right to Vote, Due Process Clause, 14th Amendment
### (42 U.S.C. § 1983)
### (Plaintiffs GBM, Gamble, Thompson, Swetnam, Yow, Zimmer, Lanier, King and *Ex Post Facto* Subclass)
### (Against Defendant Merrill, Defendant Noblin, and Defendant Class)

70. Plaintiffs reallege the facts set forth in paragraphs 1-45, above.

71.  In addition to all of the allegations in their original complaint, Plaintiffs allege the following.

72.  It is well-established that state laws may create liberty interests that are entitled to the protections of the Due Process Clause of the Fourteenth Amendment. *See Vitek v. Jones*, 445 U.S. 480 (1980).

73.  It is further well-established that the right to vote—where it is granted by state law—is a protected liberty interest under the Due Process Clause of the Fourteenth Amendment. *See, e.g.*, *Bush v. Gore*, 531 U.S. 98, 105 (2000); *Anderson v. Celebrezze*, 460 U.S. 780 (1983).

74.  The Due Process Clause of the Fourteenth Amendment protects individuals from disenfranchisement in violation of state election law. *Duncan v. Poythress*, 657 F.2d 691, 708 (5th Cir. 1981).

75.  Pursuant to Alabama law, otherwise eligible individuals with felony convictions prior to the passage and implementation of Section 17-3-30.1 have the same right to vote as other eligible citizens.

76.  Section 177(a) of Alabama's Constitution affirmatively guarantees the right to vote of citizens of the United States who meet the age, residency, and registration qualifications and are not disqualified on the basis of Section 177(b).

77.  As discussed at length in Plaintiffs' original complaint, Section 177(b) of the Alabama Constitution disenfranchises individuals "convicted of a felony involving moral turpitude" until their political rights are restored. Ala. Const. art. VIII, §177(b). However, the Alabama Constitution does not specify the felonies "involving moral turpitude," nor did the Legislature do so until after the filing of Plaintiffs' original complaint. Sections 177(a) and 177(c) require the Alabama Legislature to implement Section 177's guarantees and restrictions through statute.

78.  Therefore, prior to the passage of Section 17-3-30.1, no operative state provision lawfully disenfranchised any persons based on their felony convictions. Citizens convicted of felonies after ratification of Amendment 579 in 1996 retained the same state right to vote, affirmatively protected by Section 177(a), as all other eligible citizens.

79.  Pursuant to well-established Alabama law, Section 17-3-30.1 does not apply retrospectively. Section 17-3-30.1 is written in the present tense. It states that "a person is disqualified to vote by reason of conviction of a felony involving moral turpitude *only when* convicted" of the disqualifying crimes and "[t]he felonies involving moral turpitude listed in subsection (c) are the only felonies for which a person, *upon conviction*, may be disqualified from voting." Ala. Code § 17-3-30.1(c), (e) (emphasis added).

80.  Under Alabama law, retroactive application of statutes is highly disfavored and must be clearly expressed. *Bd. of Sch. Comm'rs of Mobile Cty. v. Christopher*, 97 So. 3d 163, 167 (Ala. Civ. App. 2012).

81.  Defendant Merrill's unilateral determination to apply HB 282 retroactively to people with "disqualifying convictions" entered prior to August 1, 2017—despite HB 282's prospective language and applicable state law—constitutes unlawful disenfranchisement in violation of state election law and thus violates the Due Process Clause of the Fourteenth Amendment.

### Count 17: Unlawful Retroactive Deprivation of the Right to Vote, Due Process Clause,14th Amendment (42 U.S.C. § 1983) (Plaintiffs GBM, Gamble, Thompson, Swetnam, Yow, Zimmer, Lanier, King and *Ex Post Facto* Subclass) (Against Defendant Merrill, Defendant Noblin, and Defendant Class)

82.  Plaintiffs reallege the facts set forth in paragraphs 1-45, above.

83.  In addition to all of the allegations in their original complaint, Plaintiffs allege the following.

84.   Elementary notions of fairness enshrined in the Due Process Clause dictate that a person receive fair notice not only of the conduct that will subject him to punishment but also of the severity of the penalty that a state may impose. *BMW of N. Am., Inc. v. Gore*, 517 U.S. 559, 574 (1996).

85. Even if this Court finds that Section 177(b), as enforced through Section 17-3-30.1, does not constitute punishment within the meaning of the *Ex Post Facto* Clause, the stripping of political rights on the basis of criminal convictions "share[s] key characteristics of criminal sanctions" such that "[r]etroactive imposition" of Section 17-3-30.1 "raise[s] a serious constitutional question." *Landgraf v. USI Film Prod.*, 511 U.S. 244, 281 (1994).

86.   "The retrospective aspects of legislation, as well as the prospective aspects, must meet the test of due process, and the justifications for the latter may not suffice for the former." *Usery v. Turner Elkhorn Mining Co.*, 428 U.S. 1, 17 (1976).

87. Retroactive application of legislation is most suspect when it is imposed on the basis of a theory of deterrence or blameworthiness. *Id.*

88. As alleged in Plaintiffs' original complaint, no constitutional, non-punitive rationale for limiting the rights of citizens with felony convictions to vote can support Section 177(b) and Section 17-3-30.1. *See* Pamela S. Karlan, *Convictions and Doubts: Retribution, Representation, and the Debate Over Felon Disenfranchisement*, 56 Stan. L. Rev. 1147, 1150-55 (2004).

89. As alleged above, Section 17-3-30.1's exclusion of bribery, perjury, abuse of public office, and other related crimes meaningfully connected to the act of voting

from its list of disqualifying convictions further demonstrates that Section 17-3-30.1 can only operate to punish individuals for their conduct.

90. Therefore, the retroactive application of Section 17-3-30.1 to individuals with convictions predating its passage violates the Due Process Clause as it cannot be sufficiently justified by its punitive goals.

**Count 18: Failure to Specify Eligibility Requirements, National Voter Registration Act**
**(52 U.S.C. § 20510)**
**(Plaintiff GBM)**
**(Against Defendant Merrill)**

91. Plaintiffs reallege the facts set forth in paragraphs 1-45, above.

92. In addition to all of the allegations in their original complaint, Plaintiffs allege the following.

93. The principle purpose of the National Voter Registration Act of 1993 ("NVRA"), 52 U.S.C. § 20501 *et seq.*, is to "establish procedures that will increase the number of eligible citizens who register to vote in elections for Federal office." 52 U.S.C. § 20501(b)(1).

94. Specifically, the NVRA requires states to "inform applicants . . . of [ ] voter eligibility requirements," whether registrants apply via the Federal Form, a state mail-in form, the department of motor vehicles, or any other NVRA agency. 52 U.S.C. § 20507(a)(5).

95. The NVRA further requires that the Federal Form and any state-issued mail-in voter registration form used to register voters for federal elections

accurately "specif[y] each eligibility requirement" for applicants. 52 U.S.C. §

20508(b)(2)(A); *see also* 52 U.S.C. § 20505(a)(2).

96.  To ensure the Federal Form's accuracy, a state's chief election official must

notify the Election Assistance Commission (EAC) of any changes in the state's

voter eligibility requirements within 30 days. 11 C.F.R. § 9428.6.

97.  Neither the Alabama-specific instructions to the Federal Form, as dictated

to the EAC by Defendant Merrill, nor the State Form provide sufficient information

to meaningfully "inform applicants . . . of [ ] voter eligibility requirements" in

Alabama.

98.  By failing to include complete voter eligibility requirements on these forms,

Defendant Merrill has violated and continues to violate the NVRA.

99.  Defendant Merrill is aware of this violation. Plaintiffs sent Defendant Merrill

notice of this violation of the NVRA through counsel on June 9, 2017. *See* Ex. A.

100. Because of this ongoing NVRA violation, GBM diverts significant

organizational resources to informing voters of the eligibility requirements within

Section 17-3-30.1 that are not communicated via the State Form or Federal Form.

101. Plaintiff GBM is aggrieved by Defendants' past and continuing violations of

the NVRA, and has no adequate remedy at law. Declaratory and injunctive relief are

required to remedy Defendants' past and continuing violations of the NVRA and to

ensure       Defendants'       future       compliance       with       the       NVRA.

## PRAYER FOR RELIEF

In addition to Plaintiffs' prayers for relief in their original complaint, Plaintiffs respectfully pray this Court:

(1) Certify the class and subclasses as defined in paragraphs 33, 35, and 36;

(2) Issue a declaratory judgment that Section 177(b) of the Alabama Constitution, by its terms and as applied through Alabama Code Section 17-3-30.1, violates the Eighth, Fourteenth, and Fifteenth Amendments of the U.S. Constitution;

(3) Issue a declaratory judgment that Defendant Merrill's retroactive application of Alabama Code Section 17-3-30.1 to citizens with convictions entered prior to August 1, 2017 violates the *Ex Post Facto* Clause of Article I and the Fourteenth Amendment of the U.S. Constitution;

(4) Issue a declaratory judgment that Alabama Code Section 15-22-36.1(a)(3) violates the Fourteenth Amendment of the U.S. Constitution;

(5) Issue a declaratory judgment that Defendant Merrill's failure to update the State and Federal voter registration forms violates the NVRA, 52 U.S.C. § 20501 *et seq.*

(6) Enjoin the Defendants, their agents, employees and all those persons acting in concert or participation with them, from enforcing Section 177(b) or Alabama Code Section 15-22-36.1(a)(3), including:

      a.  Enjoining Defendants from denying any voter registration applications on the basis of felony convictions;

b. Enjoining Defendants from removing any voters from the voter registration rolls on the basis of felony convictions;

c. Requiring Defendants to restore Alabama citizens to the voter registration rolls if they were removed on the sole basis of their felony convictions;

d. In the alternative, entering injunctive relief as outlined in (a)-(c) above as to Alabama citizens with convictions entered prior to August 1, 2017;

e. Enjoining Defendants from denying any applications for CERVs on the basis of failure to pay any legal financial obligations;

f. Requiring Defendants to inform those with disqualifying convictions that the failure to pay legal financial obligations does not disqualify them from restoring their right to vote under Alabama Code Section 15-22-36.1;

g. Requiring Defendant Merrill to update the Federal and State voter registration forms to reflect the voter eligibility requirements as defined by Alabama Code Section 17-3-30.1.

(7) Award Plaintiffs their costs, expenses, and reasonable attorneys' fees incurred in the prosecution of this action, as authorized by the Voting Rights Act and the Civil Rights Attorney's Fees Awards Act of 1973, 52 U.S.C. § 10310(e) and 42 U.S.C § 1988(b); and

(8) Grant such other equitable and further relief as the Court deems just and proper.

Respectfully submitted,

/s/ *Danielle Lang*
Danielle Lang (CA Bar: 304450)
J. Gerald Hebert (VA Bar: 38432)
Campaign Legal Center
1411 K Street NW, Suite 1400
Washington, DC 20005
(202) 736-2200
dlang@campaignlegalcenter.org
ghebert@campaignlegalcenter.org

J. Mitch McGuire (AL Bar: ASB-8317-S69M)
McGuire & Associates LLC
31 Clayton Street
Montgomery, AL 36104
(334) 517-1000
jmcguire@mandabusinesslaw.com

James U. Blacksher (AL Bar: ASB-2381-S82J)
P.O. Box 636
Birmingham, AL 35201
(205) 591-7238
jblacksher@ns.sympatico.ca

Jessica Ring Amunson (DC Bar: 497223)
Jenner & Block LLP
1099 New York Ave. NW, Suite 900
Washington, DC 20001
(202) 736-6000
jamunson@jenner.com

Pamela Karlan (NY Bar: 2116994)
Stanford Law School
559 Nathan Abbott Way
Stanford, CA 94305
(650) 725-4851
karlan@stanford.edu

Aderson B. Francois (DC Bar: 498544)
Institute for Public Representation
Georgetown University Law Center
600 New Jersey Avenue NW
Washington, DC 20001
(202) 662-6721
abf48@georgetown.edu

Armand Derfner (SC Bar: 1650)
Derfner & Altman
575 King Street, Suite B
Charleston, SC 29403
(843) 723-9804
aderfner@derfneraltman.com

*Counsel for Plaintiffs and Plaintiff Class*

## CERTIFICATE OF SERVICE

I hereby certify that, on March 1, 2018, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to all counsel of record.

/s/ *Danielle Lang*
Danielle Lang
*Counsel for Plaintiffs and Plaintiff Class*