**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF ALABAMA**

TREVA THOMPSON, et al.    )
            )
  Plaintiffs,      )
            )  Civil Action No.
  v.          )  2:16-cv-783-WKW
            )
STATE OF ALABAMA, et al.,   )
            )
  Defendants.     )

## DEFENDANTS' RENEWED MOTION TO DISMISS AND MOTION TO DISMISS SUPPLEMENTAL COMPLAINT (DOC. 93) OR, IN THE ALTERNATIVE, MOTION FOR SUMMARY JUDGMENT

The plaintiffs have filed a supplemental complaint. In response, the defendants respectfully renew their motion to dismiss counts 1, 2, 11, 12, and 13, *see* Doc. 93, and move to dismiss the new counts 16, 17, and 18 as well. In the alternative, the defendants move for summary judgment with respect to Count 18. The defendants also move to dismiss certain parties based on this Court's previous order of dismissal. We address each old count (with supplemental allegations) and the new counts in turn.

**Parties: The State should be dismissed as a defendant and Giles and Corley should be dismissed as plaintiffs.**

This Court's order dismissing certain claims should result in the dismissal of certain parties as well. First, the Court dismissed the only claims in the complaint against the State of Alabama—the Section 2 claims listed as Count 3 and Count 15. *See* Doc. 80 at 19-22; 38-39. So the State should be dropped as a party. Second, Giles

1

and Corley's claims are moot because they can now vote pursuant to Alabama's new law. Giles was convicted of stalking and Corley was convicted of drug possession (Doc. 1 ¶¶42, 44), neither of which is listed as a crime of moral turpitude in new Section 17-3-30.1 of the Alabama Code.  This Court has already held that claims about the old regime of disenfranchisement are moot in light of the new law. *See* Doc. 80 at 27-28.  Because Giles and Corley can vote, they should be dismissed as parties based on the Court's previous decision on mootness.[1]

**Counts 1 and 2: Intentional Discrimination**

The defendants reincorporate their briefing on intentional discrimination from Doc. 43.  The plaintiffs' supplemental allegations fail to state a claim that the Legislature unanimously enacted and the People overwhelmingly approved Section 177(b) in the 1990s for racially invidious reasons.

**Count 11:  Ex post facto Clause**

The plaintiffs' original and supplemented ex post facto claim fails for reasons that are only exacerbated by last year's passage of Section 17-3-30.1.  Although the Court previously denied our motion to dismiss Count 11, Doc. 80 at 30, it should grant this motion based on the "developed arguments" below that were not highlighted in our original motion to dismiss.

As the Eleventh Circuit has explained, "three critical elements must be present to establish an ex post facto clause violation: [1] the statute must be a penal or criminal law, [2] retrospective, and [3] disadvantageous to the offender because it

---

[1] The plaintiffs would, of course, reserve the right to contend that the court's previous rulings were erroneous.

may impose greater punishment." *Paschal v. Wainwright*, 738 F.2d 1173, 1175–76 (11th Cir. 1984).

The complaint and supplemental complain fail to plead a plausible ex post facto claim for two reasons. First, they do not sufficiently allege that felon disenfranchisement is penal or criminal in nature. Second, even if felon disenfranchisement were penal in nature, neither Section 177(b) nor Section 17-3-30.1 imposes *greater* punishment than the law as it existed at the time of the plaintiffs' offenses.

**1. Neither Section 177(b) nor Section 17-3-30.1 are criminal or penal.**

Only a punitive measure can violate the Ex Post Facto Clause. *See Smith v. Doe*, 538 U.S. 84, 92 (2003). But felon disenfranchisement is not imposed to punish an offender. Instead, felon disenfranchisement is akin to laws that prohibit voting by children and the insane—it is about ensuring that voters are fit to cast a ballot. As the Alabama Supreme Court explained, like children or the insane, "[t]he presumption is, that one rendered infamous by conviction of felony, or other base offense indicative of great moral turpitude, is unfit to exercise the privilege of suffrage, or to hold office, upon terms of equality with freemen who are clothed by the State with the toga of political citizenship." *Washington v. State*, 75 Ala. 582, 585 (1884) (rejecting ex post facto challenge to 1875 Constitution). Despite more than a century of litigation over this issue, no court anywhere has ever held that felon disenfranchisement laws are punitive in nature. See Robin Miller, *Validity, Construction, and Application of State Criminal Disenfranchisement Provisions*, 10

3

A.L.R. 6th 31 § 2 (2006) ("Courts have uniformly held that [felon disenfranchisement] provisions do not constitute bills of attainder or ex post facto laws under U.S. Const. Art. I, § 10, cl. 1").

In *Smith v. Doe*, 538 U.S. 84, 92 (2003), the Supreme Court identified several guideposts to evaluate whether a particular law is punitive. First, the Court must ask whether "the intention of the legislature was to impose punishment." *Id*. Second, if "the intention was to enact a regulatory scheme that is civil and nonpunitive, we must further examine whether the statutory scheme is 'so punitive either in purpose or effect as to negate [the State's] intention' to deem it 'civil.'" *Id*. (citation omitted). "Because we 'ordinarily defer to the legislature's stated intent,' 'only the clearest proof' will suffice to override legislative intent and transform what has been denominated a civil remedy into a criminal penalty.'" *Id*. (quoting *Hudson v. United States*, 522 U.S. 93, 100 (1997))

Neither Section 177(b) nor Section 17-3-30.1 were intended by the Legislature to be punishment. Whether a statutory scheme is civil or criminal "is first of all a question of statutory construction," based on "the statute's text and its structure." *Id*. "Other formal attributes of a legislative enactment, such as the manner of its codification or the enforcement procedures it establishes, are [also] probative of the legislature's intent." *Id*. at 94. Amendment 579 of the Alabama Constitution, which is now Section 177, provides the following:

Article VIII

Suffrage and Elections

(a) Every citizen of the United States who has attained the age of eighteen years and has resided in this state and in a county thereof for the time provided by law, if registered as provided by law, shall have the right to vote in the county of his or her residence. The Legislature may prescribe reasonable and nondiscriminatory requirements as prerequisites to registration for voting. The Legislature shall, by statute, prescribe a procedure by which eligible citizens can register to vote.

(b) No person convicted of a felony involving moral turpitude, or who is mentally incompetent, shall be qualified to vote until restoration of civil and political rights or removal of disability.

(c) The Legislature shall by law provide for the registration of voters, absentee voting, secrecy in voting, the administration of elections, and the nomination of candidates.

Nothing in this text or structure indicates that it is designed to punish. The text addresses the qualifications of voters generally and treats felons the same way as those who are "mentally incompetent," not of age, not citizens of the United States, and not residents of Alabama. The statutes that enforce this provision, including the new Section 17-3-30.1, are not in the criminal code, but in the part of the Alabama Code that regulates elections, *i.e.,* Title 17[2].  *See* Ala. Code § 17-3-30 (qualifications of electors generally); § 17-3-30.1 (disqualification of electors involving felonies of moral turpitude); § 17-3-31 (restoration of right to vote). The new provision, section 17-3-30.1, expressly declares that its purpose is to "ensure that no one is wrongly excluded from the electoral franchise" and "[t]o provide a comprehensive list of acts that constitute moral turpitude for the limited purpose of disqualifying a person from

---

[2] There are criminal provisions within Title 17, but the overall purpose of the Title is to regulate elections.  Additionally, when the Legislature re-codified Title 17 a decade ago, it put all of the election offenses in Chapter 17 of Title 17.  Section 17-3-30.1, by contrast, is in Chapter 3, which is entitled Voter Registration.

exercising his or her right to vote." In short, the Legislature did not intend the challenged laws to punish.

Even a regulatory scheme that is not *intended* as punishment may be so restrictive and harsh as to impose punishment in fact. To make this determination, the Court considers whether the regulatory scheme: "has been regarded in our history and traditions as a punishment; imposes an affirmative disability or restraint; promotes the traditional aims of punishment; has a rational connection to a nonpunitive purpose; or is excessive with respect to this purpose." *Smith*, 538 U.S. at 97. Under this test as well, felon disenfranchisement is non-punitive.

First, historically and traditionally, felon disenfranchisement is a paradigmatic example of a restriction that is *not* punitive. In *Trop v. Dulles*, 356 U.S. 86 (1958) (plurality opinion), the plurality opinion used felon-disenfranchisement as an example of a restriction that is *not* punitive and would *not* violate the Ex Post Facto Clause:

> [A] statute has been considered nonpenal if it imposes a disability, not to punish, but to accomplish some other legitimate governmental purpose. . . . The point may be illustrated by the situation of an ordinary felon. A person who commits a bank robbery, for instance, loses his right to liberty and often his right to vote. If, in the exercise of the power to protect banks, both sanctions were imposed for the purpose of punishing bank robbers, the statutes authorizing both disabilities would be penal. But because the purpose of the latter statute is to designate a reasonable ground of eligibility for voting, this law is sustained as a nonpenal exercise of the power to regulate the franchise.

*Id.* at 96–97. This statement in *Trop* is not unconsidered dicta; the general acceptance of felon disenfranchisement has been a consistent theme in the Supreme

Court's cases.[3] "Indeed, in holding that felon disenfranchisement has 'affirmative sanction' in § 2 of the Fourteenth Amendment of the U.S. Constitution, the Supreme Court noted the historical prevalence of state felon disenfranchisement laws and never characterized even California's broad disqualification of former felons as punitive." *Simmons v. Galvin*, 575 F.3d 24, 45 (1st Cir. 2009) (citing *Richardson v. Ramirez*, 418 U.S. 24 (1974)).

Second, felon disenfranchisement imposes only a minor disability.  It imposes "no physical restraint, and so does not resemble the punishment of imprisonment, which is the paradigmatic affirmative disability or restraint." *Smith*, 538 U.S. at 100.  The challenged constitutional section and statutes impose no obligation at all, and their restriction on voting is "less harsh than the sanctions of occupational debarment, which [the Supreme Court] ha[s] held to be nonpunitive." *Id.* (citing *Hudson v. United States*, 522 U.S. 93 (1997) (monetary penalties and debarment of bank officers); *De Veau v. Braisted,* 363 U.S. 144, (1960) (forbidding work as a union official); *Hawker v. New York,* 170 U.S. 189 (1898) (revocation of a medical license)). The law's restriction on voting is also much less harsh than the sex offender registration notification act upheld in *Smith.  See id.*  And Alabama law provides that most disqualified felons may re-earn the right to vote by discharging their legal obligations. *See* Ala. Code § 17-3-31; Ala. Code § 15-22-36.1.

---

[3] *See Davis v. Beason*, 133 U.S. 333, 346-347 (1890) (felon disenfranchisement is "is not open to any constitutional or legal objection"), abrogated by *Romer v. Evans*, 517 U.S. 620 (1996); *Estep v. United States*, 327 U.S. 114, 122 n. 13 (1946)("A felon customarily suffers the loss of substantial rights," citing felon disenfranchisement laws); *Lassiter v. Northampton County Board of Elections*, 360 U.S. 45, 51 (1959) (Douglas, J.); *Gray v. Sanders*, 372 U.S. 368, 380 (1963) (Douglas, J.); and *Harper v. Virginia State Board of Elections*, 383 U.S. 663, 673, 675 n. 4 (1966) (dissenting opinion of Black, J.).

Finally, felon disenfranchisement does not promote the traditional aims of punishment—retribution and deterrence—and is instead rationally connected to a nonpunitive purpose, which is the "'most significant' factor in our determination that the statute's effects are not punitive." *Smith*, 538 U.S. at 102. There is no reasonable argument that someone would be deterred from committing a felony merely because he or she may lose the right to vote. Nor is there any retributive rationale for felon disenfranchisement. Instead, felon disenfranchisement is based on the philosophy of republican government and theory of social compact. "[S]uch provisions are for the protection of the public by permitting only those who have lived up to certain minimum moral and legal standards (by not committing a crime classed as a felony) to exercise the high privilege of participating in government by voting." *State ex rel. Barrett v. Sartorious*, 175 S.W.2d 787, 788 (Mo. 1943) (en banc). In the words of Judge Henry Friendly, "[a] man who breaks the laws he has authorized his agent to make for his own governance could fairly have been thought to have abandoned the right to participate in further administering the [social] compact." *Green v. Bd. of Elections,* 380 F.2d 445, 451 (2d Cir. 1967). "[I]t can scarcely be deemed unreasonable for a state to decide that perpetrators of serious crimes shall not take part in electing the legislators who make the laws, the executives who enforce these, the prosecutors who must try them for further violations, or the judges who are to consider their cases." *Id.*

**2. Neither Section 177(b) nor Section 17-3-30.1 imposes a greater punishment than the law as it existed at the time of the plaintiffs' offenses.**

Even if felon disenfranchisement were punishment, neither Section 177(b) nor Section 17-3-30.1 imposes a greater punishment than the law that applied at the time of the plaintiffs' offenses. "It is axiomatic that for a law to be *ex post facto* it must be more onerous than the prior law." *Dobbert v. Florida,* 432 U.S. 282, 294 (1977).  A law violates the Clause only "if it is both retrospective and more onerous than the law in effect on the date of the offense." *Weaver v. Graham*, 450 U.S. 24, 30–31 (1981).  A plaintiff who alleges an ex post facto claim must "show that the law retrospectively increased or made more onerous the 'quantum of punishment' attached to the crime." *Hameen v. State of Delaware*, 212 F.3d 226, 242 (3d Cir. 2000).

Alabama law has become more lenient, not more onerous, over time. In 1875 and 1901, the Alabama Constitution disenfranchised *all* felons, and there was no mechanism to remove that disability. *See* ALA. CONST. of 1875, art. VIII, § 3 (1875); (disenfranchisement for "any other crime punishable by imprisonment in the penitentiary"); ALA. CONST. art. VIII, § 182 (1901) (disenfranchisement for "any crime punishable by imprisonment in the penitentiary"); *Hunter*, 471 U.S. at 226 (referring to this provision as "the general felony provision"). In 1996, the restriction was narrowed to just those persons "convicted of a felony involving moral turpitude." ALA. CONST. art. VIII, § 177(b) (1901 as amended).  And, in the 2000s, the Legislature provided that narrow class of persons a means to regain the right to vote.  *See* Ala. Code § 15-22-36.1.  Last year, the restriction was narrowed further—from the

common law definition of crime of moral turpitude to the new statutory definition. Ala. Code § 17-3-30.1.

The remaining plaintiffs would have been disqualified from voting during any of these time periods. They have only benefited, not been burdened, by the retrospective effect of these legal changes. None of the plaintiffs were convicted of crimes before 1875 or 1901 when Alabama first began to disqualify all felons. Only Plaintiff King was convicted before the 1996 change that limited disenfranchisement to felonies of moral turpitude. Because King was convicted of murder, she was disqualified by the applicable law at the time of her conviction, which disqualified all persons convicted of "any crime punishable by imprisonment in the penitentiary." Similarly, all of the plaintiffs challenging the purportedly retrospective effect of Section 17-3-30.1 were already disqualified before the Legislature changed the law last year.[4]  Even if felon disenfranchisement is "punishment," neither Alabama's constitutional amendment nor last year's Section 17-3-30.1 imposes a punishment that is "more onerous than the law in effect on the date of the [plaintiff's] offense." *Weaver*, 450 U.S. at 31.

_____

[4] The only new plaintiff, Gamble, was denied a CERV in 2014, Doc. 92 93 ¶ 27.  The original plaintiffs—Thompson, Swetnam, Yow, Zimmer, Lanier, King—were all denied the right to vote under the law that pre-existed 17-3-30.1 and continue to be denied the right to vote, Doc. 93 at ¶ 15.  Thompson alleges that she was removed from the rolls and then had a subsequent application denied.  Doc. 1 at ¶ 38.  Swetnam alleges that she was removed from the rolls.  Doc. 1 at ¶ 40.  Yow alleges that he was removed from the rolls.  Doc. 1 at ¶ 46.  Zimmer, Lanier, and King do not allege that they were removed from the rolls or denied registration, but they do allege that they were convicted of felonies that are included in the narrowly drawn list constructed by AOC.  *Compare* Doc. 1 at ¶¶ 47 (Zimmer, theft of property 2nd), 48 (Lanier, burglary 1st), 49 (King, murder) *with* Doc. 43-5 at 8.  Thus, even if disenfranchisement were punishment, which it is not, the change in law did not increase the plaintiffs' punishment; they have always been disenfranchised on the basis of their convictions.

Another way to look at the same problem is that the remaining plaintiffs lack standing because they lack an available remedy.  The remedy for a successful ex post facto claim is to impose the law in effect at the time of the crime.  *See e.g.*, U.S.S.G. §§ 1B1.11(a), (b)(1) ("If the court determines that use of the [Sentencing] Guidelines Manual in effect on the date that the defendant is sentenced would violate the ex post facto clause of the United States Constitution, the court shall use the Guidelines Manual in effect on the date that the offense of conviction was committed.").  But, as they explained in their original complaint, the law in effect when these plaintiffs were convicted disqualified them from voting.  They stand to achieve nothing from their ex post facto claim. Whether under the old law or the new one, they will still be disqualified.

In summary, retroactive effect occurs when "the new provision attaches new legal consequences to events completed before its enactment." *Landgraf v. USI Film Prod.*, 511 U.S. 244, 269–70 (1994).  And a law violates the ex post facto clause only when those "new legal consequences" are "more onerous than the law in effect on the date of the [plaintiff's] offense." *Weaver*, 450 U.S. at 31.  Because Alabama law already disqualified the plaintiffs on the date they committed their crimes, they have not alleged a plausible ex post facto claim.

**Count 12: Cruel and Unusual Punishment**

The Defendants reincorporate their briefing on the cruel and unusual punishment claim from Doc. 43 and their briefing on the ex post facto claim above. Felon disenfranchisement is not punishment, and this claim should be dismissed.  *See*

*Green v. Bd. of Elections*, 380 F.2d 445 (2d Cir. 1967) *cert. denied*, 389 U.S. 1048 (1968) (denying Eighth Amendment claim); *Farrakhan v. Locke*, 987 F. Supp. at 1314 (same); *Kronlund v. Honstein*, 327 F. Supp. 71, 74 (N.D. Ga. 1971) (three-judge court) (same).

## Count 13: Failure to Pay LFOs

The Defendants reincorporate their briefing on this claim from Doc. 43.

## Count 16: Deprivation of State-Created Right to Vote

Count 16 is a new count with a mishmash theory that attempts to shoehorn an argument that the defendants are violating State law into a constitutional claim, and does so on the basis of arguments inconsistent with the entire original complaint and the plaintiffs' own alleged facts.  The count alleges that the plaintiffs have a state-law right to vote because the Alabama Constitution's felon-disenfranchisement section purportedly required enabling legislation to be effective. Doc. 93 ¶ 78.   On that theory, the supplemental complaint alleges, "prior to the passage of Section 17-3-30.1 . . . no operative state provisions lawfully disenfranchised any persons based on their felony convictions." Doc. 93 ¶ 78. Therefore, the plaintiffs reason that Secretary Merrill's decision "to apply HB 282 retroactively to people with 'disqualifying convictions' entered prior to August 1, 2017 . . . violat[es] state election law and thus violates the Due Process Clause of the Fourteenth Amendment."  Doc. 92 ¶81.

There are several problems with this claim.

First, this is just a dressed up argument that the Secretary is not correctly enforcing the new state statute because it should be read as prospective instead of retrospective. The Eleventh Amendment deprives this Court of subject-matter jurisdiction over that kind of claim. *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 106–07 (1984) ("[I]t is difficult to think of a greater intrusion on state sovereignty than when a federal court instructs state officials on how to conform their conduct to state law."). *See also* Doc. 72 at 23.

Second, to the extent the plaintiffs are claiming a substantive due process right in a purported state-law right to vote, that state law right is not protected by the Constitution.[5] The substantive component of the Due Process Clause protects only "fundamental" rights. *See McKinney v. Pate*, 20 F.3d 1550, 1556 (11th Cir.1994) (citing *Palko v. Connecticut*, 302 U.S. 319, 325, 58 S.Ct. 149, 82 L.Ed. 288 (1937)). Fundamental rights "are protected against certain government actions regardless of the fairness of the procedures used to implement them." *McKinney*, 20 F.3d at 1556. "[A]reas in which substantive rights are created only by state law . . . are not subject to substantive due process protection . . . because substantive due process rights are created only by the Constitution." *Id.*

Third, to the extent the plaintiffs are claiming that an error in applying state law violates procedural due process, the Supreme Court has held the opposite. "A mere error of state law is not a denial of due process." *Swarthout v. Cooke*, 562 U.S. 216, 222, 131 S.Ct. 859, 178 L.Ed.2d 732 (2011) (quoting *Engle v. Isaac*, 456 U.S. 107,

---

[5] The Court has explained elsewhere that felons have no federally-recognized fundamental right to vote. *See* Doc.72 at 18 n. 3.

121 n. 21, 102 S.Ct. 1558, 71 L.Ed.2d 783 (1982)).  Moreover, state-law rights are

protected by procedural due process only to the extent they are "sufficiently certain."

*Greenbriar Vill., L.L.C. v. Mountain Brook City*, 345 F.3d 1258, 1262 (11th Cir.2003)

(citing *Bd. of Regents v. Roth*, 408 U.S. 564, 577, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972)).

And procedural due process is violated only if the state provides no remedy.  *See*

*Hudson v. Palmer*, 468 U.S. 517, 533, 104 S.Ct. 3194, 82 L.Ed.2d 393 (1984).  Here,

the plaintiffs' alleged state law right to vote is not even remotely certain—it is fanciful

(as explained in the *ex post facto* section and below).  But, even if it were a certain

right, there is no allegation that the state's own procedures have not provided a

remedy.

Fourth, the plaintiffs are obviously wrong about the right way to read state

law.  Section 177(b) did not lie dormant until the Legislature spelled out specific

felonies of moral turpitude, any more than the Fourth Amendment is waiting for

Congress to spell out which searches are "unreasonable."  Moreover, it was obviously

the Legislature's intent that Section 17-3-30.1 apply to people with existing felonies—

not just people convicted of felonies going forward.  The statute explicates a

qualification for voting; qualifications for voting, such as age, residence, *etc.*, are

assessed at the time of voting.  If Act No. 2017-378 did not apply to all felons, then

those convicted before August 1, 2017 would remain subject to the rules that were

the focus of the original complaint's first 15 counts, resulting in more

disenfranchisement, not less.[6]

---

[6] Similarly, having the vast majority of felons operating under pre-Act No. 2017-378 law while having
a smaller, but growing, class of felons subject to Act No. 2017-378 would obviously be more complex to

Fifth, to the extent there is any relevant question about the meaning of state law or state-law-created rights, the Court should certify an appropriate question to the Alabama Supreme Court pursuant to Rule 18 of the Alabama Rules of Appellate Procedure.  The Court could ask: "Before the Legislature enacted Section 17-3-30.1, did persons convicted of felonies involving moral turpitude have the right to vote under Alabama law?"  But, again, we all know – and plaintiffs used to know, *see* Doc. 1, generally – the answer to that.

**Count 17: Retroactive Deprivation of Right to Vote**

Count 17 challenges the new statute's purported retroactivity based on the Due Process Clause instead of the Ex Post Facto Clause.  It argues that even if the new statute "does not constitute punishment within the meaning of the Ex Post Facto Clause," Doc. 93 ¶85, it is supported by "no constitutional, non-punitive rationale" and "can only operate to punish individuals for their conduct."  Doc. 93 ¶88.  The count alleges that "the retroactive application of Section 17-3-30.1 to individuals with convictions predating its passage violates the Due Process Clause as it cannot be sufficiently justified by its punitive goals."  Doc. 93 ¶90.

First, this count adds nothing to the Ex Post Facto count.  It makes no sense to assume, as this count does, that the new statute "does not constitute punishment within the meaning of the Ex Post Facto Clause," but nonetheless assert that it has no "non-punitive rationale" and operates only to punish for the purposes of a claim under the Due Process Clause.  If the new statute does not constitute punishment for

---

administer.  Greater Birmingham Ministries' allegations that they are devoting more time and resources now that the law has been clarified and delineated are implausible.  Doc. 93 at ¶¶ 29-30.

the Ex Post Facto Clause, then it necessarily has a non-punitive rationale. The existence of a non-punitive purpose for a law is the "most substantial" part of the Ex Post Facto clause analysis. *See Smith v. Doe*, 538 U.S. 84, 102 (2003).

Second, to the extent this count alleges that the new statute is supported by no rational basis, that contention is obviously incorrect. The Supreme Court has explained that "the potential unfairness of retroactive civil legislation is not a sufficient reason for a court to fail to give a statute its intended scope." *Landgraf v. USI Film Prod.,* 511 U.S. 244, 267–68 (1994). Instead, "[r]etroactivity provisions often serve entirely benign and legitimate purposes, whether to respond to emergencies, to correct mistakes, to prevent circumvention of a new statute in the interval immediately preceding its passage, or simply to give comprehensive effect to a new law Congress considers salutary." *Id.* And, here, of course, the Legislature had many rational bases to enact the new statute: it clarifies the law to the benefit of local officials and voters; it allows more people to vote over the prior practice; and it makes felon disenfranchisement easier to enforce. Thus, it must be upheld. *See Heller v. Doe*, 509 U.S. 312, 319-20 (1993) ("[A] classification must be upheld . . . if there is any reasonably conceivable state of facts that could provide a rational basis for the classification. . . . The burden is on the one attacking the legislative arrangement to negative every conceivable basis which might support it.").

Third, this count fails for all the same reasons that the Ex Post Facto count fails. The principle against retroactivity is "that the legal effect of conduct should ordinarily be assessed under the law that existed when the conduct took place."

*Landgraf v. USI Film Prod.*, 511 U.S. 244, 265 (1994). When these plaintiffs were convicted of felonies, the law disenfranchised them.  It still does.  There is no retroactivity problem here. Striking Section 17-3-30.1 to compel a return to the old regime does not remedy anything for these plaintiffs.  Had the Secretary decided to apply the new law only to persons convicted of felonies going forward, then the result would be greater disenfranchisement, not less.

**Count 18: The Voter Forms**

This count challenges the text of (1) the state voter registration form maintained by one of the defendants, the Alabama Secretary of State, and (2) the federal voter registration form maintained by a non-party, the federal Election Assistance Commission.  The supplemental complaint alleges that the state voter registration form violates the National Voter Registration Act because it uses the terms "disqualifying felony" and "disqualifying felony conviction" to inform registrants that certain felons cannot vote under Alabama law.  Doc. 93 ¶19.  The supplemental complaint alleges that the federal voter registration form violates the National Voter Registration Act because the Alabama-specific instructions provide that "you must: . . . not have been convicted of a felony involving moral turpitude (or have had your civil and political rights restored)" without "refer[ing] the voter to any information regarding what felonies involve 'moral turpitude.'"  Doc. 93 ¶21. The complaint alleges that these forms must be updated "to include eligibility information for people with convictions pursuant to" the specific crimes listed in the 2017 law. Doc. 93 ¶31.

The court should dismiss these claims or, in the alternative, grant summary judgment.

## 1.  The defendants are not in charge of the federal voter registration form.

The claim about the federal form should be dismissed because the National Voter Registration Act does not impose any requirements on the defendants to maintain or promulgate the federal form.  Instead, the NVRA explains that the non-party federal Election Assistance Commission is in charge of the federal voter registration form.  The statute provides that the "Election Assistance Commission," not the states, "shall develop a mail voter registration application form for elections for Federal office."  52 U.S.C. § 20508(a)(2).  The Secretary of State cannot be ordered to "update the . . . Federal voter registration form" (Doc. 93 Prayer for Relief) under the NVRA because that is the statutory duty of the EAC.

The supplemental complaint notes that an administrative regulation promulgated by the EAC purports to require the Secretary to "notify the Election Assistance Commission (EAC) of any changes in the state's voter eligibility requirements within 30 days."  Doc. 93 at ¶96.  To the extent the plaintiffs are suing the Secretary to enforce this federal regulation, that claim fails as a matter of law for two reasons.

First, the plaintiffs cannot sue to enforce an administrative regulation.  The NVRA provides a cause of action to enforce its terms, but the action must allege "a violation of this chapter."  52 U.S.C.A. § 20510(b)(1).  The EAC's regulation creates no cause of action to the benefit of private parties.  Whether last year's statute

constitutes a "change" under this regulation and whether the EAC needs "notif[ication]" are administrative matters between the Secretary and the EAC. There is no role for private parties to sue to enforce this regulation.

Second, in addition to the absence of any statutory duty imposed by the NVRA, it is pure speculation to believe that requiring the Alabama Secretary of State to inform the EAC about Alabama's new law will remedy the plaintiffs' purported injury arising from the federal form. "While states may suggest changes to the Federal Form, the EAC has the ultimate authority to adopt or reject those suggestions." *Gonzalez v. Arizona*, 677 F.3d 383, 400 (9th Cir. 2012), aff'd sub nom. *Arizona v. Inter Tribal Council of Arizona, Inc.*, 570 U.S. 1, 133 S. Ct. 2247, 186 L. Ed. 2d 239 (2013). "[T]he NVRA does not impose a ministerial duty on the EAC to approve state requests to change the Federal Form." *Kobach v. U.S. Election Assistance Comm'n*, 772 F.3d 1183, 1199 (10th Cir. 2014). Instead, the EAC has "discretion to reject such requests, subject to judicial review of its decisions under the APA." *Id.* at 1196. *See also League of Women Voters of United States v. Newby*, 838 F.3d 1, 10 (D.C. Cir. 2016) ("permitting the states to dictate the contents of the Federal Form would undermine the Federal Form's role as a mandatory 'backstop' to state registration forms"). The upshot is that the form will be changed only if the EAC wants to change it. An injunction against the Secretary gives the plaintiffs nothing.

**2.  These forms provide the statutorily required information.**

The federal and state forms also meet the NVRA's requirements as a matter of law.[7]  We have attached relevant state voter registration forms to this motion, which the court can consider without converting the motion into a motion for summary judgment.  In reviewing a motion to dismiss, "courts must consider the complaint in its entirety, as well as other sources courts ordinarily examine when ruling on Rule 12(b)(6) motions to dismiss, in particular documents incorporated into the complaint by reference, and matters of which a court may take judicial notice." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007). *See also See Bryant v. Avado Brands, Inc.*, 187 F.3d 1271, 1278 (11th Cir.1999) (courts may judicially notice matters of public record without converting a 12(b)(6) motion to dismiss into a motion for summary judgment under Rule 56). Alabama's state voter registration forms are central to the complaint and have been incorporated into the complaint by reference. *See Day v. Taylor,* 400 F.3d 1272, 1276 (11th Cir. 2005); *Horsley v. Feldt*, 304 F.3d 1125, 1134 (11th Cir. 2002); *Spivey v. Am. Cas. Co. of Reading, Pennsylvania*, 128 F. Supp. 3d 1281, 1284 (S.D. Ga. 2015).  These Alabama forms and the voter registration forms of other states are also subject to judicial notice because they are "not subject to reasonable dispute." Fed. R. Evid. 201(b).

The NVRA says two relevant things about what should be included on voter-registration forms.  First, the NVRA provides that voter registration forms "shall include   a   statement   that   states   (i)   each   eligibility   requirement   (including

---

[7] We will assume for the purposes of this motion that the NVRA imposes requirements on the state form.  We note, however, that the NVRA makes the use of a state form optional.  52 U.S.C.A. § 20505(a)(2).

citizenship)." 52 U.S.C. § 20504(c)(2)(C). *See also* 52 U.S.C. § 20507(a)(5)(A). Second, the NVRA provides that the forms "may require only the minimum amount of information necessary to (i) prevent duplicate voter registrations; and (ii) enable state election officials to assess the eligibility of the applicant and to administer voter registration and other parts of the election process." 52 U.S.C. § 20504(c)(2)(B).

This statutory language does not require that the state or federal forms identify precisely which felonies disqualify a prospective voter from voting. Subparagraph (C) requires a "statement" of eligibility requirements. A "statement' is "something stated as . . . a single declaration or remark." Webster's Third New International Dictionary, "Statement", p. 2229. To "state" means to "assert, declare," "set forth," "recite, report," etc. *Id.* at "State," p. 2228. Given Congress's use of the words "state" and "statement," it is telling that the heading to this count of the supplemental complaint asserts that the forms fail only to "*specify* eligibility requirements." Doc. 93 at Count 18 (emphasis added). Had Congress intended the forms to "specify" eligibility requirements, Congress would have used a word like "describe," "explain," "detail," or "specify." It did not.

Moreover, subparagraph (B) of Section 20504(c)(2) calls on the states and federal government to use simple, short, "minimum-information" forms for voter registration. As the Tenth Circuit has explained, "the statutory minimum-information principle of subparagraph (B) calls on states to include *the least possible amount of information* necessary on the motor voter form." *Fish v. Kobach*, 840 F.3d 710, 736 (10th Cir. 2016) (emphasis added). It would be "absurd" if "the attestation

requirement of subparagraph (C) . . . violate[d] in any instance the minimum-information principle of subparagraph (B)." *Id.* Accordingly, Subparagraph (C) of Section 20504(c)(2) cannot possibly compel the creation of a "maximum-information" form with a laundry list of specific felonies as an eligibility requirement.

Properly understood, the challenged forms "state" all the relevant eligibility requirements. The Alabama forms state the following eligibility criteria: "Be a citizen of the United States. Reside in Alabama. Be at least 18 years of age on or before election day. Not have been convicted of a disqualifying felony, or if you have been convicted, you must have had your civil rights restored. Not have been declared 'mentally incompetent' by a court." *See* State Form attached as Exhibit 1-A. *See also* Doc. 63-2 at 8-12 (forms attached to preliminary injunction declaration) According to plaintiffs, the federal form does not say anything about felony convictions on its face. But the state-specific instructions to that form say that "you must: . . . not have been convicted of a felony involving moral turpitude (or have had your civil and political rights restored)." Doc. 93 ¶21. These "statements" are all that the NVRA could conceivably require.

These forms are also consistent with the federal government's guidance. In 1994, the Federal Election Commission[8] published a guide to "Implementing the National Voter Registration Act of 1993: Requirements, Issues, Approaches, and

_____

[8] The functions and responsibilities of the former FEC Office of Election Administration were transferred to the U.S. Election Assistance Commission (EAC) upon the establishment of EAC according to the provisions of the Help America Vote Act of 2002.

Examples."[9] *See* Exhibit 1-D. One of the "sample forms" it provided was the voter registration form from Washington State. That form required a registrant to attest that "I am not presently denied my civil rights as a result of being convicted of an infamous crime" without any further explanation of what counted as an "infamous crime" under state law. *See id.*, Exhibit 1-D at 2-12.

The plaintiffs' theory that Alabama's forms violate the NVRA because they are not sufficiently specific would have far-reaching consequences. Under plaintiffs' theory, Alabama's state and federal forms have *always* violated the NVRA because they have never provided a list of specific felonies that are disqualifying. Moreover, plaintiffs' theory suggests that other parts of the form insufficiently "specify" eligibility requirements as well. For example, one of Alabama's eligibility requirements is that a registrant resides in Alabama. But the form does not provide any explanation of how to determine residence, even though the question of residence for voting can sometimes be quite complicated. *E.g., Horwitz v. Kirby*, 197 So. 3d 943, 949 (Ala. 2015) (rejecting 105 ballots cast by college students and 54 ballots casts by other non-resident voters).

In fact, plaintiffs' theory suggests that almost every state form in the country is illegal under the NVRA. States that disenfranchise voters convicted of felonies do not list all such disqualifying crimes on their forms. *See, e.g.*, Voter Registration Forms of Alaska, Arkansas, Arizona attached as Exhibit 1-B. Other States like

---

[9]                                          Available                                         at
https://www.eac.gov/assets/1/1/Implementing%20the%20NVRA%20of%201993%20Requirements%20
Issues%20Approaches%20and%20Examples%20Jan%201%201994.pdf

Alabama that disenfranchise voters convicted of a specific subset of crimes do not include a list of those crimes on their forms either. *See, e.g.*, Voter Registration Forms of Alaska, Arkansas, Arizona attached as Exhibit 1-B. For example, Georgia's form requires applicants to swear or affirm that they are "not serving a sentence for having been convicted of a felony involving moral turpitude." *See, e.g.*, Voter Registration Forms of Georgia, Missouri, and Nevada attached as Exhibit 1-C. Missouri requires applicants to swear or affirm that they have not "been convicted of a felony or misdemeanor connected with the right of suffrage." *Id.* Nevada requires applicants to swear or affirm that they are "not laboring under any felony conviction or other loss of civil rights that would make it unlawful for me to vote." *Id.* All of these state forms would be illegal if the plaintiffs' theory were correct.

In short, the Alabama and federal forms "include a statement that states (i) each eligibility requirement (including citizenship)." 52 U.S.C. § 20504(c)(2)(C). The NVRA does not require anything more.

Respectfully submitted,

s/  Andrew L. Brasher
Andrew L. Brasher (ASB-4325-W73B)
*Solicitor General*
James W. Davis (ASB-4063-I58J)
*Deputy Attorney General*

Winfield J. Sinclair (ASB-1750-S81W)
Misty S. Fairbanks Messick (ASB-1813-T71F)
Laura E. Howell (ASB-0551-A41H)

24

Brad Chynoweth (ASB-0030-S63K)
*Assistant Attorneys General*

OFFICE OF THE ATTORNEY GENERAL
501 Washington Avenue
Post Office Box 300152
Montgomery, Alabama 36130-0152
telephone:    334.353.2609
facsimile:     334.242.4891
abrasher@ago.state.al.us
jimdavis@ago.state.al.us
wsinclair@ago.state.al.us
mmessick@ago.state.al.us
lhowell@ago.state.al.us
bchynoweth@ago.state.al.us

**CERTIFICATE OF SERVICE**

I hereby certify that, on March 15, 2018, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:

James U. Blacksher
Post Office Box 636
Birmingham, Alabama 35201
jblacksher@ns.sympatico.ca

J. Mitch McGuire
McGuire & Associates, LLC
31 Clayton Street
Montgomery, AL 36104
jmcguire@mandabusinesslaw.com

Danielle Lange
J. Gerald Herbert
Campaign Legal Center
1411 K Street NW Suite 1400
Washington, DC 20005
dlang@campaignlegalcenter.org
gherbert@campaignlegalcenter.org

Jessica Ring Amunson
Jenner & Block LLP
1099 New York Ave. NW Suite 900
Washington, DC 20001
jamunson@jenner.com

Pamela Karlan
Stanford Law School
559 Nathan Abbott Way
Stanford, CA 94305
karlan@stanford.edu

Aderson B. Francois
Patrick Llewellyn
Institute for Public Representation
Georgetown University Law Center
600 New Jersey Avenue NW
Washington, DC 20001
abf48@georgetown.edu

Armand G. Derfner
Derfner & Altman
575 King Street, Suite B
Charleston, SC 29403
aderfner@derneraltman.com


<u>s/ Andrew L. Brasher</u>
        Of Counsel