**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF ALABAMA**
**NORTHERN DIVISION**

| | | |
|---|---|---|
| TREVA THOMPSON, *et al.*, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | CIVIL ACTION NO. |
| v. | ) | **2:16-cv-783-WKW** |
| | ) | |
| JOHN H. MERRILL, in his official | ) | CLASS ACTION |
| capacity as Secretary of State, *et al.*, | ) | |
| | ) | |
| Defendants. | | |

**PLAINTIFFS' MOTION FOR CLASS CERTIFICATION**

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ..................................................................................ii

INTRODUCTION ............................................................................................... 1

ARGUMENT ....................................................................................................... 2

    I.     Proposed Class Definition ..................................................... 3

    II.    Plaintiffs Satisfy the Criteria of Rule 23(a).......................... 5

        A.    Numerosity ...................................................................... 5

        B.    Commonality................................................................... 10

        C.    Typicality ........................................................................ 12

        D.    Adequacy of Representation .......................................... 13

    III.   Class Certification Is Appropriate Under Rule 23(b)(2) ............................. 16

CONCLUSION.................................................................................................. 17

CERTIFICATE OF SERVICE........................................................................... 19

# TABLE OF AUTHORITIES

**Cases**                                                                 **Page(s)**

*Amchem Prods., Inc. v. Windsor*,
   521 U.S. 591 (1997) .................................................................. 12, 13, 14, 16

*Braggs v. Dunn*,
   317 F.R.D. 634 (M.D. Ala. 2016) ............................................................. 5

*Cox v. Am. Cast Iron Pipe Co.*,
   784 F.2d 1546 (11th Cir. 1986) .......................................................... 5, 7, 9

*Evans v. U.S. Pipe & Foundry Co.*,
   696 F.2d 925 (11th Cir. 1983) ................................................................ 6

*Jones v. Diamond*,
   519 F.2d 1090 (5th Cir. 1975) ............................................................... 3

*Karhu v. Vital Pharms., Inc.*,
   621 F. App'x 945 (11th Cir. 2015) ......................................................... 4

*Kirkpatrick v. Bradford*,
   827 F.2d 718 (11th Cir. 1987) .............................................................. 14

*Murray v. Auslander*,
   244 F.3d 807 (11th Cir. 2001) .............................................................. 12

*Sanchez-Knutson v. Ford Motor Co.*,
   310 F.R.D. 529 (S.D. Fla. 2015) ........................................................... 15

*Shelton v. Bledsoe*,
   775 F.3d 554 (3d Cir. 2015) .................................................................. 5

*Shook v. El Paso Cty.*,
   386 F.3d 963 (10th Cir. 2004) ............................................................... 5

*Valley Drug Co. v. Geneva Pharms., Inc.*,
   350 F.3d 1181 (11th Cir. 2003) ......................................................... 13, 14

*Vega v. T-Mobile USA, Inc.*,
   564 F.3d 1256 (11th Cir. 2009) ......................................................... 5-6, 6

*Wal-Mart Stores, Inc. v. Dukes*,
   564 U.S. 338 (2011) ................................................................ 10, 11, 12, 16

*Wright v. Circuit City Stores, Inc.*,
   201 F.R.D. 526 (N.D. Ala. 2001).......................................................... 6, 7

**Rules**                                                              **Page(s)**

Fed. R. Civ. P. 23(a) ..............................................................*passim*

Fed. R. Civ. P. 23(b) .................................................................. 2, 16

Fed. R. Civ. P. 23(c) ....................................................................... 3

Fed. R. Civ. P. 23(g) ..................................................................... 15


**Other Authorities**                                                  **Page(s)**

Ala. Sentencing Comm'n, *2017 Report* (2017) ........................................ 6, 9

Claire Greenberg, Marc Meredith & Michael Morse, *The Growing and Broad Nature of Legal Financial Obligations: Evidence from Alabama Court Records*, 48 Conn. L. Rev. 1079 (2016) ............................................................. 7, 8

Fed. Judicial Ctr., *Manual for Complex Litigation* (4th ed. 2004) ........................ 4-5

Fed. R. Civ. P. 23 advisory committee's note to 1966 amendment ........................... 5

Marc Meredith & Michael Morse, *Discretionary Disenfranchisement: The Case of Legal Financial Obligations* (2017) ....................................................... 9

U.S. Dep't of Health & Human Servs., *HHS Poverty Guidelines for 2018* ................................................................................. 8

William B. Rubenstein, *Newberg on Class Action* (5th ed. 2017) ........................ 5, 15

www.alacourt.gov .......................................................................... 4

## INTRODUCTION

Plaintiffs respectfully move this Court to enter an order certifying this case as a class action pursuant to Federal Rules of Civil Procedure 23(a) and 23(b)(2). The State of Alabama excludes from the franchise all felons whose convictions are for crimes of "moral turpitude." This phrase first appeared in the 1901 Alabama Constitution and was found intentionally racially discriminatory by the Supreme Court. That phrase went undefined until 2017, when the legislature enacted House Bill ("HB") 282, enumerating a list of disenfranchising felonies. The Secretary of State has unilaterally decided to apply HB 282 retroactively to all felons convicted of an enumerated offense, even for convictions prior to HB 282's passage. Moreover, although there is a process to obtain a Certificate of Eligibility to Register to Vote ("CERV") to restore voting rights, citizens are ineligible for a CERV unless they pay the State all outstanding fines, fees, or restitution, with no exception for indigency. Alabama's disenfranchisement of ex-felons beyond the completion of their sentences is in marked contrast to prevailing national approach.

Named plaintiffs Gamble, Thompson, Lanier, and King seek to represent a class pursuant to Counts 1, 2, and 12 of plaintiffs' original complaint, which alleges that Section 177(b) of Alabama's Constitution—the "moral turpitude" provision—was enacted and maintained with a discriminatory intent and imposes cruel and unusual punishment. Those named plaintiffs likewise seek to represent a subclass relevant to their *Ex Post Facto* (Count 11 of original complaint) and Due Process claims (Counts 16 and 17 of supplemental complaint). And plaintiffs Gamble and Thompson seek to

represent a Legal Financial Obligation ("LFO") subclass of persons unable to apply for restoration of voting rights on account of outstanding fines, fees, or restitution (Count 13 of original complaint).

For the reasons described herein, the plaintiffs' class and subclass claims are well suited for class treatment and satisfy the requirements of Federal Rule of Civil Procedure 23. Plaintiffs thus respectfully request that the Court certify these claims as a class action.

## ARGUMENT

The Court should certify Counts 1, 2, 11, 12, 13, 16, and 17 for class treatment pursuant to Federal Rule of Civil Procedure 23(a) and (b)(2). To have a suit certified as a class action, plaintiffs must satisfy the requirements of Rule 23(a) as well as the additional requirements of one of three categories of class actions. Rule 23(a) has four requirements: (1) numerosity, (2) commonality, (3) typicality, and (4) adequacy of representation. *See* Fed. R. Civ. P. 23(a)(1)-(4). A class action may be maintained pursuant to Rule 23(b)(2) when "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." Fed. R. Civ. P. 23(b)(2). In assessing whether a suit satisfies Rule 23(a)'s requirements, courts are to err on the side of favoring class treatment, particularly in civil rights suits. "[I]t is important to remember that Rule 23(a) must be read liberally in the context of civil rights suits. This is especially true when the class action falls under

Rule 23(b)(2) . . . ." *Jones v. Diamond*, 519 F.2d 1090, 1099 (5th Cir. 1975) (citation and footnote omitted).

As discussed below, because plaintiffs undoubtedly satisfy the requirements of Rule 23(a), and class certification is appropriate under Rule 23(b)(2), plaintiffs' motion for class certification should be granted.

## I.    Proposed Class Definition

An order certifying a class action must define the class. *See* Fed. R. Civ. P. 23(c)(1)(B). Plaintiffs propose one class and two subclasses. The plaintiff class, applicable to plaintiffs' discriminatory intent and cruel and unusual punishment claims (Counts 1, 2, and 12 of original complaint) is defined as:

> all persons otherwise eligible to register to vote in Alabama who are now, or who may in the future be, denied the right to vote pursuant to Section 177(b) because of a conviction for a felony "involving moral turpitude" as defined by section (c) of Alabama Code Section 17-3-30.1.

Plaintiffs propose a subclass relevant to their *Ex Post Facto* and additional Due Process claims (Count 11 of original complaint and Counts 16 and 17 of supplemental complaint) defined as:

> all persons otherwise eligible to register to vote in Alabama who were convicted of a felony "involving moral turpitude" as defined by section (c) of Alabama Code Section 17-3-30.1 *before* August 1, 2017 but are unable to register to vote pursuant to Defendant Merrill's retroactive implementation of Alabama Code Section 17-3-30.1 to individuals with prior convictions.

Finally, plaintiffs propose a subclass relevant to their LFO claim (Count 13 of original complaint) defined as:

> all persons otherwise eligible to register to vote in Alabama who (1) are now, or who may in the future be, denied the right to vote pursuant to

3

> Section 177(b) because of a conviction for a felony "involving moral turpitude" as defined by section (c) of Alabama Code Section 17-3-30.1; and (2) are unable to pay their fines, fees, and/or restitution due to their socioeconomic status; but (3) are otherwise eligible to apply for a CERV.

*See* Supp. Compl. ¶¶ 33-36.

Should the Court ultimately grant the injunctive and declaratory relief plaintiffs seek, whether with respect to the plaintiff class as a whole or the two subclasses, Alabama will be required to grant the class and subclass members the right to vote. The class and subclasses are identifiable. Alabama maintains a database of criminal convictions, www.alacourt.com, and among the fields included in the database are a code for the conviction type (*e.g.*, TOP1 for Theft of Property, 1st Degree), the name of a specific conviction, the class of the conviction, and the date of the conviction. *See* www.alacourt.com. It likewise includes information about payments towards fines, fees, or restitution, and whether such amounts are outstanding. This robust database contains all the information needed to, in an easily administrable manner, generate a list of the members of the class and subclasses. *See Karhu v. Vital Pharms., Inc.*, 621 F. App'x 945, 948 (11th Cir. 2015) (permitting reliance on defendant's records where "records are in fact useful for identification purposes, and that identification will be administratively feasible"). The proposed definitions rely upon objective criteria—*e.g.*, a specific conviction, the date of a specific conviction, or the member's financial capacity—and thus satisfy the requirement for a class certified under Rule 23(b)(2).[1]

---

[1] In any event, where injunctive and declaratory relief is sought under Rule 23(b)(2), rather than monetary damages under Rule 23(b)(3), the requirements of definiteness and ascertainability of class members do not apply. *See* Fed. Judicial Ctr., *Manual for Complex Litigation* § 21.222 (4th ed. 2004)

## II.  Plaintiffs Satisfy the Criteria of Rule 23(a)

### A.  Numerosity

Plaintiffs easily meet the numerosity requirement of Rule 23(a)(1). To be maintained as a class action, the class must be "so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). The Eleventh Circuit has noted that "while there is no fixed numerosity rule, generally less than twenty-one is inadequate, more than forty adequate, with numbers between varying according to other factors." *Cox v. Am. Cast Iron Pipe Co.*, 784 F.2d 1546, 1553 (11th Cir. 1986) (internal quotation marks omitted). Plaintiffs' evidentiary burden to prove numerosity is not high. "[A]lthough mere allegations of numerosity are insufficient to meet this prerequisite, a plaintiff need not show the precise number of members in the class." *Vega v. T-Mobile USA, Inc.*, 564 F.3d 1256, 1267 (11th Cir. 2009) (quoting

---

("[B]ecause individual damage claims are likely, Rule 23(b)(3) actions require a class definition that will permit identification of individual class members, while Rule 23(b)(1) or (b)(2) actions may not."). Moreover, notice is not required in Rule 23(b)(2) actions, and it is the case that

> relief obtained on behalf of the class is injunctive and therefore does not require distribution to the class. Because defendants are legally obligated to comply [with any relief the court orders] . . . it is usually unnecessary to define with precision the persons entitled to enforce compliance. Therefore, it is not clear that the implied requirement of definiteness should apply to Rule 23(b)(2) class actions at all.

1 William B. Rubenstein, *Newberg on Class Action* § 3:7 (5th ed. 2017) (internal quotation marks and footnote omitted). Thus, "while the lack of identifiability is a factor that may defeat Rule 23(b)(3) class certification, such is not the case with respect to class certification under Rule 23(b)(2)." *Shook v. El Paso Cty.*, 386 F.3d 963, 972 (10th Cir. 2004) (citing *Yaffe v. Powers*, 454 F.2d 1362, 1366 (1st Cir. 1972)); *see also Shelton v. Bledsoe*, 775 F.3d 554, 563 (3d Cir. 2015) (holding that "ascertainability is not a requirement for certification of a (b)(2) class seeking only injunctive and declaratory relief"); Fed. R. Civ. P. 23 advisory committee's note to 1966 amendment (providing "illustrative" examples of (b)(2) classes as "various actions in the civil-rights field where a party is charged with discriminating unlawfully against a class, usually one whose members are incapable of specific enumeration"). A court in this district recently adopted this view. *See Braggs v. Dunn*, 317 F.R.D. 634, 671-73 (M.D. Ala. 2016) (surveying authorities and concluding that (b)(2) class "need not be ascertainable").

*Evans v. U.S. Pipe & Foundry Co.*, 696 F.2d 925, 930 (11th Cir. 1983)); *id.* (noting plaintiff must make "*some* showing" (emphasis in original)); *Wright v. Circuit City Stores, Inc.*, 201 F.R.D. 526, 537 (N.D. Ala. 2001) ("Estimates as to the size of the proposed class are sufficient for a class action to proceed."). Moreover, the Eleventh Circuit has explained that "the relevance of the numerosity requirement to class certification may in appropriate cases be less significant where in fact class wide discrimination has been alleged." *Evans v. U.S. Pipe & Foundry Co.*, 696 F.2d 925, 930 (11th Cir. 1983). And "where the numerosity question is a close one, a balance should be struck in favor of a finding of numerosity, since the court has the option to decertify pursuant to Rule 23(c)(1)." *Id.*

The numerosity requirement is plainly met here. The Alabama Sentencing Commission's 2017 Report lists the top twenty-five felony convictions in Alabama by fiscal year. For fiscal years 2013 through 2015, among the top twenty-five are twelve disqualifying offenses under HB 282. Below are the number of convictions per fiscal year of these disqualifying felonies:[2]

| Disqualifying Felony | FY13 Convictions | FY14 Convictions | FY15 Convictions |
|---|---|---|---|
| Theft of Property (2nd) | 1,375 | 1,385 | 1,320 |
| Theft of Property (1st) | 1,130 | 1,311 | 1,162 |
| Robbery (1st) | 394 | 387 | 431 |
| Assault (2nd) | 415 | 449 | 396 |
| Robbery (3rd) | 260 | 273 | 246 |
| Burglary (2nd) | 165 | 158 | 166 |
| Robbery (2nd) | 180 | 160 | 164 |
| Trafficking Drugs | 145 | 149 | 157 |
| Assault (1st) | 140 | 148 | 131 |

---

[2] *See* Ala. Sentencing Comm'n, *2017 Report,* at 18 (2017), http://sentencingcommission.alacourt.gov/Publications/ASC%202017%20Final%20Report.pdf (attached as Attachment A to Exhibit 5 (Lang Declaration)).

| Disqualifying Felony | FY13 Convictions | FY14 Convictions | FY15 Convictions |
|---|---|---|---|
| Murder | 126 | 154 | 121 |
| Manslaughter | 93 | 103 | 118 |
| Forgery (2nd) | 136 | 121 | N/A |
| **TOTAL** | **4,559** | **4,798** | **4,412** |

This data, collected by the Alabama court system through its Sentencing Commission, demonstrates that for just twelve of the fifty-nine disqualifying felonies under Section 17-3-30.1, the *yearly* convictions are well over four thousand. This demonstrates thousands of members of both the plaintiff class and the first subclass, related to retroactive application of Section 17-3-30.1 prior to its 2017 enactment. This data easily satisfies plaintiffs' obligation to provide an estimate showing a class size in excess of forty persons. *See Cox*, 784 F.2d at 1553; *Wright*, 201 F.R.D. at 537.

Plaintiffs' proposed LFO subclass also easily satisfies the numerosity requirement. A May 2016 longitudinal study examined Alabama felony convictions and related legal financial obligations, collecting 3,543 records of felony convictions from the years 1995, 2000, and 2005 to 2011.[3] The study showed that the median LFO at sentencing "doubled from just under $1,000 in 1995 to about $2,000 in 2005, where it has remained since."[4] As the study noted, "this increase may not seem that dramatic, [but] it is quite a substantial change relative to the average income of the convicted felon population."[5] The study reported that the national average annual

---

[3] Claire Greenberg, Marc Meredith & Michael Morse, *The Growing and Broad Nature of Legal Financial Obligations: Evidence from Alabama Court Records*, 48 Conn. L. Rev. 1079, 1104-07 (2016), https://www.sas.upenn.edu/~marcmere/workingpapers/AlabamaLFOs.pdf (attached as Attachment B to Ex. 5 (Lang Declaration)).

[4] *Id*. at 1105.

[5] *Id*.

income of the formerly incarcerated population in 2004 was about $9,000, while a survey of the same population in Alabama for 2014 showed a median annual income of $8,000 and a mean income of $10,894.[6] This is well below the federal poverty rate of $12,140 for individuals, let alone the rate for those with dependents.[7] The study explained that this meant the "*increase* in the median LFO assessment in a felony case in Alabama [since 1995] is equal to more than ten percent of expected annual income,"[8] and thus the total average LFO post-2005 is equal to more than twenty percent of expected annual income. The average formerly incarcerated felon in Alabama—of which there are tens of thousands—therefore is well below the federal poverty line, and thus must prioritize life necessities over paying off LFOs. This data alone demonstrates that the vast majority of the felons identified in the Sentencing Commission report will be precluded by their socioeconomic status from regaining their voting rights through the CERV process for a prolonged period of time after they have satisfied all other CERV requirements.

A follow-on 2017 study linked the data from the 2016 study to data showing the number of formerly incarcerated Alabama felons who retain an unpaid LFO balance, and are thus ineligible for the CERV process. That study reported that, of the "sample of more than 1,000 individuals who have completed their sentence(s) . . .

---

[6] *Id.* at 1105-06, 1106 n.120.

[7] U.S. Dep't of Health & Human Servs., *HHS Poverty Guidelines for 2018*, https://aspe.hhs.gov/poverty-guidelines.

[8] Greenberg, *supra* note 3, at 1106 (emphasis added).

about 75% have [ ] a remaining [LFO] balance."[9] The study also showed that inability to repay, rather than unwillingness, was the likely cause. For example, the study found that use of a public defender, "a proxy for [ ] ability to pay[,] is associated with [a remaining] LFO balance."[10] The data show that "82.3% of public defense users have a balance compared to 67.1% of those who retain counsel."[11] The study also examined a random sample of CERV applicants who could be linked to a record from Alabama's conviction database, www.alacourt.gov, and found that "44% . . . were denied due to LFOs."[12] The sample size was 632.[13] Just this portion of the *sample* would meet the numerosity requirement of Rule 23(a)(1).

Although it is not possible from this data to identify a precise number of Alabama felons who are unable to obtain a CERV solely because of their socioeconomic status (nor is that the requirement for certification), this data unequivocally shows that it is far more than *forty* people, *see Cox*, 784 F.2d at 1553, and thus plaintiffs have met their burden to establish numerosity with respect to the LFO subclass.[14]

---

[9] Marc Meredith & Michael Morse, *Discretionary Disenfranchisement: The Case of Legal Financial Obligations* at 21 (2017), https://www.sas.upenn.edu/~marcmere/ workingpapers/DiscretionaryLFOs.pdf (attached as Attachment C to Ex. 5 (Lang Declaration)).

[10] *Id.* at 24.

[11] *Id.*

[12] *Id.* at 27.

[13] *Id.*, app. at 19 (Table A.13).

[14] That is so even when one accounts for the specific enumeration of disqualifying felonies enacted in 2017. For example, of the 14,794 "top 25" felony offense convictions in Alabama in fiscal year 2015, 4,412, or nearly 30%, were for disqualifying felonies. *See supra* note 2, at 18. Thirty percent of even the *sample* sizes in the studies cited above—let alone the total relevant population—is far above the requirements of numerosity for maintaining a class action.

Plaintiffs easily meet the numerosity requirements of Rule 23(a)(1).

## B.   Commonality

Plaintiffs also satisfy the requirement that "there [be] questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). "Commonality requires the plaintiff to demonstrate that the class members 'have suffered the same injury . . . .'" *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 349-50 (2011) (quoting *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 157 (1982)). "[F]or purposes of Rule 23(a)(2), [e]ven a single [common] question will do." *Id.* at 359 (internal quotation marks omitted; first bracket added). The commonality requirement is satisfied if the question "is capable of classwide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Id.* at 350.

The commonality requirement is met here. This case presents common questions, including, but not limited to:

- Whether defendant's retroactive application of Section 17-3-30.1 violates the *Ex Post Facto* Clause;

- Whether defendant's retroactive application of Section 17-3-30.1 violates the Fourteenth Amendment;

- Whether Section 177(b) was enacted and maintained with a discriminatory purpose in violation of the Fourteenth Amendment;

- Whether defendant's application of Section 17-3-30.1, in whole or in part, imposes cruel and unusual punishment in violation of the Eighth Amendment; and

- Whether the Fourteenth Amendment permits an otherwise eligible voter to be denied the franchise because of her inability to pay LFOs.

These legal issues are common both to the claims of the Named Plaintiffs and to the claims of the unnamed class members. Alabama disenfranchises all felons with a disqualifying conviction, regardless of whether that conviction occurred prior to the 2017 enumeration. Likewise, all otherwise eligible citizens are denied restoration of their voting rights if they cannot afford to pay LFOs. Alabama law applies in a uniform manner to all class and subclass members and allows no discretion for differential treatment, including no exception for indigency.

For all of these questions, class treatment here has the capacity "'to generate common *answers* apt to drive the resolution of the litigation.'" *Wal-Mart*, 564 U.S. at 350 (emphasis in original) (quoting Richard A. Nagareda, Class Certification in the Age of Aggregate Proof, 84 N.Y.U. L. Rev. 97, 132 (2009)). Unlike in *Wal-Mart*, where the Court found that commonality did not exist because plaintiffs had not "identified a common mode of [each supervisor] exercising discretion that pervade[d] the entire company," *id.* at 356, here, Alabama's law affects all class and subclass members in the exact same manner—by preventing them from voting based upon their disqualifying convictions or inability to pay LFOs. Injunctive and declaratory relief

11

will resolve all class and subclass members' claims "in one stroke." *Id.* at 350. Plaintiffs easily satisfy the commonality requirement.

### C.    Typicality

The third requirement of Rule 23(a) is that "the claims or defenses of the representative parties are typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). For the same reasons that plaintiffs' claims meet the commonality requirement, they also meet the typicality requirement. Indeed, the Supreme Court has noted that the typicality, adequacy of representation, and commonality requirements "tend[ ] to merge." *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 626 n.20 (1997). "A class representative must possess the same interest and suffer the same injury as the class members in order to be typical under Rule 23(a)(3)." *Murray v. Auslander*, 244 F.3d 807, 811 (11th Cir. 2001). The typicality requirement focuses on the named and unnamed plaintiffs' *legal* claims, rather than their factual circumstances. *See id.* ("The typicality requirement may be satisfied despite substantial factual differences [ ] when there is 'strong similarity of legal theories.'" (quoting *Appleyard v. Wallace*, 754 F.2d 955, 958 (11th Cir. 1985))).

Here, there is no question that the Named Plaintiffs' claims are in fact identically aligned with those of the unnamed class members. Named Plaintiffs Thompson, Gamble, Lanier, and King are all disenfranchised on account of their conviction for disqualifying felonies, and are all disenfranchised despite their convictions predating the 2017 enumeration of those felonies. *See* Ex. 1 (Thompson Decl.) ¶ 3; Ex. 2 (Gamble Decl.) ¶ 3; Ex. 3 (Lanier Decl.) ¶ 3; Ex. 4 (King Decl.) ¶ 3.

Moreover, Named Plaintiffs Thompson and Gamble satisfy all but one requirement to regain their voting rights under the CERV process—payment of LFOs—and their socioeconomic status precludes them from paying their LFOs. Ex. 1 (Thompson Decl.) ¶¶ 8-10; Ex. 2 (Gamble Decl.) ¶¶ 4-6. The Named Plaintiffs seek injunctive and declaratory relief permitting them to vote, and the relief they seek is identical to that sought by all of the unnamed class members who are similarly disenfranchised by Alabama law. That relief would resolve the claims of all class and subclass members.

The claims of the Named Plaintiffs thus are entirely aligned with the unnamed class members—all seek to have their voting rights restored, notwithstanding their felony convictions or socioeconomic status—and injunctive and declaratory relief will address all claims. The typicality requirement is plainly satisfied.

### D.   Adequacy of Representation

The final requirement of Rule 23(a) is that "the representative parties will fairly and adequately protect the interests of the class," Fed. R. Civ. P. 23(a)(4), and this inquiry overlaps with the inquiry into commonality and typicality, *see Amchem*, 521 U.S. at 626 n.20. "The adequacy inquiry under Rule 23(a)(4) serves to uncover conflicts of interest between named parties and the class they seek to represent." *Id.* at 625. A minor conflict is insufficient to cause representatives to be deemed inadequate. "[T]he existence of minor conflicts alone will not defeat a party's claim to class certification: the conflict must be a 'fundamental' one going to the specific issues in controversy." *Valley Drug Co. v. Geneva Pharms., Inc.*, 350 F.3d 1181, 1189 (11th Cir. 2003). For a conflict to be fundamental, "some party members [must] claim to

have been harmed by the same conduct that benefitted other members of the class." *Id.* In addition, the adequacy of representation inquiry is aimed at determining "whether the representatives will adequately prosecute the action." *Id.* "[A]dequate class representation generally does not require that the named plaintiffs demonstrate to any particular degree that individually they will pursue with vigor the legal claims of the class." *Kirkpatrick v. Bradford,* 827 F.2d 718, 727 (11th Cir. 1987). Only where the named plaintiffs "virtually have abdicated to their attorneys the conduct of the case," is adequacy at issue. *Id.* at 728.

Here, the representatives are plainly adequate. In this case, the Named Plaintiffs do not have *any* conflict—let alone a fundamental one—with the other members of the class and subclasses. The injunctive and declaratory relief they seek will benefit the entire class in the same manner—grating the right to vote or the ability to regain that right regardless of socioeconomic obstacles—for all class and subclass members. Moreover, the Named Plaintiffs are knowledgeable about the facts, the litigation, and the significant harm caused by their disenfranchisement, and are dedicated to actively participating in the litigation on behalf of all class and subclass members. *See* Ex. 1 (Thompson Decl.) ¶¶ 11-13; Ex. 2 (Gamble Decl.) ¶¶ 7-9; Ex. 3 (Lanier Decl.) ¶¶ 5-8; Ex. 4 (King Decl.) ¶¶ 4-6. They are plainly adequate class representatives.

So too are plaintiffs' counsel. "The adequacy [requirement] also factors in competency and conflicts of class counsel." *Amchem*, 521 U.S. at 626 n.20. Class counsel in this case easily meet the adequacy requirement of Rule 23(a)(4). "The

adequacy of counsel prong of Rule 23(a)(4) asks whether counsel are qualified, experienced and generally able to conduct the litigation and whether counsel will vigorously prosecute the interests of the class." 1 William B. Rubenstein, *Newberg on Class Actions* § 3:72 (5th ed. 2017) (internal quotation marks and footnotes omitted). "As to the adequacy of counsel for the class representative, absent specific proof to the contrary, the adequacy of class counsel is presumed." *Sanchez-Knutson v. Ford Motor Co.*, 310 F.R.D. 529, 540 (S.D. Fla. 2015) (internal quotation marks and bracket omitted). Plaintiffs are represented by a number of counsel with substantial experience in election law and voting rights litigation, civil rights litigation generally, and class actions. *See, e.g.*, Ex. 5 (Lang Decl.); Ex. 6 (Amunson Decl.); Ex. 7 (Karlan Decl.); Ex. 8 (McGuire Decl.); Ex. 9 (Blacksher Decl.).

For these reasons, as demonstrated in counsel's declarations, class counsel also satisfy the requirements of Rule 23(g), which requires that the Court appoint class counsel at the time of certification, and that in doing so the Court consider (1) "the work counsel has done in identifying or investigating potential claims in the action," (2) "counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action," (3) "counsel's knowledge of the applicable law," and (4) "the resources that counsel will commit to representing the class." Fed. R. Civ. P. 23(g)(1)(A)(i)-(iv).

Plaintiffs have satisfied their initial burden to demonstrate adequacy of representation, 3 *Newberg on Class Actions*, *supra* § 3:72, and absent any evidence to the contrary, the Court should thus presume the adequacy has been satisfied, *id.*

### III.   Class Certification Is Appropriate Under Rule 23(b)(2)

The Court should certify the class pursuant to Rule 23(b)(2). A class action may be maintained pursuant to Rule 23(b)(2) when "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." Fed. R. Civ. P. 23(b)(2). The Supreme Court has noted that certification under Rule 23(b)(2) is particularly appropriate in "[c]ivil rights cases against parties charged with unlawful, class-based discrimination." *Amchem*, 521 U.S. at 614. "The key to the (b)(2) class is 'the indivisible nature of the injunctive or declaratory remedy warranted—the notion that the conduct is such that it can be enjoined or declared unlawful only as to all of the class members or as to none of them.'" *Wal-Mart*, 564 U.S. at 360 (quoting Nagareda, *supra* at 132).

Such is the case here. First, this is exactly the type of civil rights action Rule 23(b)(2) was created to foster. Alabama categorically denies citizens convicted of disqualifying felonies from voting, applies that disqualification retroactively to all felons convicted prior to the legislature's 2017 enumeration of the list of disqualifying felonies, and withholds restoration of voting rights through the CERV process for every citizen who is otherwise eligible but has outstanding LFOs—without any exception for indigency. There are no differences among the class and subclass members, and therefore injunctive and declaratory relief is "appropriate respecting the class as a whole." Fed. R. Civ. P. 23(b)(2). It is precisely the class and subclasses' unifying features—their felony convictions, regardless of date, and their inability to

16

pay LFOs—that Alabama's law targets. The Court should certify this action under Rule 23(b)(2).

## CONCLUSION

For the foregoing reasons, plaintiffs respectfully request that the Court certify their proposed class and subclasses pursuant to Rule 23(b)(2) and appoint the undersigned as class counsel.

Respectfully submitted,

/s/ *Danielle Lang*
Danielle Lang (CA Bar: 304450)
J. Gerald Hebert (VA Bar: 38432)
Mark P. Gaber (DC Bar: 988077)
Campaign Legal Center
1411 K Street NW, Suite 1400
Washington, DC 20005
(202) 736-2200
dlang@campaignlegalcenter.org
ghebert@campaignlegalcenter.org
mgaber@campaignlegalcenter.org

J. Mitch McGuire (AL Bar: ASB-8317-S69M)
McGuire & Associates LLC
31 Clayton Street
Montgomery, AL 36104
(334) 517-1000
jmcguire@mandabusinesslaw.com

James U. Blacksher (AL Bar: ASB-2381-S82J)
P.O. Box 636
Birmingham, AL 35201
(205) 591-7238
jblacksher@ns.sympatico.ca

Jessica Ring Amunson (DC Bar: 497223)
Jenner & Block LLP
1099 New York Ave. NW, Suite 900
Washington, DC 20001
(202) 736-6000
jamunson@jenner.com

Pamela Karlan (NY Bar: 2116994)
Stanford Law School
559 Nathan Abbott Way
Stanford, CA 94305
(650) 725-4851
karlan@stanford.edu

Aderson B. Francois (DC Bar: 498544)
Institute for Public Representation
Georgetown University Law Center
600 New Jersey Ave. NW
Washington, DC 20001
(202) 662-6721
abf48@georgetown.edu

Armand Derfner (SC Bar: 1650)
Derfner & Altman
575 King Street, Suite B
Charleston, SC 29403
(843) 723-9804
aderfner@derfneraltman.com

*Counsel for Plaintiffs*

18

**CERTIFICATE OF SERVICE**

I hereby certify that, on May 10, 2018, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to all counsel of record.

/s/ *Danielle Lang*
Danielle Lang
*Counsel for Plaintiffs*

Andrew Lynn Brasher
Office of the Attorney General
501 Washington Avenue
Montgomery, AL 36130
334-353-2690
Fax: 334-242-4891
Email: abrasher@ago.state.al.us

Brad A. Chynoweth
State of Alabama
Office of the Attorney General
501 Washington Avenue
Post Office Box 300152
Montgomery, AL 36130
334.242.7997
Fax: 334.353.8440
Email: bchynoweth@ago.state.al.us

James William Davis
State of Alabama
Office of the Attorney General
P O Box 300152
Montgomery, AL 36130-0152
334-353-1356
Fax: 334-353-8440
Email: jimdavis@ago.state.al.us

19

Laura Elizabeth Howell
Office of the Alabama Attorney General
P O Box 300152
Montgomery, AL 36130
334-353-1018
Fax: 334-353-8440
Email: lhowell@ago.state.al.us

Misty Shawn Fairbanks Messick
Office of the Attorney General
P O Box 300152
Montgomery, AL 36130-0152
334-353-8674
Fax: 334-353-8440
Email: mmessick@ago.state.al.us

Winfield James Sinclair
Office of the Attorney General
P o Box 300152
Montgomery, AL 36130
334-242-7300
Fax: 334-353-8440
Email: wsinclair@ago.state.al.us

*Counsel for Defendants*

20