**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION**

| | |
|---|---|
| **TREVA THOMPSON, et al.,** ) | |
| ) | |
| **Plaintiffs,** ) | |
| ) | Civil Action No. 2:16-CV-783-ECM-SRW |
| ) | |
| **JOHN H. MERRILL, in his Official** ) | |
| **Capacity as Secretary of State, et al.,** ) | |
| ) | |
| **Defendants.** ) | |

**MOTION TO QUASH SUBPOENAS AND TO ENJOIN
PLAINTIFFS FROM EFFECTING SAME UPON
NONPARTY LEGISLATORS DAVID FAULKNER AND CAM WARD**

**COME NOW** Non-Parties Representative David Faulkner, House District 46 of the Alabama House of Representatives and Senator Cam Ward, Senate District 14 of the Alabama Senate (collectively, the "Nonparty Legislators"), and by and through their counsel make this limited appearance solely for the purpose of moving this Court to enter an order (1) quashing service of subpoenas commanding them to testify at depositions next week and to contemporaneously produce documents, and (2) enjoining Plaintiffs from issuing subpoenas or attempting to effect any other service of process upon the Nonparty Legislators during the term of the 2019 Regular Session or thereafter.

As set out below, the subpoenas are due to be quashed pursuant to Rule 45(d)(3)(A)(iii), Fed. R. Civ. P., because they require disclosure of privileged and/or other protected matter. In support of this motion, the Nonparty Legislators state as follows:

I. **STATEMENT OF RELEVANT FACTS**

Plaintiffs commenced this action through the filing of a 15-count Complaint raising various challenges to Alabama constitutional and statutory provisions governing the disenfranchisement

1

of those convicted of felonies of moral turpitude; specifically, those provisions are Section 177(b) of Article VIII of the Alabama Constitution and Ala. Code § 15-22-36.1 (2016).  By Memorandum Opinion and Order dated December 26, 2017 (Doc. 80), this Court dismissed several counts of Plaintiffs' Complaint, leaving five counts – all of which raise federal constitutional challenges – remaining for adjudication, which the Court summarized as follows:

> This action proceeds as to five counts: Plaintiffs' claims that section 177(b) of the Alabama Constitution is racially discriminatory in violation of the Fourteenth Amendment's Equal Protection Clause and the Fifteenth Amendment (Counts 1 and 2); Plaintiffs' claim that section 177(b) is an ex post facto law that retroactively punishes citizens (Count 11); Plaintiffs' claim that section 177(b) violates the Eighth Amendment's proscription against cruel and unusual punishment (Count 12); and Plaintiffs' claim that section 15-22-36.1(a)(3) of the Alabama Code violates the Fourteenth Amendment's Equal Protection Clause (Count 13).

(Doc. 80 at 40). Plaintiffs subsequently filed a supplemental complaint raising additional claims (Doc. 93), and a motion to dismiss is pending (Doc. 95).

On February 11, 2019, Plaintiffs served a subpoena upon Alabama State Senator Cam Ward.  The subpoena is broad in scope and seeks not only a March 8, 2019, deposition of Sen. Ward, but also the contemporaneous production – at the March 8, 2019 deposition – of virtually any documents in Senator Ward's "possession, custody or control" relating to the legislative consideration, process and passage of the Definition of Moral Turpitude Act of 2017 ("HB 282" – which was passed after Plaintiffs filed their original Complaint), Section 177(b) of the Alabama Constitution, and Ala. Code § 15-22-36.1(a)(3) (2016), as well as any documents or other materials of any kind relating to felon voter disenfranchisement:

> 1. All documents and communications in your possession, custody, or control that relate in any way to the Definition of Moral Turpitude Act of 2017 ("HB 282"), also known as House Bill 282, HB 282, or Act No. 2017-[3]78, including but not limited to any email, text message, voice mail, or written communications concerning the purpose, design, drafting, passage, implementation, or effect of HB 282.

2. All documents, communications, and materials in your possession, custody, or control created or revised on or after January 1, 2016, that relate in any way to the disqualification from registering to vote, or voting, of citizens with felony convictions, including but not limited to any email, text message, voice mail, or written communications discussing Alabama law on felony disenfranchisement.

3. All documents, communications, and materials in your possession, custody, or control created or revised on or after January 1, 2016, that relate in any way to Section 177(b) of the Alabama Constitution, including but not limited to:

> a. Any documents, communications, and materials regarding or related to proposed legislation to interpret, clarify, define, explain, amend, repeal, replace, or otherwise impose or remove legal obligations related to Section 177(b) of the Alabama Constitution;
>
> b. Any documents, communications, and materials regarding or related to the decision to draft, support, oppose, define, amend, lobby, discuss, revise, or otherwise argue for or against legislation related to Section 177(b) of the Alabama Constitution and/or the legal obligations, restrictions, or structures imposed thereunder.

4. All documents and communications in your possession, custody, or control created or revised on or after January 1, 2016, that relate in any way to Section 15-22-36.1(a)(3) of the Alabama Code.

**Exhibit B** (Subpoena to Sen. Cam Ward). On February 23, 2019, counsel accepted service of an identical subpoena from Plaintiffs directed to Alabama State Representative David Faulkner. The subpoena seeks Rep. Faulkner's deposition on March 7, 2019 and the contemporaneous production of the same series of documents sought from Sen. Ward. **Exhibit A** (Subpoena to Rep. David Faulkner).

Importantly, the dates designated by Plaintiffs for the depositions and document production fall within the opening days of the Alabama legislative session. The Alabama Legislature will convene on March 5, 2019, and will adjourn on June 18, 2019.

## II. ARGUMENT

**A.  THE NONPARTY LEGISLATORS PROPERLY ASSERT LEGISLATIVE PRIVILEGE PURSUANT TO RULE 45(d) OF THE FEDERAL RULES OF CIVIL PROCEDURE.**

As set out above, through subpoenas, Plaintiffs seek to compel the Nonparty Legislators to provide deposition testimony and to produce documents and communications between themselves and various other persons related to (1) the proposal, formulation, and passage of the Definition of Moral Turpitude Act of 2017 ("HB 282"), also known as House Bill 282, HB 282, or Act No. 2017-378; (2) Section 177(b) of the Alabama Constitution; and (3) the proposal, formulation, and passage of Ala. Code § 15-22-36.1(a)(3). A party may serve a subpoena under Rule 45 of the Federal Rules of Civil Procedure to obtain "documents, electronically stored information, or tangible things." Fed. R. Civ. P. 45(a)(1)(C). The recipient of the subpoena may move to quash or modify a subpoena for four specific reasons, one of which is that the subpoena "requires disclosure of privileged or other protected matter." *In re Hubbard*, 803 F. 3d 1298, 1307 (11th Cir. 2015) (citing Fed. R. Civ. P. 45(d)(3)(A)(iii)). Indeed, "federal courts have the authority and duty to recognize claims of privilege that are valid under federal common law." *Id.* (citing Fed. R. Evid. 501). As the parties asserting a privilege claim, the Nonparty Legislators "must: (i) expressly make the claim; and (ii) describe the nature of the withheld documents . . . in a manner that . . . will enable the parties to assess the claim." *Id.* (citing Fed. R. Civ. P. 45(e)(2)(A)).

As set out herein, the Nonparty Legislators have met their burden under Rule 45 with regard to the assertion of legislative privilege in support of their motion to quash because they have asserted the privilege and described the nature of the documents they seek to withhold. Considering the nature of Plaintiffs' constitutional claims, which require proof of discriminatory motive, as well as extensive allegations of discriminatory motive and history set forth in their original Complaint, *see* Doc. 1 at ¶¶ 82-143, the Court has more than enough information under Rule 45 to

4

assess the Nonparty Legislators' claim of privilege and to compel the granting of this motion to quash.

**B.     LEGISLATIVE PRIVILEGE PROTECTS AGAINST INQUIRY INTO ACTS THAT OCCUR IN THE REGULAR COURSE OF THE LEGISLATIVE PROCESS AND INTO THE MOTIVATION FOR THOSE ACTS.**

As a basis for this motion, the Nonparty Legislators assert legislative privilege to prevent Plaintiffs' improper inquiry into the sphere of legitimate legislative activity and into the motivation for that activity. "Legislative privilege clearly falls within the category of accepted evidentiary privileges" contemplated by Fed. R. Civ. P. 45(d)(3)(A)(iii). *E.E.O.C. v. Wash. Suburban Sanitary Comm'n*, 631 F.3d 174, 180 (4th Cir. 2011). The privilege is rooted in the absolute immunity granted to federal legislators by the Speech or Debate Clause of the Constitution and exists to safeguard that immunity. *Id.* at 180–81. *See also* 03/13/2017 Mem. of Op. & Order in *Greater Birmingham Ministries, et al. v. John Merrill*, et al, Case No. 2:15-cv-02193-LSC (N.D. Ala., Mar. 13, 2017) (hereinafter, "*GBM v. Merrill*"), **Exhibit C** at p. 7. In *Tenney v. Brandhove*, the Supreme Court found that the Speech or Debate Clause was of a broader common law "tradition [of legislative privilege] . . . well grounded in history" and extended the benefit of that tradition (though not the Speech or Debate Clause itself) to state legislators. 341 U.S. 367, 372–76 (1951). *See also United States v. Gillock*, 445 U.S. 360, 372 n.10 (1980) (noting that *Tenney* "was grounded on its interpretation of federal common law"); *Lee v. Virginia State Bd. of Elections*, Civ. A. No. 3:15CV357 (HEH-RCY), 2015 WL 9461505, at *3 (E.D. Va. Dec. 23, 2015) ("State legislators also enjoy legislative immunity and legislative privilege; however, insofar as state legislators may employ these protections in federal court, the protections are grounded in federal common law.").[1] The privilege "covers all those properly acting in a legislative capacity, not just

---

[1] Alabama law provides legislators immunity from suit and service of process as to both testimonial and document subpoenas while the Alabama Legislature is in session and, in fact, criminalizes any violation thereof. *See, e.g.*, Ala.

5

actual officeholders." *Wash. Suburban Sanitary Comm'n*, 631 F.3d at 181 (citing *Supreme Ct. of Va. v. Consumers Union of U.S., Inc.*, 446 U.S. 719, 731–34 (1980)). Moreover, in order to "safeguard this [state] legislative immunity and to further encourage the republican values it promotes," courts have recognized a corresponding privilege "against compulsory evidentiary process" that can apply "whether or not the legislators themselves have been sued." *Id.*, 631 F.3d at 181.

Most recently, the Eleventh Circuit described and reaffirmed principles that compel a vigorous application of the legislative privilege as follows:

> The legislative privilege is important. It has deep roots in federal common law. *See Tenney v. Brandhove*, 341 U.S. 367, 372, 71 S. Ct. 783, 786, 95 L. Ed. 1019 (1951) (recognizing "[t]he privilege of legislators to be free from arrest or civil process for what they do or say in legislative proceedings"); *see also United States v. Gillock*, 445 U.S. 360, 372 n. 10, 100 S. Ct. 1185, 1193 n. 10, 63 L. Ed.2d 454 (1980) (noting that *Tenney* "was grounded on its interpretation of federal common law"). The privilege protects the legislative process itself, and therefore covers both governors' and legislators' actions in the proposal, formulation, and passage of legislation. *See Tenney*, 341 U.S. at 372, 376, 71 S. Ct. at 786, 788 (recognizing a legislative privilege for state legislators when acting "in the sphere of legitimate legislative activity"); *Reeder v. Madigan*, 780 F.3d 799, 800, 805 (7th Cir. 2015) (affirming the legislative privilege of state representatives and senators); *see also Women's Emergency Network v. Bush*, 323 F.3d 937, 950 (11th Cir. 2003) (holding that Florida's governor was protected by legislative immunity when signing a bill into law); *Baraka v. McGreevey*, 481 F.3d 187, 196–97 (3d Cir. 2007) (holding that a governor falls within the sphere of legislative activity when "advocating and promoting legislation"). And it does not matter to the existence of the legislative privilege that the four lawmakers were not parties to AEA's lawsuit. The privilege "applies whether or not the legislators themselves have been sued." *EEOC v. Wash. Suburban Sanitary Comm'n*, 631 F.3d

---

Code § 29-1-7(a). This statute is an extension of the "speech and debate clause" of Article IV, § 56 of the Alabama Constitution of 1901 and embodies the same principles present in the federal speech and debate clause. Both the state and federal speech and debate clauses " 'protect[] against inquiry into acts that occur in the regular course of the legislative process and the motivation for those acts.' " *Marion v. Hall*, 429 So. 2d 937, 944 (Ala. 1983) (Torbert, C.J., concurring specially) (quoting *United States v. Brewster*, 408 U.S. 501, 507 (1971)). Although not controlling, pursuant to well-established principles of comity, the Nonparty Legislators urge the Court in addressing this motion to consider the state's policy regarding legislative privilege as embodied in Ala. Code § 29-1-7(a).

> 174, 181 (4th Cir. 2011); *see MINPECO, S.A. v. Conticommodity Servs., Inc.*, 844 F.2d 856, 859 (D.C. Cir. 1988).
>
> \* \* \* \*
>
> The legislative privilege "protects against inquiry into acts that occur in the regular course of the legislative process and into the motivation for those acts." *United States v. Brewster*, 408 U.S. 501, 525, 92 S. Ct. 2531, 2544, 33 L. Ed.2d 507 (1972) (emphasis added); *see Tenney*, 341 U.S. at 377, 71 S. Ct. at 788 (declaring "that it [i]s not consonant with our scheme of government for a court to inquire into the motives of legislators"). One of the privilege's principle purposes is to ensure that lawmakers are allowed to "focus on their public duties." *Wash. Suburban Sanitary Comm'n*, 631 F.3d at 181; *cf. Eastland v. U.S. Servicemen's Fund*, 421 U.S. 491, 503, 95 S. Ct. 1813, 1821, 44 L. Ed.2d 324 (1975) (explaining that the Speech or Debate Clause ensures that civil litigation will not "create[ ] a distraction and force[ ] Members to divert their time, energy, and attention from their legislative tasks to defend the litigation"). That is why the privilege extends to discovery requests, even when the lawmaker is not a named party in the suit: complying with such requests detracts from the performance of official duties. *See Wash. Suburban Sanitary Comm'n*, 631 F.3d at 181; *MINPECO*, 844 F.2d at 859 ("A litigant does not have to name members or their staffs as parties to a suit in order to distract them from their legislative work. Discovery procedures can prove just as intrusive."). The privilege applies with full force against requests for information about the motives for legislative votes and legislative enactments.

*In re Hubbard*, 803 F.3d at 1307-08, 1310.[2]  *See also id.* at 1310 n.11 (stating that "it is well-established that state lawmakers possess a legislative privilege that is "similar in origin and rationale to that accorded Congressmen under the Speech or Debate Clause") (citing *Supreme Court of Va. v. Consumers Union of U.S., Inc.*, 446 U.S. 719, 732 (1980)); *see also Bryant v. Jones*, 575 F.3d 1281, 1304 (11th Cir. 2009) (same).

---

[2] A subset of the legislative privilege is the deliberative process privilege. It protects documents which are "pre-decisional, deliberative and reflect the subjective motive of legislators." *Doe v. Nebraska*, 788 F. Supp.2d 975, 985 (D. Neb. 2011); *see also In re Grand Jury*, 821 F.2d 946, 959 (3d Cir. 1987) (suggesting the deliberative process privilege protects state legislators' "communications involving opinions, recommendations or advice about legislative decisions"). Many of the documents sought in the subpoenas issued to the Nonparty Legislators fall within those parameters as well.

1. **The subpoenas improperly seek inquiry into acts that occurred during the regular course of the legislative process and/or inquiry into the motivation for those acts.**

Here, the subpoenas issued to the Nonparty Legislators command both testimony and the production of literally every document in their possession touching upon HB 282 (Definition of Moral Turpitude Act of 2017), Section 177(b) of the Alabama Constitution, and Ala. Code § 15-22-36.1(a)(3). They target documents, communications and other materials that form an integral part of the deliberative and communicative process by which the Nonparty Legislators engaged in the legislative process, including the proposal, formulation, and passage of Section 177(b), HB 282, and Ala. Code § 15-22-36.1, and they seek evidence of motivation for those acts. For example, as previously established, Plaintiffs request the production of all documents and communications that relate in any way to HB 282 and concern "*the purpose, design, drafting, passage, implementation, or effect of HB 282.*" *See* Faulkner Subpoena, **Exhibit A** at ¶II.1.; Ward Subpoena, **Exhibit B** at ¶II.1.  Likewise, with respect to Section 177(b), Plaintiffs request the production of documents and communications that clearly concern the legislative process, including documents and communications that relate to "proposed legislation to *interpret, clarify, define, explain, amend, repeal, replace, or otherwise impose or remove legal obligations related to Section 177(b)* of the Alabama Constitution", and (2) "the *decision to draft, support, oppose, define, amend, lobby, discuss, revise, or otherwise argue for or against legislation related to Section 177(b)* of the Alabama Constitution and/or the legal obligations, restrictions, or structure imposed thereunder." *See* **Exhibit A** at ¶II.3.a-b; **Exhibit B** at ¶II.3.a.-b. Thus, with respect to the legislation at issue, the subpoenas target either acts that occurred during the regular course of the legislative process and/or the subjective motivation of the Nonparty Legislators (and, corporately, the Alabama Legislature) for acts undertaken during the legislative process. Indeed, Plaintiffs

8

specifically allege that racial discrimination was a "motivating factor" for passing HB 282 and Section 177(b). *See* Complaint, Doc. 1 at ¶¶ 161-168.

Thus, with respect to HB 282 and Section 177(b), the only purpose of the subpoenas directed to the Nonparty Legislators is to inquire either into acts that occur during the regular course of the legislative process or into the subjective motivation of those acting in a legislative capacity. *See In re Hubbard*, 803 F.3d at 1310-11. Legislative privilege, however, prohibits such discovery. *Gravel v. U.S.*, 408 U.S. 606, 625 (1972) (the privilege protects matters that are "an integral part of the deliberative and communicative process by which Members participate in House proceedings with respect to the consideration and passage or rejection of proposed legislation or with respect to other matters which the Constitution places within the jurisdiction of either House").

It is equally impermissible to allow discovery directed at legislators for the purpose of proving the Legislature's intent or motive through indirect means – such as inquiring into "the historical background of past official actions; the sequence of events leading up to the challenged decisions; departures from normal procedural sequences; substantive factors usually considered important in such decisions; and the legislative history of the decisions." *Dyas v. City of Fairhope*, Civ. A. No. 08-0232-WS-N, 2009 WL 3151879, at *8 (S.D. Ala. Sept. 24, 2009). The privilege "applies to questioning seeking to undermine that decision, including questioning concerning acts that are not themselves legislative and thus not independently privileged." *Id*. Thus, when the Supreme Court held in *Bogan v. Scott Harris* that "it simply is not consonant with our scheme of government for a court to inquire into the motives of legislators," 523 U.S. 44, 55 (1998) (internal quotes omitted), the Court did not open the door for proving legislative motive by indirection:

> A privilege that prohibits a plaintiff from asking a legislator what was said in the decisive meeting but allows questions concerning

9

> any potential influences on his or her decision-such as conversations with constituents, *review of documents and other information-*gathering, as well as potential bias-offers a legislator no protection worth having. Independence is equally threatened by the scrutiny, motives are probed by indirection, and the hassle and distraction are if anything enhanced.

*Dyas*, 2009 WL 3151879 at *9 (emphasis added).

In the instant case, it is difficult to imagine a more compelling case for the application of legislative privilege. Plaintiffs have requested all documents and communication "concerning the purpose, design, drafting, passage, implementation, or effect of HB 282." *See* **Exhibit A** at ¶II.1.; **Exhibit B** at ¶II.1. Plaintiffs plainly seek the subject materials to discredit legislative motive. Compelled disclosure of these materials, however, would chill future legislative deliberations and jeopardize legislative independence.

That same compelling case for legislative privilege extends to Plaintiffs' request for all documents and communications related to proposed legislation to "interpret, clarify, define, explain, amend, repeal, replace, or otherwise impose or remove legal obligations related to Section 177(b)", or materials related to the "decision to draft, support, oppose, define, amend, lobby, discuss, revise, or otherwise argue for or against legislation related to Section 177(b)." *See* **Exhibit A** at ¶II.a.b.; **Exhibit B** at ¶II.3.a.-b. As the Supreme Court recognized in *Tenney*, in its most basic formulation, legislative immunity attaches to *any act undertaken within the "sphere of legitimate legislative activity."* *Tenney*, 341 U.S. at 376 (emphasis added). More specifically, it covers any act that is an "integral part of the deliberative and communicative processes by which [legislators] participate in committee and House proceedings with respect to the consideration and passage or rejection of proposed legislation." *Gravel*, 408 U.S. at 625; *accord Bryant v. Jones*, 575 F.3d 1281, 1304-05 (11th Cir. 2009).

### 2. Plaintiffs may establish discriminatory purpose and motive through non-privileged evidence.

This is not to say that Plaintiffs are in any way prohibited from proving discriminatory purpose and motive by using evidence that does not implicate protected legislative matters. They are free to develop independent sources of evidence that do not violate the privilege, such as public statements made by elected officials, evidence of past and related discriminatory legislation, publicly available voting records, etc. *See, e.g., Simpson v. City of Hampton*, 166 F.R.D. 16, 19 (E.D. Va. 1996) ("[T]he plaintiffs in the case at bar may undertake to prove the council intended to discriminate, but their undertaking may not include the use of the councils' personal notes and files."). In fact, the Supreme Court's decision in *Village of Arlington Heights v. Metropolitan Housing Dev. Corp.*, 429 U.S. 252, 267-68 (1977) not only suggested such permissible alternative sources of motive that did not violate legislative privilege, but also the Court noted that it would be an "*extraordinary instance*" that would allow the direct questioning of legislators to establish motive.

*Arlington Heights* involved claims of racial discrimination against a municipality based on the denial of a zoning request that was necessary to build low and moderate-income housing. Recognizing that proof of a discriminatory motive was required to establish such claims, the Court outlined the sources of *non-privileged* information from which evidence could be derived including (1) "the historical background of the decision . . . particularly if it reveals a series of official actions taken for invidious purposes"; (2) "the specific sequence of events leading up to the challenged decision"; (3) "[d]epartures from the normal procedural sequence"; (4) "[s]ubstantive departures [as when] factors usually considered important by the decisionmaker strongly favor a decision contrary to the one reached"; and (5) "[t]he legislative or administrative

history . . . especially where there are contemporary statements by members of the decision making body, minutes of its meetings, or reports." *Id.* at 267-68.

Importantly, the *Arlington Heights* Court did not say that a litigant may depose a legislator to obtain information of such unlawful discriminatory motive. On the contrary, the Court made clear that utilizing a legislator to prove intent would rarely if ever be available. Given that "[p]lacing a decisionmaker on the stand is . . . usually to be avoided," it is only "[i]n some extraordinary instances [that] the members might be called to the stand at trial to testify concerning the purpose of the official action, [and] *even then such testimony frequently will be barred by privilege.*" *Id.* at 268 & n. 18 (emphasis added). "*Arlington Heights* thus appears to require both extraordinary circumstances **and** an exception to the privilege in order to question a legislator concerning intent." *GBM v. Merrill*, **Exhibit C** at 10.

The Honorable Judge Scott Coogler, United States District Court for the Northern District of Alabama, recently had occasion to address the application of *Arlington Heights* in a case involving strikingly similar challenges under the Fourteenth and Fifteenth Amendments of the U.S. Constitution. In *GBM v. Merrill*, the same organizing Plaintiff in the instant case−Greater Birmingham Ministries-unsuccessfully challenged Alabama's Photo ID Law, Ala. Code § 17-9-30, claiming that the law violated the Fourteenth and Fifteenth Amendments to the U.S. Constitution and various sections of the Voting Rights Act of 1965 ("VRA"). *See GBM v. Merrill*, **Exhibit C** at 2. As in this case, GBM issued subpoenas to nonparty legislators seeking legislative documents and communications to support their claims of purposeful discrimination under the Fourteenth and Fifteenth Amendments and to a lesser extent their VRA claims. *Id.* at 3.

In support of their subpoenas, GBM argued that the legislative privilege was not absolute, and that a claim of racial discrimination in voting (specifically their challenge to the Alabama

12

Photo ID law under the Fourteenth and Fifteenth Amendments) constituted the type of "extraordinary circumstance" recognized by *Arlington Heights*. *Id.* at 11. Judge Coogler, however, disagreed and specifically distinguished the decisions recognizing a limited exception to legislative privilege. Judge Coogler soundly rejected the Plaintiffs' argument.

First, Judge Coogler correctly found that, with respect to the enforcement of federal criminal statutes (as recognized in *United States v. Gillock*, 445 U.S. 360, 373 (1980)), the Supreme Court had

> explained that, for purposes of the legislative privilege, there is a fundamental difference between civil actions by private plaintiffs and criminal prosecutions by the federal government. *Gillock* 455 U.S. at 372–73 ("[I]n protecting the independence of state legislators, *Tenney* and subsequent cases on official immunity have drawn the line at civil actions.").

*Id.* at 12. *See also In re Hubbard*, 808 F.3d at 1311.

Second, Judge Coogler noted that, although it was true that some district courts had found a limited exception to legislative privilege in cases involving legislative redistricting, *i.e.*, "gerrymandering," the exception made sense because in contrast to GMB's challenge to the Voter ID Law, the subjective decision-making process of the legislature in redistricting is the very issue and crux of the constitutional challenge. *GBM v. Merrill*, **Exhibit C** at 12. Recognizing redistricting cases as "extraordinary" as contemplated by *Arlington Heights*, however, is not dispositive of the application and scope of the privilege. As Judge Coogler noted, many courts still apply a balancing test to determine whether and to what extent the privilege should be honored. *Id.* at 13. Even then, Judge Coogler noted that the application of a balancing test is limited to redistricting cases.[3] *Id.*

---

[3] Judge Coogler also cited a string of decisions wherein courts declined to abrogate the legislative privilege in cases dealing with Section 2 VRA challenges. *GBM v. Merrill*, **Exhibit C** at 15.

13

The "extraordinary instances" *Arlington Heights* contemplates do not exist here.[4] For example, in *Lee v. Virginia State Bd. of Elections*, No. 3:15CV357, 2015 WL 9461505 (E.D. Va. Dec. 23, 2015), the plaintiffs filed suit seeking to invalidate Virginia's voter identification bill. In furtherance of their claims, they issued several non-party subpoenas to members of the Virginia General Assembly for purposes of obtaining evidence of legislative intent, including requests for communications between the non-party legislators and legislative employees regarding several Senate voter identification bills and related topics discussed in the Virginia Senate. *Id*. at *1-2. The non-party legislators moved to quash the subpoenas, claiming that legislative privilege shielded the communications against disclosure. The court agreed, finding that "the Nonparty Legislators were acting in a legislative capacity by passing the Senate Bills in question and debating the topic of voter identification." *Id.* at *7. Consequently, the court granted the non-party legislators' motion to quash. *Id*. at *7-8. The same result should follow here.

Since *Arlington Heights*, courts, including the Eleventh Circuit in *In re Hubbard*, have relied on the legislative privilege to prevent efforts by plaintiffs to subject legislators to the burdens of civil litigation. *See, e.g.*, *Reeder v. Madigan*, 780 F.3d 799, 806 (7th Cir. 2015) (dismissing, based on legislative immunity, plaintiff's claim that the Illinois Senate violated his First Amendment rights by denying him media credentials); *Brown & Williamson Tobacco Corp. v. Williams*, 62 F.3d 408 (D.C. Cir. 1995) (quashing subpoenas for disclosure of subcommittee documents served on members of a Congressional subcommittee by private defendants in an

---

[4] As recognized in *In re Hubbard*, there are occasions when a lawmaker's legislative privilege must yield to vindicate important federal interests such as the enforcement of federal criminal statutes. 808 F.3d at 1311. Indeed, the Supreme Court has recognized a fundamental difference between civil actions by private plaintiffs and criminal prosecutions by the federal government. *See United States v. Gillock,* 445 U.S. 360, 372-73 (1980) ("[I]n protecting the independence of state legislators, *Tenney* and subsequent cases on official immunity have drawn the line at civil actions.").

14

unrelated civil lawsuit); *MINPECO, S.A. v. Conticommodity Servs., Inc.*, 844 F.2d 856 (D.C. Cir. 1988) (same).

In the instant case, Plaintiffs' own Complaint reveals that they have made detailed allegations in 61 paragraphs of their Complaint to support their claims of discriminatory motive. *See* Complaint Doc. 1 at ¶¶ 82-143. Indeed, this Court cited these allegations as a basis for denying Plaintiffs motion to dismiss Counts I and II of their Complaint. 12/26/2017 Mem. Op. & Order, Doc. 80 at 16. Furthermore, Plaintiffs are free to further delve into these sources of evidence that do not violate the privilege. *See, e.g., Simpson*, 166 F.R.D. at 19.

### 3. Legislative privilege provides a testimonial privilege as well.

Although discussed generally above, State legislative privilege in federal question cases protects state legislators not only from compelled disclosure of documentary evidence, but also from inquiry through testimony directed at acts that occurred during the regular course of the legislative process and into the motivation for those acts.[5] *See Kay v. City of Rancho Palos Verdes*, No. CV 02–03922 MMM RZ, 2003 WL 25294710, at *9–11 (C.D. Cal. Oct. 10, 2003). *See also Butnick v. McLean*, 76 F.3d 611, 613 (4th Cir. 1996) (local legislators are entitled to immunity and testimonial privilege for legislative acts); *Texas v. Holder*, Case No. 12-128, 1012 WL 13070060, at *1 (D.D.C., June 5, 2012) ("Like the Constitution's Speech or Debate Clause, the legislative privilege provides a legislator not only immunity from suit, but also a testimonial and evidentiary privilege.") (internal citations omitted), *rev'd on other grounds*, 133 S. Ct. 2886 (June 27, 2013); *Cunningham v. Chapel Hill, ISD*, 438 F. Supp. 2d 718, 722 (E.D. Tex. 2006) ("local legislators are protected by the testimonial privilege from having to testify about actions taken in the sphere

---

[5] *See Rodriguez v. Pataki*, 280 F. Supp. 2d 89, 93–94, 101 (S.D.N.Y. 2003) (broadly defining the scope of legitimate legislative activity to include preliminary fact-finding and bill-drafting activities, since, "[a]s every high school student knows, the process of drafting legislation is also an important part of how a bill becomes law.").

of legitimate legislative activity"); *Florida v. United States*, 886 F. Supp. 1301 (N.D. Fla. 2012) (denying motion to compel testimony and documents in VRA case).

The application of the privilege to testimony is supported by its underlying policy goal, namely protecting legislators from interference with their legislative duties and to "protect the integrity of the legislative process by [e]nsuring the independence of individual legislators." *United States v. Brewster*, 408 U.S. 501, 507 (1972). *See also Spallone v. United States*, 493 U.S. 265, 279 (1990) ("[A]ny restriction on a legislator's freedom undermines the 'public good' by interfering with the rights of the people to representation in the democratic process"); *Small v. Hunt*, 152 F.R.D. 509, 512 (E.D.N.C. 1994) ("[L]egislative immunity is both an evidentiary and testimonial privilege, as well as a protection against civil suit"); *Marylanders for Fair Representation, Inc. v. Schaefer*, 144 F.R.D. 292, 297 (D. Md. 1992) ("Legislative immunity not only protects state legislators from civil liability, it also functions as an evidentiary and testimonial privilege"). Requiring a legislator to testify in a suit harms the independence of the legislative process whether or not the legislator also faces civil liability.

Furthermore, as previously established, the Supreme Court recognized in *Arlington Heights* that only in "*extraordinary instances*" would direct questioning be allowed of legislators concerning the purpose of an official action, and even then, "*such testimony will be frequently barred by privilege.*" 429 U.S. at 268 (emphasis added). In other words, this precedent suggests that even when information sought by Plaintiffs from the state legislators is relevant, its relevance is insufficient to overcome the legislative privilege.[6] Indeed, the *Arlington Heights* Court

---

[6] *See also John Does 1-4 v. Snyder*, 932 F. Supp. 2d 803, 810 (E.D. Mich. 2013) ("[C]ourts are wary of considering the 'almost always cacophonous' comments of individual legislators in determining legislative intent.") (citing *Isle Royale Boaters Ass'n v. Norton*, 330 F.3d 777, 784 (6th Cir. 2003) (legislative "intent is better derived from the words of the statute itself than from a patchwork record of statements inserted by individual legislators and proposals that may never have been adopted by a committee, much less an entire legislative body.")).

16

specifically cautioned against compelling such testimony, stating that "judicial inquiries into legislative or executive motivation represent a substantial intrusion into the workings of other branches of government" and that "[p]lacing a decisionmaker on the stand is therefore 'usually to be avoided.'" *Id.* at 268 & n.18. *See also Favors v. Cuomo*, Case No. 11–CV–5632, 2015 WL 7075960, *15 (E.D.N.Y., Feb. 8, 2015) ("In only the rarest of circumstances will courts compel testimony from legislators asserting legislative privilege."). Such protection is necessary to "shield legislators from civil proceedings which disrupt and question their performance of legislative duties to enable them to devote their best efforts and full attention to the public good." *See, e.g.*, *Searingtown Corp. v. Incorporated Village of N. Hills*, 575 F. Supp. 1295, 1299 (E.D.N.Y. 1981) (precluding discovery into motivation of local legislators for rezoning decision that plaintiffs claimed violated their constitutional rights).

### III. CONCLUSION

Without question, the testimony and documents Plaintiffs seek in the instant case concern the motivation of the Nonparty Legislators (and, corporately, the Alabama Legislature), as well as acts that fall well-within the sphere of legitimate legislative activity, including, as set out in the subpoenas, *designing, drafting, passing or implementing, interpreting, clarifying, defining, explaining, amending, repealing, replacing, lobbying, discussing, supporting, opposing, and revising* legislation. *See* **Exhibit A** at ¶II.1, 2., 3.a-b; **Exhibit B** at ¶II.1., 2., 3.a.-b. Such activity is quintessentially legislative, and legislators so engaged deserve the protection the *Tenney* Court has extended to them. Furthermore, in the instant case, the potential interference with the Nonparty Legislators' performance of their public duties is greatly exacerbated by the fact that their depositions and document production deadlines are scheduled during the opening days of the 2019 Regular Session, and would require additional time to prepare.

Hauling legislators into court to testify about how or why a bill was voted on in committee and by the chamber as a whole is precisely the sort of burden the doctrine of legislative privilege is designed to preclude. *See MINPECO, S.A. v. Conticommodity Servs., Inc.*, 844 F.2d 856, 862-63 (D.C. Cir. 1988); *United Transp. Union v. Springfield Terminal Ry. Co.*, 132 F.R.D. 4, 6 (D. Me. 1990). The Supreme Court, moreover, has recognized that legislative protections extend beyond pure legislative speech or debate "'when necessary to prevent indirect impairment of such deliberations.'" *United States v. Swindall*, 971 F.2d 1531, 1545 (11th Cir. 1992) (quoting *Gravel*, 408 U.S. at 625, 92 S. Ct. at 2627) (emphasis omitted). As cogently summarized by Judge Coogler in *GBM v. Merrill*,

> [L]egislative privilege protects the process that legislators must go through in opposing or responding to such requests and is not simply based upon the substance of the requests. *See In re Hubbard*, 803 F.3d at 1310 (holding that one of the privilege's principle purposes is to ensure that lawmakers are allowed to focus on their public duties free from the distraction of complying with discovery requests). Legislators, and their staff members, must divert substantial time, energy, and attention from their legislative work to oppose discovery requests. Such actions deprive the legislators of the time and freedom to carry out the duties the public has entrusted to them.

*GBM v. Merrill*, **Exhibit C** at 23-25. These are precisely the problems that Nonparty Legislators seek to halt in this motion to quash.[7]

In sum, as the Founders recognized long ago, for democracy and federalism to flourish, state legislators must be free to operate within their proper legislative sphere without fear of being subjected to civil suits or civil process in state or federal court. There is no precedent or policy

---

[7] *See also Powell v. Ridge*, 247 F.3d 520, 530 (3d Cir. 2001) (Roth, J., concurring) ("If legislative privilege from civil discovery exists, either for a party, as in the instant case, or for a non-party as it may arise in the future, it exists to protect legislators from the burden of having to respond to discovery and of having to deal with the distractions and disruptions that discovery imposes on their ability to carry out their governmental functions."); *United States v. Rayburn House Office Building*, 497 F.3d 654, 660 (D.C. Cir. 2007) (noting that discovery procedures can prove just as intrusive as naming legislators as parties).

18

that overrides these fundamental principles. "[A]ny restriction on a legislator's freedom undermines the 'public good' by interfering with the rights of the people to representation in the democratic process." *Spallone v. United States*, 493 U.S. 265, 279, 110 S. Ct. 625, 634 (1990) (citations omitted).

**WHEREFORE, PREMISES CONSIDERED**, the Nonparty Legislators respectfully request that the Court enter an immediate order (1) quashing service of subpoenas commanding them to testify at deposition and to contemporaneously produce documents, and (2) enjoining Plaintiffs from issuing subpoenas or attempting to effect any other service of process upon the Nonparty Legislators during the term of the 2019 Regular Session or thereafter.

Respectfully submitted this 25th day of February, 2019.

/s/ Christopher W. Weller
CHRISTOPHER W. WELLER (WEL020)
Attorney for Defendant Representative David Faulkner

OF COUNSEL
Capell & Howard, P.C.
P. O. Box 2069
Montgomery, AL  36102-2069
(334) 241-8000
(334) 241-8266
Chris.weller@chlaw.com

/s/ Marc James Ayers
MARC JAMES AYERS (AYE006)
Attorney for Defendant Senator Cam Ward

OF COUNSEL
BRADLEY ARANT BOULT CUMMINGS LLP
One Federal Place
1819 Fifth Avenue North
Birmingham, Alabama 35203-2119
(205) 521-8000
(205) 521-8800 (Fax)
mayers@bradley.com

**CERTIFICATE OF SERVICE**

      I hereby certify that, on the 25th day of February, 2019, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:

Armand G. Derfner (aderfner@derneraltman.com);

Danielle Lang (dlang@campaignlegalcenter.org);

James U. Blacksher (jblacksher@ns.sympatico.ca);

Jessica Ring Amunson (jamunson@jenner.com);

J. Gerald Herbert (gherbert@campaignlegalcenter.org);

J. Mitch McGuire (jmcguire@mandabusinesslaw.com);

Mark P. Gaber (mgaber@campaignlegalcenter.org);

Michael E. Stewart (mstewart@jenner.com);

James W. Davis (jimdavis@ago.state.al.us);

Misty S. Fairbanks Messick (mmessick@ago.state.al.us);

Brad A. Chynoweth (bchynoweth@ago.state.al.us);

Laura E. Howell (lhowell@ago.state.al.us);

Winfield Sinclair (wsinclair@ago.state.al.us);

**And by U.S. Mail:**

  Aderson B. Francois
  Institute for Public Representation
  Georgetown University Law Center
  600 New Jersey Avenue NW
  Washington, DC 20001

  Pamela Karlan
  Stanford Law School
  Nathan Abbott Way at Alvarado Row
  Stanford, CA 94305

                                          /s/ Christopher W. Weller