IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| TREVA THOMPSON, *et al*., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | CIVIL CASE NO. 2:16-cv-783-ECM |
| | ) | [WO] |
| STATE OF ALBAMA, *et al*., | ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM OPINION and ORDER**

Now pending before the Court are a renewed motion to dismiss, motion to dismiss supplemental complaint, or in the alternative, motion for summary judgment (Doc. 95) filed by the Defendants on March 15, 2018; a cross-motion for summary judgment on count 18 (Doc. 97) filed by the Plaintiffs on April 5, 2018; and a motion to strike untimely declaration (Doc. 109) filed by the Defendants on May 22, 2018.

Upon consideration of the complaint, the supplemental complaint, the motions, and the briefs and submissions of the parties, and for the reasons that follow, the Defendants' renewed motion to dismiss is due to be DENIED, the motion to dismiss is due to be GRANTED in part and DENIED in part, the motions for summary judgment are due to be DENIED, and the motion to strike is due to be DENIED as moot.

## I.     FACTS and PROCEDURAL HISTORY

The individual Plaintiffs are citizens who either have been denied applications to vote because of, or have not registered to vote due to uncertainty arising from, the Alabama

Constitution's exclusion from voting of persons convicted of crimes of moral turpitude. The organizational plaintiff, Greater Birmingham Ministries ("GBM"), expends resources to help individuals with felony convictions determine if they are eligible to vote or to have their voting rights restored.

In 1996, an amendment to the Alabama Constitution was ratified which provides that "[n]o person convicted of a felony involving moral turpitude . . . shall be qualified to vote until restoration of civil and political rights." Ala. Const. art. VIII, § 177(b).  This section did not define "moral turpitude."  A separate statute, Ala. Code §15-22-36.1(a)(3), sets out the procedure for a person to apply to the Board of Pardons and Paroles for a Certificate of Eligibility to Register to Vote.

On September 26, 2016, the Plaintiffs filed a putative class-action complaint in this Court challenging Alabama Constitution §177(b) and Ala. Code §15-22-36.1(a)(3).

The Defendants filed a motion to dismiss the original complaint on November 16, 2016. (Doc. 43).

House Bill 282 ("HB 282"), codified at Ala. Code § 17-3-30.1, went into effect on August 1, 2017, and defines crimes of moral turpitude.  The statute lists forty-seven crimes tied to specific Alabama Criminal Code Sections and lists crimes "as defined by the laws of the United States or by the  laws of another state, territory, country, or other jurisdiction, which, if committed in this state, would constitute one of the offenses listed in this subsection." Ala. Code § 17-3-30.1(c).

On December 26, 2017, the Court denied the Defendants' motion to dismiss in part and granted it in part. (Doc. 80).  The Court concluded that counts asserting vagueness of

§ 177(b) were mooted by Ala. Code. § 17-3-30.1 and dismissed those counts. (Doc. 80 at 28).

With respect to counts 1 and 2, which are claims that section 177(b) of the Alabama Constitution violates the Fourteenth and Fifteenth Amendments, this Court found as follows:

> Here, without suggesting any view on whether Plaintiffs ultimately will be able to prove intentional discrimination and having considered Defendants' arguments, the court finds, under *Arlington Heights* that the law's impact, its historical context, and the events leading up to the enactment of section 177(b) are sufficient to allege a plausibly discriminatory intent to disenfranchise black voters.

(Doc. 80 at 14).

As to counts 11 and 12, which are claims that section 177(b) is an *Ex post facto* law that retroactively punishes citizens and violates the Eighth Amendment's proscription against cruel and unusual punishment, this Court found as follows:

> Absent developed arguments from Defendants, the court declines to formulate the arguments, to attempt to discern the legislature's intent behind section177(b)'s enactment, and to apply the multiple factors relevant to that analysis. That analysis is better left for another stage of this lawsuit, on an evidentiary record and on reasoned arguments.

(Doc. 80 at 30-31).

As to count 13, the Court concluded that the parties had not adequately addressed in briefing the level of scrutiny to be applied in the analysis and found even rational basis review did not justify dismissal on the Defendants' thin arguments. (Doc. 80 at 35).

As a result of this Court's Order, the Plaintiffs proceeded on their claims in counts 1, 2, 11, 12, and 13.  (Doc. 80 at 40).

On March 1, 2018, the Plaintiffs filed a supplemental complaint (Doc. 93).[1]  In it, the Plaintiffs have alleged that the Alabama Secretary of State unilaterally determined that HB 282 applies retroactively to persons convicted of crimes prior to the effective date of HB 282. (Doc. 93 at ¶14).  They contend that the statute is plainly written to apply prospectively.  In their supplemental complaint, the Plaintiffs added factual allegations to counts 1, 2, 11, 12, and 13 and added counts 16, 17, and 18.  Count 16 is a claim that the Secretary of State's determination that HB 282 applies retroactively is contrary to the language of the statute and therefore violates the Due Process Clause of the Fourteenth Amendment.  Count 17 is a claim that the retroactive application of Ala. Code § 17-3-30.1 violates the Due Process Clause.

Count 18 is a claim for violation of the National Voter Registration Act of 1993, 52 U.S.C. § 20501 *et seq*. ("NVRA").  The Plaintiffs challenge two forms:  the State of Alabama Mail-In Voter Registration Form ("State Form") and the state-specific instructions for Alabama on the National Mail Registration Form ("Federal Form").  The Plaintiffs' statutory claim is that Defendants failed to include complete voter eligibility requirements on the forms in violation of the NVRA by referring only to "disqualifying felonies" without listing those felonies. At the time of the supplemental complaint, the

---

[1]     The Plaintiffs did not file a complete, new amended complaint.  Instead, they began the supplemental complaint with the new count 16. They also included additional facts relevant to counts in the supplemental complaint.

State Form stated simply that to register to vote in Alabama a person must not have been convicted of a disqualifying felony, or if the person has been convicted, must have had their civil rights restored. (Doc. 93 at ¶ 19).

In response to the supplemental complaint, the Defendants filed a motion to dismiss which renews their motion to dismiss as to counts 1, 2, 11, 12, and 13; which seeks dismissal of counts 16, 17, and 18; and which alternatively moves for summary judgment as to count 18. The Plaintiffs have cross-moved for summary judgment as to count 18.

On July 23, 2019, the Defendants filed a notice with the Court and attached to that notice a revised State Form (Doc. 171-1 at 4) which states in the requirements section that to register to vote you must not "have been convicted of a disqualifying felony, or if you have been convicted, you must have had your civil rights restored."  In the Voter Declaration section, the form now also includes this statement: "I am not barred from voting by reason of a disqualifying felon conviction (The list of disqualifying felonies is available on the Secretary of State's web site at:  sos.alabama.gov/mtfelonies)." (Doc. 171-1 at 4).   The State instructions for the Federal Form now state that to register in Alabama you must "not have been convicted of a felony involving moral turpitude (or have had your civil and political rights restored). The list of moral turpitude felonies is available on the Secretary of State web site at: sos.alabama.gov/mtfelonies." (Doc. 171 at 2).

The parties have advanced arguments regarding the revised forms in notices to the Court filed by the Defendants and a response to Defendants' notice filed by the Plaintiffs. (Doc. 161, 164, 171).  The parties have also filed supplemental notices regarding two non-binding decisions. (Doc. 173, 174).

## II. LEGAL STANDARDS

### A. Motion to Dismiss

A Rule 12(b)(6) motion to dismiss tests the sufficiency of the complaint against the legal standard set forth in Rule 8: "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U. S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U. S. 544, 570 (2007)).

"Determining whether a complaint states a plausible claim for relief [is] ... a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 663 (alteration in original) (citation omitted). The plausibility standard requires "more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U. S. at 678. Conclusory allegations that are merely "conceivable" and fail to rise "above the speculative level" are insufficient to meet the plausibility standard. *Twombly*, 550 U. S. at 555, 570. This pleading standard "does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id.* at 678. Indeed, "[a] pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Id.*

### B. Motion for Summary Judgment

"Summary judgment is proper if the evidence shows 'that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'"

6

*Hornsby-Culpepper v. Ware*, 906 F.3d 1302, 1311 (11th Cir. 2018) (quoting Fed. R. Civ. P. 56(a)).  "[A] court generally must view all evidence and make all reasonable inferences in favor of the party opposing summary judgment." *Fla. Int'l Univ. Bd. of Trs. v. Fla. Nat'l Univ., Inc.*, 830 F.3d 1242, 1252 (11th Cir. 2016).  However, "conclusory allegations without specific supporting facts have no probative value."  *Jefferson v. Sewon Am., Inc.*, 891 F.3d 911, 924–25 (11th Cir. 2018).  If the record, taken as a whole, "could not lead a rational trier of fact to find for the non-moving party," then there is no genuine dispute as to any material fact. *Hornsby-Culpepper*, 906 F.3d at 1311 (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).

The movant bears the initial burden of demonstrating that there is no genuine dispute as to any material fact, and the movant must identify the portions of the record which support this proposition. *Id.* (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)). The movant may carry this burden "by demonstrating that the nonmoving party has failed to present sufficient evidence to support an essential element of the case." *Id.*  The burden then shifts to the non-moving party to establish, by going beyond the pleadings, that a genuine issue of material fact exists. *Id.* at 1311–12.

In resolving cross-motions for summary judgment, the Court construes the facts in the light most favorable to the nonmovant when the parties' factual statements conflict or inferences are required.  *Barnes v. Southwest Forest Industries*, 814 F.2d 607, 609 (11th Cir.1987). Cross-motions for summary judgment will not, in themselves, warrant the court in granting summary judgment unless one of the parties is entitled to judgment as a matter

of law on facts that are not genuinely disputed. *United States v. Oakley*, 744 F.2d 1553, 1555 (11th Cir. 1984).

## III.   DISCUSSION

The Defendants move to dismiss certain parties based on the Court's previous Order; renew their original motion to dismiss as to counts 1, 2, 11, 12, and 13; move to dismiss counts 16 and 17 of the supplemental complaint; and move to dismiss or alternatively for summary judgment as to count 18 of the supplemental complaint. The Plaintiffs filed a motion for summary judgment only as to count 18. In connection with the summary judgment motion, the Defendants move to strike evidence submitted by the Plaintiffs. The Court will consider each motion in turn.

A.  Motion to Dismiss Certain Parties

The Defendants contend that because in its previous Order the Court dismissed all of the counts in which the State of Alabama is listed as a Defendant, the State ought to be dismissed as a party. The Plaintiffs do not respond to this argument in their brief, apparently conceding the point. The Plaintiffs' supplemental complaint lists Defendant John H. Merrill, in his official capacity as the Secretary of State, not the State of Alabama, as the first Defendant, and no count of the supplemental complaint is asserted against the State of Alabama. (Doc. 93). The Court concludes, therefore, that the State of Alabama is due to be dismissed as a separate party.

The Defendants also argue that Plaintiffs Antwoine Giles ("Giles") and Laura Corley ("Corley") are now able to vote, so their claims are moot, and they should be

dropped as Plaintiffs in this case.  The Plaintiffs respond that they have not agreed to the dismissal of Giles and Corley because they wish to preserve the issue of mootness for appeal. (Doc. 97 at 8, n.1).  It appears that the Plaintiffs do not dispute that the claims of these two Plaintiffs are moot under this Court's analysis.  The Plaintiffs can appeal a mootness determination by the Court.  *See, e.g., Troiano v. Supervisor of Elections in Palm Beach Co., Fla*., 382 F.3d 1276, 1281 (11th Cir. 2004) (voters appealed determination that their claims were moot).  Accordingly, the Court will grant the motion to dismiss and dismiss these two Plaintiffs' claims on the ground of mootness.

B.  Motion to Dismiss Counts 1, 2, 11, 12, 13

With respect to counts 1, 2, and 13, the Defendants merely reincorporate the briefs they submitted in support of their original motion to dismiss. (Doc. 95 at 2, 13).[2]  The Plaintiffs respond that successive motions to dismiss the same claims are improper, and also argue that as a motion to reconsider, the Defendants' motion is due to be denied because it is inappropriate to relitigate issues raised in an earlier motion, citing *Harris v. Corr. Corp. of Am.*, 433 F. App'x 824, 825 (11th Cir. 2011).

Although the Plaintiffs added factual allegations in their supplemental complaint, the Defendants' motion as to counts 1, 2, and 13 is based on the same arguments already advanced in its initial motion and is construed as a request for reconsideration of the Court's denial of the motion to dismiss as to those counts.  Motions to reconsider are

---

[2]     The Defendants also reincorporate their briefing from the original motion to dismiss as to count 12, but they also advance additional arguments which they contend apply to count 11 and count 12. The Court will address separately counts 11 and 12.

generally granted only if there is newly-discovered evidence or a manifest error of law or fact. *See Arthur v. King*, 500 F.3d 1335, 1343 (11th Cir. 2007).  By merely citing to previous briefing on an earlier motion, the Defendants have established neither.  The Court concludes, therefore, that there is no cause to reconsider its determination, and concludes that that the renewed motion to dismiss is due to be DENIED as counts 1, 2, and 13.

With respect to counts 11 and 12 of the original complaint, the Defendants again do not contend that there is new information, but merely state that the claims should be dismissed based on "developed arguments" that were "not highlighted in [the] original motion to dismiss." (Doc. 95 at 2).  The Defendants assert that the complaint and supplemental complaint do not plead a plausible *Ex post facto* or Eighth Amendment claim because the Plaintiffs do not allege that felon disenfranchisement is penal in nature, and the statutes do not impose greater punishment than the law at the time of the Plaintiffs' offenses.

The Plaintiffs respond that raising these arguments now is inappropriate.  *Cf. Stone v. Wall*, 135 F.3d 1438, 1442 (11th Cir. 1998) (stating "[t]he purpose of a Rule 59(e) motion is not to raise an argument that was previously available but not pressed.").

This Court previously determined that the question of whether the statutes in question constitute punishment is one which must be determined after factual development, and after application of multi-factor analysis. (Doc. 80 at 29-31).  This Court explained that the determination of the punitive nature of the statutes could not be made without an "evidentiary record" and "developed arguments."  (Doc. 80 at 30-31).  Therefore, the Court

is not inclined to revisit its analysis as to counts 11 and 12 because there is not yet an evidentiary record.

Even if the Court considered the Defendants' now-developed arguments, the Court notes, as the Plaintiffs point out in their opposition to the new motion to dismiss, that the Eleventh Circuit has acknowledged that criminal disenfranchisement provisions have existed as a punitive device. *See Johnson v. Governor of State of Fla.*, 405 F.3d 1214, 1218 & n.5 (11th Cir. 2005) (*en banc*).  As this Court explained previously, in examining an *Ex Post Facto* Clause challenge, a court must look to the legislative intent at the time of the challenged statute's passage. (Doc. 80 at 29).  The Court, therefore, again concludes that factual development is needed to evaluate the claims.

With respect to the argument that there can be no plausible allegation that a new punishment is imposed, the Court finds this argument unavailing, based on its previous Orders. This Court previously reasoned that HB 282 mooted some claims because it clarified for the Plaintiffs the convictions which are felonies involving moral turpitude. (Doc. 80 at 28)(incorporating Doc. 72 at 17-18).  The amended statutes as applied have made it clear, whereas before it was arguably unclear, which persons are now disenfranchised.  Therefore, for purposes of a motion to dismiss, the Court concludes that the Plaintiffs have stated a plausible claim that greater punishment is now imposed by the clarified law than the arguably ambiguous law in effect at the time of the Plaintiffs' offenses.  The Court again concludes that the motion to dismiss as to counts 11 and 12 is due to be DENIED.

C. Motion to Dismiss Count 16

11

The Defendants move to dismiss count 16 on the ground that if it is a claim that the Secretary of State is not correctly enforcing the new statute, it is barred by the Eleventh Amendment. The Defendants also argue that there is no substantive due process right to vote for felons, that an error in applying state law cannot constitute a procedural due process violation, and that the Plaintiffs have not shown the lack of a state remedy. The Defendants also take issue with the Plaintiffs' reading of §177(b). Finally, the Defendants argue that if there is any question about the meaning of the state law, this Court should certify a question to the Alabama Supreme Court.

Count 16 of the supplemental complaint alleges that the Plaintiffs have been deprived of a state-created right to vote in violation of the Due Process Clause of the Fourteenth Amendment. The Plaintiffs' theory is that the retrospective application of Section 17-3-30.1 to people with disqualifying convictions before August 1, 2017 is not consistent with the wording of the statute and, therefore, the disenfranchised are deprived of their right to vote in violation of the Due Process Clause. The claim is not, as the Defendants have characterized it, that the State of Alabama was improperly applying state law as a stand-alone claim, but is instead that by interpreting state law to apply retrospectively, the State of Alabama has violated state law in a way which violated the federal rights of voters who had committed certain felonies which had not been determined to be disqualifying at the time of their offense.

The Plaintiffs rely in part on *Duncan v. Poythress*, 657 F.2d 691 (5th Cir. 1981),[3] in response to the Defendants' arguments based on procedural due process.  In *Duncan*, the court examined a violation of substantive due process when a state failed to provide an election, impinging on the right to vote.  *Id.* at 704.  The Plaintiffs' position is that once the State of Alabama gave certain persons with felony convictions the right to vote, it could not then take away that right in violation of state law. (Doc. 97 at 29).

The Plaintiffs' characterization of their claim, as the Court understands it, is one which has not been thoroughly addressed by the Defendants and which the Court finds needs additional briefing.  The arguments which have been advanced also reveal that development of the facts is required.   For example, the Defendants support their interpretation of state law by relying on the complexity of administering the statute under a different interpretation and on the number of people disenfranchised under a particular interpretation. (Doc. 95 at 14 & n.6).  Relying on outside indicators of legislative intent does not appear consistent with plain meaning analysis. *See Chism v. Jefferson Cty.*, 954 So. 2d 1058, 1069 (Ala.)(quotation omitted)(stating "a court should gather the legislative intent from the language of the statute itself. If the statute is ambiguous or uncertain, the court may consider conditions that might arise under the provisions of the statute and examine results that would flow from giving the language in question one particular meaning rather than another."), *as modified on reh'g* (Ala. 2006); *cf. Landgraf v. USI Film Prod.*, 511 U.S. 244, 280 (1994)(examining retroactivity in the context of federal law and

---

[3]      Decisions of the former Fifth Circuit issued prior to October 1, 1981 are binding precedent. *Bonner v. City of Prichard, Ala*., 661 F.2d 1206, 1210 (11th Cir.1981) (*en banc*).

stating that "first task is to determine whether Congress has expressly prescribed the statute's proper reach. If Congress has done so, of course, there is no need to resort to judicial default rules."). Therefore, the Defendants' argument that the statute must be interpreted as applying retrospectively may ultimately prevail, but it needs further factual development.

The Court cannot agree that the Defendants have established a basis for dismissal of count 16 at this point in the proceedings. The issues raised, including the issue of whether a question should be certified to the Alabama Supreme Court, can be taken up again at a later point in the proceedings after development of the facts, along with other issues that require more complex analysis than has been provided to this point.

D.  Motion to Dismiss Count 17

The Defendants contend that this count of the supplemental complaint is duplicative of the *Ex Post Facto* Clause claim and suffers from the same flaws. In opposition to the Defendants' motion, the Plaintiffs argue that if during this litigation the felony disenfranchisement statute is determined to be civil, and not penal, its retroactive application violates due process. In other words, count 17 is pleaded as an alternative count to count 11.

To the extent that the Defendants' previously advanced arguments regarding the *Ex Post Facto* Clause claim are raised in connection with this claim, for the same reasons previously discussed in this Order and in previous Orders, those grounds for dismissal are unavailing. The Court now turns to arguments specific to the alternatively pleaded civil penalty claim.

Retrospective application of law is said to be disfavored and there are multiple prohibitions of it. *See Landgraf*, 511 U.S. at 268. The *Ex Post Facto* Clause prohibits laws that impose punishment for acts not punishable when committed or that impose greater disadvantages upon the offender than those imposed when the act was committed. *Weaver v. Graham*, 450 U.S. 24, 28–29 (1981). The Due Process Clause "also protects the interests in fair notice and repose that may be compromised by retroactive legislation." *Landsgraf*, 511 U.S. at 266. Retroactivity is present if a statute would impair rights a party possessed when he acted, increase a party's liability for past conduct, or impose new duties with respect to transactions already completed. *Id.* at 280.

The Plaintiffs analogize the claim in count 17 to one which challenges the imposition of punitive damages on the basis that the damages are so high, the tortfeasor cold not have had reasonable notice of the potential severity of the civil penalty. *See BMW of N. Am. Inc*., 517 U.S. 573 (1996). This type of due process claim also has arisen in the context of the application of a bar to seeking relief from deportation based on a resident alien having pleaded guilty to a felony. *See Immigration and Naturalization Service v. St. Cyr*, 533 U.S. 289, 324-25 (2001). This Court concludes, therefore, that while the Plaintiffs may not ultimately prevail on this claim, they have plausibly alleged that application of the statute is a civil and not criminal penalty.

One argument advanced by the Defendants specific to the Due Process claim is that there is a rational basis for the statute, so the claim is due to be dismissed. In support of the proposition that this claim is subject to rational basis analysis, however, the Defendants cite a case which is distinguishable because in that case the Supreme Court merely declined

to depart from the standard of review used by the lower courts in evaluating an Equal Protection claim. (Doc. 95 at 16)(citing *Heller v. Doe*, 509 U.S. 312, 319 (1993)).

The Plaintiffs' position is that the rational basis test is not the appropriate test to apply.  The Plaintiffs cite to *Kramer v. Union Free Sch. Dist. No. 15*, 395 U.S. 621, 626 (1969), in which the Supreme Court explained that when it reviews statutes which deny some residents the right to vote, the general presumption of constitutionality "if the Court can conceive of a 'rational basis' for the distinctions made are not applicable."

In part because the Defendants did not file a reply in support of their motion to dismiss, the Defendants have not addressed the Plaintiffs' arguments regarding the standard of review.  At this point in the proceedings, therefore, the Court cannot conclude as a matter of law that the alternatively pleaded civil claim is due to be dismissed.  The issues raised regarding this claim can be more fully developed at a later stage of the case.

E.  Motion to Dismiss or for Summary Judgment as to Count 18

The Defendants have moved to dismiss count 18 of the supplemental complaint, or, alternatively, moved for summary judgment on that count.  The alternative motion appears to be supported by evidence of the registration forms used by other states.  The Plaintiffs also moved for summary judgment as to count 18.

In replying to the Defendants' opposition to the Plaintiffs' cross motion for summary judgment, the Plaintiffs attached a new declaration, which is the subject of the Defendants' motion to strike.  Therefore, the Court will first turn to the motion to strike before addressing the merits of the cross motions and motion to dismiss.

1.  Motion to Strike

16

The Defendants contend that the declaration of Tari Williams could have been and should have been, under the briefing order, attached to the Plaintiffs' original motion for summary judgment. The Plaintiffs respond that a motion to strike is not appropriate relief for evidence in support of a motion for summary judgment, and that the evidence is appropriate because it was offered in opposition to a specific point raised by the Defendant in opposition to summary judgment.

New evidence is not properly considered if offered for the first time in support of a reply brief, but evidence can be offered to rebut a point raised in an opposition brief. *See Hinson v. Chelsea Indus., Inc*., 542 F. Supp. 2d 1236, 1248 (M.D. Ala. 2008) (finding that reply evidence would be considered and citing case law for the proposition that reply evidence is not new when the reply brief addressed the same set of facts supplied in opposition to the motion). To the extent the evidence offered by the Plaintiffs is in response to an argument by the Defendants, it is not due to be stricken. As will be discussed below, however, the evidence presented in the context of the cross-motions for summary judgment relates more to remedy than statutory interpretation and will not be considered at this time. Therefore, because the Court has not considered the evidence, the motion to strike is due to be DENIED as moot.

2. Motion to Dismiss and Cross Motions for Summary Judgment

Count 18 of the supplemental complaint alleges that the State Form and the instructions for the Federal Form, violate the NVRA because the forms must include eligibility information.

The Defendants originally moved to dismiss or for summary judgment on the federal and state aspects of this claim. The Plaintiffs have also moved for summary judgment on this count and have argued that the violation of the NVRA can be decided on summary judgment, but also contend that Plaintiff GMB should have an opportunity to discover and present evidence that the current form fails to serve their purpose under the NVRA. (Doc. 97 at 40).

With respect to the Federal Form specifically, the Defendants state that the claim is moot because all the Secretary of State can do is inform the EAC of changes to the law, which he has done.  In their reply brief, the Plaintiffs concede that the claim regarding the Federal Form is moot, because the Secretary of State has complied with his statutory obligation. (Doc. 108 at 1, n.1).  Therefore, the Defendants' motion to dismiss is due to be GRANTED, and the Plaintiffs' cross motion for summary judgment is due to be DENIED, to the extent that the claim based on the Federal Form is moot.

The State Form, at the time the Plaintiffs filed their supplemental complaint, stated simply that to register to vote in Alabama a person must not have been convicted of a disqualifying felony, or if the person has been convicted, must have had their civil rights restored. (Doc. 93 at ¶ 19).  The revised State Form still contains that language, but now also states in a separate place on the form, where the Voter Declaration is located, that "I am not barred from voting by reason of a disqualifying felony conviction (The list of disqualifying felonies is available on the Secretary of State's web site at: sos.alabama.gov/mtfelonies)."  (Doc. 171-1).

The Plaintiffs allege that this form violates the portion of the NVRA which provides that any state-issued mail-in voter registration form used to register voters for federal elections "shall include a statement that—(A) specifies each eligibility requirement (including citizenship)." 52 U.S.C. § 20508(b)(2)(A); *see also* 52 U.S.C. § 20505(a)(2) (stating that a State may develop and use a mail voter registration form that meets all of the criteria of 52 U.S.C. 52 U.S.C. § 20508(b)). The Plaintiffs allege that because the State Form states only that to register to vote one must not have been convicted of a disqualifying felony or if one has been convicted has had civil rights restored, but does not name the disqualifying convictions, it violates the statute. (Doc. 93 at ¶ 19). The Plaintiffs note that other requirements on the form go beyond a mere statement to an explicit naming of the requirement. For example, the form does not merely state that there is a minimum age requirement, but instead specifies that to register to vote, a person must be at least 18 years of age on or before election day.

With respect to the updated form that includes a parenthetical reference to the Secretary of State's website, the Plaintiffs' position is that the changed form still does not comply with the NVRA because it does not specify the felony convictions that make a citizen ineligible to vote on the form, but only refers to a website with the eligibility requirement and provides no alternative to the website. The Plaintiffs also contend that the forms do not include a paper copy of the list of disqualifying felonies for agencies or organizations to disseminate at the site of voter registrations. Finally, the Plaintiffs' position is that the language used does not clarify that not all felonies are disqualifying felonies.

The Defendants argue for a plain text interpretation of the NVR and contend that the State Form complies with the statute.[4]

As a general rule, when the terms of a statute are unambiguous on their face then the Court must enforce the statute according to its terms. *Jimenez v. Quarterman*, 555 U.S. 113, 118 (2009). Any ambiguity in the statutory language must result from the common usage of that language, not from the parties' dueling characterizations of what Congress "really meant." *CBS Inc. v. PrimeTime 24 Joint Venture*, 245 F.3d 1217, 1224 (11th Cir. 2001). If the statutory language is not entirely clear, courts apply canons of construction "which do not require resort to extrinsic material." *Id.* at 1225 (11th Cir. 2001). "In other words, when the words of a statute are unambiguous, then, this first canon of statutory construction is also the last: judicial inquiry is complete." *Id.* at 1222 (quotation and citation omitted). Another canon of construction is that where Congress knows how to say something but chooses not to, its silence is controlling. *Id.* at 1226.

The Defendants attempt to rely on this latter canon of construction to support their motion. The Defendants argue in their brief that if Congress had intended the forms to "specify" eligibility requirements, it would have used a word like "describe," "detail," "explain," or "specify." (Doc. 95 at 21).

---

[4]     The Defendants also argue that there is only evidence that GMB uses one of the state forms identified; namely, the mail-in form, and that GMB does not have standing to challenge other forms. Because the mail-in form is the form specifically identified in the supplemental complaint (Doc. 93), the fact that other forms exist is not a bar to the Plaintiffs' claim. The scope of any relief ultimately granted to the Plaintiffs is one the Court will not address at this time.

As the Plaintiffs point out, clearly Congress did use the word "specify" with regard to mail-in forms in 52 U.S.C. § 20508(b)(2)(A). That statute states that the form "shall include a statement that—(A) specifies each eligibility requirement (including citizenship)." *Id.*

As stated previously, under the plain meaning rule, the Court looks only to the language of the statute. "Specify" does not appear to be a defined term in the statute. "In the absence of a statutory definition of a term, [courts] look to the common usage of words for their meaning." *CBS Inc.*, 245 F.3d at 1222. "Specify" is defined in BLACK'S LAW DICTIONARY as "to mention specifically; to state in full and explicit terms; to point out; to tell or state precisely or in detail; to particularize; or to distinguish by words one thing from another." BLACK'S LAW DICTIONARY (6th ed. 1990); *see also* WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY, Unabridged. 2019 (defining "specify" as "to mention or name in a specific or explicit manner," "to include as an item in a specification," "to make specific: to give a specific character or application to."). In the context of interpreting a different statute, the Supreme Court has cited the following definition of "specify:" "to name or state explicitly or in detail." *See Kucana v. Holder*, 558 U.S. 233, 243 & n.10 (2010) (citing WEBSTER'S NEW COLLEGIATE DICTIONARY 1116 (1974)).

The Defendants do not offer any other meaning of "specify." In fact, the Defendants' argument that "specify" equates to "describe," "detail," "explain" (Doc. 95 at 21), actually supports the Plaintiffs' interpretation that "specify" means more than what the State has included in its form. *See also United States v. LaBonte,* 520 U.S. 751, 757 (1997) (stating that courts assume that in drafting legislation Congress said what it meant).

The Defendants do make an additional text-based argument, citing to an NVRA provision which states that an application for voter registration and motor vehicle driver's license "may require only the minimum amount of information necessary to (i) prevent duplicate voter registrations; and (2) enable State election officials to assess the eligibility of the applicant and to administer voter registration and other parts of the election process." 52 U.S.C. 20504 (c)(2)(B).

The Plaintiffs respond that this statutory section refers to the amount of information that the State can require of the prospective voter, not the information provided to the prospective voter on the form, as it is in a provision regarding the voter registration application portion of a motor vehicle driver's license application.

The Court agrees that 52 U.S.C. 20504(c)(2)(B)'s plain meaning is that the application may require only minimum information of the voter, not that the form is restricted in the amount of information it can provide. *See Fish v. Kobach*, 840 F.3d 710 (10th Cir. 2016) (stating that the minimum-information principle "establishes a ceiling on what information the states can require."). The statute, therefore, does not impact the meaning of "specify" in 52 U.S.C. § 20508(b)(2)(A), which sets out the requirements of the mail-in State Form.

The Court finds at this point in the proceedings that the Plaintiffs' allegation that the State Form, which contains a statement that to register to vote one must not have been convicted of a disqualifying felony and refers to a web site that contains an explicit naming of the felonies, but which does not itself explicitly name or state in detail the disqualifying felonies, is sufficient to plausibly state a claim under 52 U.S.C. § 20508(b)(2)(A) & 52

U.S.C. § 20505(a)(2).  The Defendants' motion to dismiss is, therefore, due to be DENIED as to the state-form aspect of count 18.

As noted, the claim in count 18 is also pending before the Court on cross-motions for summary judgment.  In the Second Notice Concerning Count 18, the Defendants point to changes made by the EAC to Alabama-specific instructions of the Federal Form and attach it as an exhibit. (Doc. 171-2).  The Defendants contend that because the State Form is consistent with the instructions given with the Federal Form, it meets the statutory requirements. The Defendants, however, have advanced a plain meaning interpretation of the statute.  Therefore, it is unclear to the Court why the Defendants have relied on outside evidence in support of their plain language interpretation. *See CBS Inc.,* 245 F.3d at 1225 (stating "where the meaning of a statute is discernible in light of canons of construction, we should not resort to legislative history or other extrinsic evidence.").

The Defendants cite the Court to *Fish v. Kobach*, 840 F.3d 710, 721 (10th Cir. 2016), and state that the reference to the Alabama Secretary of State's website in the revised instructions of the Federal Form "has apparently satisfied the EAC, which is 'entrusted' to make the judgment for the federal form." (Doc. 171 at 2).  The Defendants cannot be arguing that the language used by the EAC is somehow binding on the Secretary of State, however, because the language used by the EAC is not the same as the language used by the Secretary of State on the State Form. (Doc. 171-2) (under the Alabama-specific instructions stating one must not "have been convicted of a felony involving moral turpitude (or have had your civil and political rights restored). The list of moral turpitude felonies is available on the Secretary of State web site at: sos.alabama.gov/mtfelonies.").

If the Defendants intended to argue that this Court must defer to a particular interpretation by the EAC, they will have to do more than point to that apparent interpretation, and more fully develop these arguments in a new motion at a later stage of this case.

The remaining arguments raised by the parties which rely on evidence exterior to the allegations of the supplemental complaint primarily relate to the practical issues of how the form could be written, and the implications of different choices in forms.  For example, the Defendants have argued that the State's practice is consistent with the forms used in other states, whereas the Plaintiffs cite to a Mississippi form which lists out all of the disqualifying felonies of that state. The Defendants also point to affidavit evidence that including the disqualifying felonies on the form would be confusing and point to the cost of replacing the forms when new crimes are added to the list.

The Court also notes that the Plaintiffs disagree with the Defendants' suggestion that the Plaintiffs' position would require analogous convictions under other states' laws and federal law to be listed in the State Form. (Doc. 108 at 7, n.5).  The Plaintiffs do not explain, however, how that aspect of the eligibility requirement would be placed on the form.

Rather than address these arguments which have been raised in a piecemeal fashion in cross-motions for summary judgment at the motion to dismiss stage of this case, the Court concludes that both motions for summary judgment as to Count 18 are due to be

DENIED at this time. These issues can be raised, and more fully developed, at a later stage of this case.[5]

## V.  CONCLUSION

For the reasons discussed, it is hereby ORDERED as follows:

1.  The renewed motion to dismiss (Doc. 95) is DENIED.

2.  The motion to dismiss supplemental complaint (Doc. 95) is GRANTED as to Plaintiffs Antoine Giles and Laura Corley and the claims of those Plaintiffs are DISMISSED as moot.

3. The motion to dismiss supplemental complaint (Doc. 95) is GRANTED as to the State of Alabama, and the State of Alabama is DISMISSED as a party in this case.

4.  The motion to dismiss supplemental complaint (Doc. 95) is GRANTED as to the claim in count 18 relating to the Federal Form and that claim is DISMISSED as moot.

5.  The motion to dismiss supplemental complaint (Doc. 95) is DENIED in all other aspects, as is the alternative motion for summary judgment (Doc. 95), and the cross-motion for summary judgment on count 18 (Doc. 97).

6.  The motion to strike untimely declaration (Doc. 109) is DENIED as moot.

Done this 3rd day of December, 2019.

/s/ Emily C. Marks
EMILY C. MARKS
CHIEF UNITED STATES DISTRICT JUDGE

---

[5] Once a new Uniform Scheduling Order is entered in this case, the parties will be given a dispositive motion deadline, and any grounds for summary judgment which a party seeks to raise should be briefed together by that deadline.