IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| TREVA THOMPSON, *et al.*, ) | |
| ) | |
| Plaintiffs, ) | |
| ) | CIVIL ACTION NO. |
| v. ) | **2:16-cv-783-ECM-SMD** |
| ) | |
| JOHN H. MERRILL, in his official ) | |
| capacity as Secretary of State, *et al.*, ) | |
| ) | |
| Defendants. | |

### PLAINTIFFS' OBJECTIONS TO MAGISTRATE JUDGE'S RULING ON MOTION TO COMPEL

Pursuant to Federal Rule of Civil Procedure 72(a) and the Court's April 13, 2020 text order, Plaintiffs respectfully object to the ruling of Magistrate Judge Doyle (Doc. 200) denying Plaintiffs' motion to compel (Doc. 154).

### BACKGROUND

Under Alabama law, people with prior disqualifying felony convictions who have completed their sentence, have no pending criminal felony charges, and have paid all outstanding legal financial obligations ("LFOs") are, with certain exceptions, eligible to have their voting rights restored by applying for a Certificate of Eligibility to Register to Vote ("CERV"). Ala. Code § 15-22-36.1. Approval is automatic, and not discretionary, if the requirements are satisfied. *Id.* One of Plaintiffs' claims in this suit is that the LFO requirement for obtaining a CERV is unconstitutional as applied to those who would be eligible to obtain a CERV but for their inability to afford to pay their outstanding LFOs. Compl. ¶ 13. The Eleventh Circuit recently held that Florida's identical requirement for rights restoration is unconstitutional as-applied to those unable to pay. *See Jones v. DeSantis*, 950 F.3d 795 (11th Cir. 2020).

1

Throughout this litigation, Defendants have contended that the CERV's LFO requirement is not a hurdle for Plaintiffs because even if they are not eligible for CERVs, they can apply for a pardon. For example, in their motion to dismiss, Defendants contended that "Alabama law does not actually require a felon to pay all . . . LFOs before restoring his or her rights" because although payment of LFOs is a requirement to obtain a CERV, "the Board of Pardons and Paroles has the power to restore civil and political rights by grant[ing] pardons . . . ." Mot. to Dismiss at 63 (Doc. 43) (internal quotation marks omitted); *see also* Am. Answer ¶ 250 (admitting that Plaintiff Thompson is ineligible for CERV because of her outstanding LFOs but "[a]verr[ing] that Plaintiff Thompson may seek a pardon"); *id.* Am. Answer to Supp. Compl. ¶ 27 (admitting that Plaintiff Gamble is ineligible for CERV because of his outstanding LFOs but "[a]verr[ing] that Plaintiff Gamble can apply for a pardon"). Defendants contend that the possibility that Plaintiffs might obtain a pardon notwithstanding their outstanding LFOs "dooms these claims about the constitutionality of the [CERV] procedure." Mot. to Dismiss at 63 (Doc. 43).

Plaintiffs have reason to believe that the Alabama Board of Pardons and Paroles ("BPP") has a practice of relying upon the presence of outstanding LFOs to deny pardon applications—a fact that, if true, would rebut Defendants' main defense to Plaintiffs' wealth discrimination claim. As such, on March 16, 2018, Plaintiffs served Documents Requests upon Defendants, requesting documents related to the CERV process, the pardon application process, and the request for remission of fines. *See* Doc. 154-1 (Requests ¶¶ 16-25). The document requests focused on, *inter alia*, gathering evidence related to the impact outstanding fines and fees have on Alabamans' ability to restore their right to vote after a conviction, and whether the presence of outstanding LFOs affected pardon determinations.

After initially producing some documents, *see* Mot. to Compel at 3 (Doc. 154), Defendants' counsel sent Plaintiffs a clawback correspondence asserting that BPP pardon file documents are protected by Alabama's statutory pardon file privilege, *id.* at 3-5. Plaintiffs' counsel sought to meet-and-confer with Defendants' counsel, but Defendants ultimately stood on their invocation of the state-law pardon file privilege and did not seek to negotiate with Plaintiffs regarding the scope or breadth of the Requests for Production. *Id.* at 5.

Plaintiffs filed a motion to compel, doc. 154, and Defendant Lyn Head, the then-Chair of the BPP,[1] filed a response based almost entirely upon the contention that the requested documents are privileged from discovery under the state-law pardon file privilege, *see* Opp. to Mot. to Compel at 12-23 (Doc. 156). In her twenty-three page brief, Defendant Head made only two fleeting references to the scope of Plaintiffs' document requests—once in the introduction and once in the conclusion—suggesting a "traditional Rule 26 analysis" as an alternative to her pardon file privilege argument. *Id.* at 23; *see also id.* at 1. Defendant Head contended that if a class was not certified, Plaintiffs should be limited to discovery of the named Plaintiffs' pardon files. *Id.* at 23. But Defendant Head offered no argument or analysis as to why that would be so.

Magistrate Judge Doyle denied the motion to compel on March 24, 2020. The magistrate judge correctly rejected Defendant's invocation of the state-law pardon file privilege, ruling that "state-law privileges only apply in civil cases where state law supplies the rule of decision," which it does not in this case. Order (Doc. 200). But the magistrate judge wrongly concluded that because this Court had denied Plaintiffs' class certification motion, "plaintiffs' discovery requests are not proportional to the needs of the case," *id.* at 2, and that in the absence of class certification,

---

[1] Lyn Head was subsequently replaced by Leigh Gwathney, who was later substituted as a Defendant in this case.

3

Plaintiffs could only seek discovery of documents contained in Plaintiffs Thompson's and Gamble's BPP files, *id.* at 5. That ruling is wrong as matter of law.

## STANDARD OF REVIEW

A magistrate judge's ruling on a nondispositive matter must be "modif[ied] or set aside in any part of the order that is clearly erroneous or is contrary to law." Fed. R. Civ. P. 72(a). A ruling is "contrary to law when it fails to apply or misapplies relevant statutes, case law or rules of procedure." *Pigott v. Sanibel Development, LLC*, No. 07-0083-WS-C, 2008 WL 2937804, at *5 (S.D. Ala. July 23, 2008) (quotation marks omitted). Although a magistrate judge's factual determinations in nondispositive matters are afforded deference, *id.*, that deference does not apply to the magistrate judge's application of law, *id.*; *see also Dees v. Hyundai Motor Mfg. Ala., LLC.*, 524 F. Supp. 2d 1348, 1350 (M.D. Ala. 2007) (explaining that abuse of discretion standard applies only "in the absence of a legal error").

## ARGUMENT

**I.     The Magistrate Judge Erred as a Matter of Law By Limiting the Scope of Discovery to the Individual Plaintiffs' BPP Files.**

The magistrate judge erred as a matter of law by ruling that, because this Court denied class certification, Plaintiffs could not obtain discovery into BPP's pattern and practice of denying pardons to those with outstanding LFOs and could instead only obtain their individual BPP files.

**A.     The Magistrate Judge Misconstrued the Effect of the Denial of Class Certification.**

The magistrate judge misconstrued the import of this Court's class certification ruling. This Court denied Plaintiffs' class certification motion as unnecessary because a class injunction would be "identical in scope, breadth and effect to an individual injunction." Doc. 194 at 9-10. In essence, Alabama has committed to extend whatever relief is granted to the individual Plaintiffs to those

similarly situated regardless of whether the case is certified as a class. The fact that class certification is not needed for the *relief* to apply broadly says nothing about the appropriate scope of discovery into the substantive claims and defenses. Indeed, to conclude otherwise would undercut the very rationale of this Court's denial of class certification: if Plaintiffs' ability to obtain the discovery needed to rebut defenses put at issue by Defendants depends upon whether a class is certified, then class certification *is*, in fact, necessary. The magistrate judge's reasoning is thus entirely circular.[2]

*Defendants* have placed the pardon process, and its availability to those with outstanding LFOs, at issue in this case. *See supra* Background Section. A party who puts a matter at issue as part of a claim or defense cannot object to discovery into that issue. *See, e.g.*, *Garcia v. Aeroflex Mgmt. Corp.*, No. 2:15-cv-214-FtM-29CM, 2015 WL 7890095, at *3 (M.D. Fla. Dec. 4, 2015) ("Because Plaintiff has put at issue the reasons for her discontinued employment with TJ Maxx, her employment records are relevant to Defendant's mitigation defense."). Indeed, even if a places at issue matters that would otherwise be attorney-client privileged, they must produce those items. *See, e.g., Wilson v. Doss*, No. CIVA209CV21-MEF, 2010 WL 1729111, at *3 (M.D. Ala. Apr. 28, 2010). Plaintiffs are entitled to test through discovery to what extent pardons are *actually* available to those who still owe LFOs. *See* Fed. R. Civ. P. 26(b)(1) ("Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering," among other things, "the importance of the issues at stake in the

---

[2] The denial of class certification might be relevant to the scope of discovery if it were based, for example, on the absence of common or typical claims between the named plaintiffs and the putative class members. In such a circumstance, discovery into documents related to non-named plaintiffs may be non-proportional to the needs of the case under Rule 26(b) based on the denial of class certification. That reasoning does not apply, however, when a class is not certified because certification is unnecessary for the putative class members to obtain relief.

5

action" and "the parties' relative access to relevant information."). Plaintiffs have reason to believe that BPP has a pattern and practice of denying pardons based upon the presence of outstanding LFOs.[3] Indeed, Defendants have acknowledged that some documents reflecting denied pardon requests contain references to outstanding LFOs. Opp. to Mot. to Compel at 19 (Doc. 156). Defendants have likewise acknowledged that "[i]t may be that the paper pardon files contain information helpful to the Plaintiffs[']" argument that BPP has a pattern and practice of denying pardons on account of outstanding LFOs. *Id.* This admission to the documents' probative value itself rebuts the premise of the magistrate judge's ruling.

The magistrate judge erred as a matter of law by concluding that the denial of class certification meant that Plaintiffs could only seek documents from their *own* pardon files. Plaintiffs need more than their own two pardon files to determine whether BPP has a pattern and practice of denying pardons to those with outstanding LFOs, and thus to rebut Defendants' defense. The veracity of Defendants' contention that Plaintiffs Thompson and Gamble could *actually* obtain pardons notwithstanding their LFOs does not turn solely on whether their *individual* pardon files contain references to their LFOs. If pardons are commonly denied because of outstanding LFOs, and that reasoning is typically, if not always, noted in the documents contained in pardon files, that fact is highly probative of whether Alabama has an LFO requirement for both CERVs *and* pardons, contrary to Defendants' contention in this case. The existence of such a requirement does

---

[3] Defendants clawed back a number of documents by, as the magistrate judge correctly ruled, improperly invoking a state-law pardon file privilege. Those documents could be returned to Plaintiffs and provided to this Court to aid in demonstrating the relevance of the withheld documents.

6

not turn solely on the contents of Plaintiffs' individual BPP files, but rather on evidence of a broader policy.[4]

Courts routinely permit discovery into documents beyond those relevant to individual plaintiffs when the application of a policy, pattern, or practice is at issue. *See, e.g.*, *Jones v. RS & H, Inc.*, 775 Fed. Appx. 978, 983 (11th Cir. 2019) ("Statistical information concerning an employer's general policy and practice may be relevant to prove discrimination or pretext, even in a case alleging an individual instance of intentional discrimination."); *Womack v. Dolgencorp, Inc.*, NO. 2:06-CV-0465-VEH, 2008 WL 11377663, at *2 (N.D. Ala. June 16, 2008) ("Although plaintiff has alleged individual disparate treatment in connection with his employment with the City, evidence relating [to] company-wide practices may reveal patterns of discrimination against a group of employees, increasing the likelihood that an employer's offered explanation for an employment decision regarding a particular individual masks a discriminatory motive." (internal quotation marks omitted)). The requested documents are plainly relevant, and the scope of proportional discovery under Rule 26 extends far beyond the two Plaintiffs' individual files, given Defendants' reliance on the availability of the pardon process as a defense to the LFO claim. Furthermore, class certification cannot possibly be unnecessary if the lack of class certification operates to hobble Plaintiffs' ability to mount a rebuttal to one of the Defendants' central defenses.[5] The circularity of the magistrate judge's reasoning demonstrates its error.

---

[4] The magistrate judge disregarded the fact that one of the Plaintiffs, Greater Birmingham Ministries ("GBM") is an organization, further demonstrating the error in focusing on the two individuals.

[5] Indeed, if Plaintiffs are to be denied the ability to conduct discovery into whether BPP has a pattern or practice of denying pardons to those who owe LFOs, then Defendants should be precluded from relying on the availability of a pardon as a defense to Plaintiffs' wealth discrimination claim.

> **B.    The Magistrate Judge's Ruling Is Inconsistent with the Eleventh Circuit's Ruling in *Jones* Regarding the Relevance of Evidence Related to Illusory Pardon and LFO Remission Processes.**

The magistrate judge's ruling is inconsistent with the Eleventh Circuit's decision in *Jones*, which highlights the relevance of the evidence sought here by Plaintiffs. That decision was issued before the magistrate judge's ruling, but after the parties had submitted their briefing. In *Jones*, Florida mounted the same defense Alabama raises here, contending that Florida's LFO requirement for automatic restoration was lawful because those who could not afford to pay LFOs could still seek clemency from the Executive Clemency Board. *Jones*, 950 F.3d at 826. The Eleventh Circuit rejected this argument, explaining that the availability of a discretionary grant of clemency was "largely illusory as it stands now," in part because of long waiting periods. The Eleventh Circuit's ruling—which relied in part upon underlying evidence of the failures of Florida's pardon process—underscores the relevance of Plaintiffs' discovery requests seeking evidence about whether Alabama's pardon process—as well as BPP's process for determining whether to remit LFOs—is illusory for those with outstanding LFOs. The documents sought are both relevant and highly probative, and thus proportional to the needs of this case.

> **C.    The Magistrate Judge Misconstrued Rule 26's Relevance Standard, Misapplied Case Law Establishing the Burden of the Party Opposing Discovery, and Disregarded the Substance of the Claims and Defenses in Conducting a Proportionality Assessment.**

The magistrate judge erred as a matter of law by misapplying the standards governing discovery disputes, improperly relieved Defendants of their burden to justify their objections, and disregarded the substance of the claims and defenses in conducting a proportionality assessment. The party who serves the discovery "bears the initial burden of proving that information sought is relevant," which is determined by "the 'tendency to make a fact more or less probable that it would be without the evidence, and the fact is of consequence in determining the action." *Schwanke v.*

8

*JB Med. Mgmt. Solutions, Inc.*, No. 5:16-cv-597-Oc-30PRL, 2017 WL 3034039, at *5 (M.D. Fla. July 18, 2017) (internal quotation marks omitted). "Relevance" for purposes of Rule 26 is broad and expansive, and "has been construed broadly to encompass any matter that bears on, or that reasonably could lead to other matter that could bear on, any issues that is or may be in the case." *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978). The material need not be admissible at trial: "The Courts have long held that relevance for discovery purposes is much broader than relevance for trial purposes." *Hallmark Ins. Co. v. Fannin*, No. 1:17-CV-04839-CAP, at *3 (N.D. Ga. July 16, 2018) (quotation marks omitted). The burden of the party moving to compel to show relevance is therefore not high.

The party opposing discovery bears the burden to show the requested discovery is overbroad under Rule 26(b)'s standards. "When discovery appears relevant on its face, the party resisting discovery has the burden to establish facts justifying its objections by demonstrating that the requested discovery (1) does not come within the scope of relevance as defined under Fed. R. Civ. P. 26(b)(1)" or "(2) is of such marginal relevance that the potential harm occasioned by discovery would outweigh the ordinary presumption in favor of broad discovery." *Wagner v. Viacost.com*, No. 06-81113-CIV, 2007 WL 1879914, at *1 (S.D. Fla. June 29, 2007). Moreover, "[t]he party opposing a motion to compel has the burden to show that the discovery is improper, unreasonable, or burdensome. When opposing the motion, a party must show specifically how the requested discovery is burdensome, overbroad, or oppressive by submitted detailed affidavits or other evidence establishing the undue burden." *Id.* (citations omitted). The opposing party may not "rely on simply conclusory assertions about the difficulty of complying with a discovery request." *Id.* (quotation marks omitted); *see also Schwanke*, 2017 WL 3034039, at *6 (noting that objecting party "must explain its reasoning in a specific and particularized way," and that "an objection that

9

a discovery request is irrelevant . . . must include a specific explanation describing why" (internal quotation marks omitted)). Moreover, a court's determination of whether discovery requests are proportional under Rule 26 "must start with the actual claims and defenses in the case, and a consideration of how and to what degree the requested discovery bears on those claims and defenses." *Id.* (quotations marks omitted).

The magistrate judge misapplied these principles in concluding that "Gamble and Thompson have not established how information in non-parties' parole files is relevant to the individual claims." Doc. 200 at 4. Not only did Plaintiffs explain (as they do above) the relevance of the information sought to their claims and defenses, *see, e.g.* Mot. to Compel. at 9-10 & n.6 (Doc. 154), but Defendants *acknowledged* that the documents they were withholding contained relevant information, *see* Opp. to Mot. to Compel at 19 (Doc. 156) (acknowledging that information regarding outstanding LFOs was contained in the withheld files, and that they likely contained "helpful" information to Plaintiffs' case). BPP's notes about the impact of LFOs on pardon and CERV determinations are "relevan[t] on [their] face" to the claims and defenses in this case, *Wagner*, 2007 WL 1879914, at *1, particularly given the broad reading courts are required to give Rule 26's relevance standard. The magistrate judge erred as a matter of law by concluding that Plaintiffs had failed to establish the documents' relevance, particularly when Defendants acknowledged their relevance.[6] That is especially so because the magistrate judge did not even

---

[6] As Plaintiffs explained in their motion to compel, doc. 154 at 10 n.6, the requested documents are most obviously relevant to Plaintiffs' Fourteenth Amendment claim challenging the fines and fees requirement, they are likely relevant to other claims as well. For example, several documents are identified as letters from the Board denying CERV applications because the Board concluded the applicants' felony conviction were not disqualifying in the first place. These documents plainly demonstrate confusion among citizens regarding which crimes are disqualifying, a factual allegation Defendants have questioned repeatedly. In fact, these documents may show lack of consistency between the Board and election officials regarding which crimes are disqualifying. The lack of consistency among state agencies in applying the moral turpitude provision is relevant

address or analyze Plaintiffs' relevance arguments or discuss the substance of the claims and defenses, doc. 200 at 4, and instead concluded that the relevance of the documents was tied entirely to the case's status as an individual or class action.

Because the requested documents are relevant on their face, the magistrate judge erred by not requiring Defendants to satisfy their burden to show with particularity how the requested documents were not relevant, or were overbroad, undue, or disproportional. *Schwanke*, 2017 WL 3034039, at *6. Defendants' arguments were almost entirely focused on their erroneous assertion of a state-law pardon file privilege, and to the extent they even discussed relevance or burden, it was entirely within the context of arguing that the privilege should apply. *See* Opp. to Mot. to Dismiss at 19-22. They never engaged with Rule 26's standards, and included only two fleeting references in their introduction and conclusion paragraphs to Rule 26. The magistrate judge erred as a matter of law by failing to hold Defendants to their burden. *Schwanke*, 2017 WL 3034039, at *6; *Wagner*, 2007 WL 1879914, at *1.[7]

---

to both the discriminatory intent claim, which requires a totality of the circumstances analysis, and the Ex Post Facto claim, which Defendants argue fails because they allege the disqualification of Plaintiffs was clear prior to 2017. Moreover, documents showing pardon denials that leave individuals permanently disqualified from voting are certainly relevant to Plaintiffs' cruel and unusual punishment claim. Finally, the withheld documents include not just pardon files, but also CERV documents that are placed by BPP in pardon files. These documents are relevant to the impact of the CERV's LFO requirement and the financial hardship imposed on those seeking restoration of their voting rights. Finally, the documents are relevant to how broadly BPP construes the CERV LFO requirement, which bears on Plaintiffs' wealth discrimination claim as well as their racial discrimination claim.

[7] Moreover, Defendants have not explained how the requests could possibly be burdensome, given that they have already conducted the relevant searches and compiled the documents. Indeed, many were already screened for other forms of privilege and were produced to Plaintiffs before Defendants improperly clawed them back asserting the inapplicable state-law pardon file privilege. Defendants cannot contend they face an undue burden producing documents they have already assessed and gathered now that their pardon file privilege argument has been rejected.

The magistrate judge also erred as a matter of law by basing his proportionality determination solely upon the denial of class certification. In addition to the faulty legal premise of relying upon the class certification denial, *see supra* Part I.A, the magistrate judge erred because the proportionality analysis turns on "the actual claims and defenses in the case, and a consideration of how and to what degree the requested discovery bears on those claims and defenses." *Schwanke*, 2017 WL 3034039, at *6. The magistrate judge was thus obligated to engage with the substance of Plaintiffs' wealth discrimination claim, and Defendants' defense that pardons are a viable alternative to those with outstanding LFOs, in assessing the proportionality of the requested documents. As Plaintiffs explain above, Defendants have put the policies and practices of BPP related to LFOs and pardons at issue—they cannot now argue that discovery on that topic is limited to the two plaintiffs and that documents that they acknowledge would elucidate BPP's practice are somehow non-proportional to the needs of this case.

Finally, the magistrate judge erred by basing his ruling on the scope of the discovery requests—arguments that were not sufficiently advanced by Defendants—when the parties had no opportunity to meet and confer on the scope of the discovery before the matter was presented to the Court. Defendants would not entertain any discussion of the possibility of narrowing the scope of discovery because they asserted an absolute privilege under the state-law pardon file privilege. That assertion was wrong as a matter of law. Before granting the Defendants' relief they did not even support in their briefing, the parties should have been required to confer and seek an agreement as to the scope of the requested discovery.

\* \* \*

The magistrate judge erred as a matter of law by denying Plaintiffs' motion to compel based on the denial of class certification, by disregarding the relevance and proportionality of BPP

pattern-and-practice documents beyond those of the individual Plaintiffs, and by placing an extreme limitation on Plaintiffs' access to discovery that conflicts with the Eleventh Circuit's ruling in *Jones* highlighting the relevance of evidence showing that a discretionary pardon system is illusory for those with outstanding LFOs they cannot afford to pay.

The magistrate judge also erred by denying the motion to compel based upon an argument that Defendants barely raised in their opposition brief. The parties never had an opportunity to negotiate over the scope of the discovery requests because Defendants rested entirely upon their incorrect assertion of the state-law pardon file privilege. Plaintiffs stand ready to work with Defendants to narrow the scope of the requested discovery to ensure it is proportional to the needs of the case, but a ruling limiting them to two BPP files of the individual plaintiffs is contrary to law for the reasons explained above, and would severely prejudice Plaintiffs' ability to rebut one of Defendants' key defenses.

For that reason, the Court should set aside the magistrate judge's denial of Plaintiffs' motion to compel, grant the motion to compel, and direct the parties to confer about the appropriate scope of production.

## CONCLUSION

For the foregoing reasons, the magistrate judge's order denying Plaintiffs' motion to compel should be set aside, the motion to compel should be granted, and the parties should be directed to confer about the appropriate scope of production.

Respectfully submitted,

/s/ *Mark P. Gaber*
Mark P. Gaber (DC Bar: 988077)
Danielle Lang (CA Bar: 304450)
J. Gerald Hebert (VA Bar: 38432)
Molly Danahy (DC Bar No. 1643411)
Campaign Legal Center
1101 14th St. NW, Ste. 400
Washington, DC 20005
(202) 736-2200
dlang@campaignlegalcenter.org
ghebert@campaignlegalcenter.org
mgaber@campaignlegalcenter.org
mdanahy@campaignlegalcenter.org

J. Mitch McGuire (AL Bar: ASB-8317-S69M)
McGuire & Associates LLC
31 Clayton Street
Montgomery, AL 36104
(334) 517-1000
jmcguire@mandabusinesslaw.com

James U. Blacksher (AL Bar: ASB-2381-S82J)
P.O. Box 636
Birmingham, AL 35201
(205) 591-7238
jblacksher@ns.sympatico.ca

Jessica Ring Amunson (DC Bar: 497223)
Jennifer J. Yun (DC Bar: 1600953)
Jenner & Block LLP
1099 New York Ave. NW, Suite 900
Washington, DC 20001
(202) 736-6000
jamunson@jenner.com
mstewart@jenner.com
jyun@jenner.com

Jason Hipp (NY Bar: 5232277)
Jenner & Block LLP
919 Third Avenue
New York, NY 10022
(212) 407-1784
jhipp@jenner.com

Pamela Karlan (NY Bar: 2116994)
Stanford Law School
559 Nathan Abbott Way
Stanford, CA 94305
(650) 725-4851
karlan@stanford.edu

Aderson B. Francois (DC Bar: 498544)
Institute for Public Representation
Georgetown University Law Center
600 New Jersey Ave. NW
Washington, DC 20001
(202) 662-6721
abf48@georgetown.edu

Armand Derfner (SC Bar: 1650)
Derfner & Altman
575 King Street, Suite B
Charleston, SC 29403
(843) 723-9804
aderfner@derfneraltman.com

*Counsel for Plaintiffs*

## CERTIFICATE OF SERVICE

I hereby certify that, on April 13, 2020, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to all counsel of record as listed below.

/s/ *Mark P. Gaber*
Mark P. Gaber
*Counsel for Plaintiffs*

Brad A. Chynoweth
State of Alabama
Office of the Attorney General
501 Washington Avenue
Post Office Box 300152
Montgomery, AL 36130
334.242.7997
Fax: 334.353.8440
Email: bchynoweth@ago.state.al.us

James William Davis
State of Alabama
Office of the Attorney General
P O Box 300152
Montgomery, AL 36130-0152
334-353-1356
Fax: 334-353-8440
Email: jimdavis@ago.state.al.us

Laura Elizabeth Howell
Office of the Alabama Attorney General
P O Box 300152
Montgomery, AL 36130
334-353-1018
Fax: 334-353-8440
Email: lhowell@ago.state.al.us

Misty Shawn Fairbanks Messick
Office of the Attorney General
P O Box 300152
Montgomery, AL 36130-0152
334-353-8674

Fax: 334-353-8440
Email: mmessick@ago.state.al.us

Winfield James Sinclair
Office of the Attorney General
P o Box 300152
Montgomery, AL 36130
334-242-7300
Fax: 334-353-8440
Email: wsinclair@ago.state.al.us

*Counsel for Defendants*