IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| TREVA THOMPSON, *et al*., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | CIVIL CASE NO. 2:16-cv-783-ECM |
| | ) | (wo) |
| JOHN H. MERRILL, *et al*., | ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM OPINION AND ORDER**

Now pending before the Court are the Plaintiffs' Objections to the Magistrate Judge's Ruling on Motion to Quash Subpoenas, filed on April 3, 2020. (Doc. 201).

On February 25, 2019, non-parties David Faulkner, Representative of Alabama House District 46, and Cam Ward, Senator of Alabama Senate District 14 (collectively "the Legislators"), moved to quash a service of subpoenas commanding them to testify at depositions and produce documents regarding the consideration and process behind House Bill 282, codified at Ala. Code § 17-3-30.1 ("HB 282"), on the grounds of legislative privilege. The Defendants in this case supported the motion.

The Magistrate Judge granted the motion, finding that the legislative privilege applied and was not waived nor overcome by the Plaintiffs' interest in their federal claims. (Doc. 199 at 6-7). The Magistrate Judge further concluded that the Plaintiffs' *ex post facto* claim is not exempt from the legislative privilege and that the failure to produce a privilege log did not prevent the privilege from applying. (*Id.* at 7-8).

The Plaintiffs filed objections to the Magistrate Judge's decision. (Doc. 201).  The Legislators and the Defendants have filed responses to those objections. (Doc. 209 & Doc. 210).

Upon consideration of the Plaintiffs' objections and responses thereto, and the entire record, for reasons to be discussed, the objections are due to be OVERRULED.

## I.    STANDARD OF REVIEW

Rule 72 of the Federal Rules of Civil Procedure and 28 U.S.C. § 636 require clearly erroneous or contrary-to-law review of a Magistrate Judge's orders on non-dispositive matters. *Jordan v. Comm'r, Mississippi Dep't of Corr.*, 947 F.3d 1322, 1327 (11th Cir. 2020).  A routine pretrial discovery motion, such as the motion to quash at issue in this case, is a non-dispositive motion. *Id.*

A district court's decision on whether to quash a subpoena is reviewed for an abuse of discretion. *See Ariel v. Jones*, 693 F.2d 1058, 1060 (11th Cir.1982). A ruling applying an incorrect legal standard or one that reflects a clear error of judgment is an abuse of discretion. *In re Hubbard*, 803 F.3d 1298, 1307 (11th Cir. 2015).

## II.    DISCUSSION

The Plaintiffs object to the Order of the Magistrate Judge, arguing that the following are errors of law:  the conclusions that the legislative privilege applies and was not waived, a purported conclusion that the legislative privilege cannot be overcome in civil cases, the conclusion that the Plaintiffs' *ex post facto* claim is subject to the legislative privilege, and

the conclusion that the failure to produce a privilege log is not fatal to exercise of the legislative privilege.  The Court will address each of these objections in turn.

Under Federal Rule of Civil Procedure 45, a district court "must quash or modify a subpoena that ... requires disclosure of privileged or other protected matter." FED.R.CIV.P. 45(d)(3)(A)(iii). The federal courts have the authority and duty to recognize claims of privilege that are valid under common law. FED.R. EVID. 501. To assert a privilege claim, a person "must: (i) expressly make the claim; and (ii) describe the nature of the withheld documents . . . in a manner that . . . will enable the parties to assess the claim." FED.R.CIV.P. 45(e)(2)(A).

The legislative privilege is important because it protects the legislative process itself.  *In re Hubbard,* 803 F.3d 1298, 1307-08 (11th Cir. 2015) (applying the legislative privilege in a case challenging Alabama state legislation). The legislative privilege covers actions in the "proposal, formulation, and passage" of legislation. *Id.* at 1308.  The privilege "applies whether or not the legislators themselves have been sued." *Id.* (quotation and citation omitted).  The legislative privilege "protects against inquiry into acts that occur in the regular course of the legislative process and *into the motivation for those acts*." *Id.* at 1310 (emphasis in original, quotation and citation omitted). "That is why the privilege extends to discovery requests, even when the lawmaker is not a named party in the suit: complying with such requests detracts from the performance of official duties" *Id.*  (citation omitted).

In their objections, the Plaintiffs have taken the position that the legislative privilege does not apply in this case because the Legislators were not serving a legislative function, but were instead working on an exploratory committee, the purpose of which was to advise the Secretary of State in formulating a policy proposal.  The Plaintiffs further contend that even if the legislative privilege could be applied here, it was waived because exploratory committee members included nonprofit leaders, advocates, and religious leaders, so information was shared with non-legislators.

The Legislators argue in response to these objections that the Plaintiffs have mischaracterized the nature of the exploratory committee without evidentiary support and that the evidence reveals that the purpose of the exploratory committee was to draft legislation. The Legislators rely on cases to demonstrate that sharing information on that committee, even though some committee members were not law makers, does not waive the privilege.

Upon review of the record, it appears to this Court that the Magistrate Judge's finding that the exploratory committee was engaged in the formulation, proposal, and passage of legislation is not clearly erroneous. (Doc. 199 at 6).  According to the deposition testimony of the Secretary of State's Chief-of-Staff, John Bennett, when the committee first began meeting, it discussed whether legislation was necessary, and then the decision was made to write legislation. (Doc. 146-1 at 92: 1-10).  His opinion was that the Secretary of State's primary focus was on getting legislation passed. (Doc. 146-1 at 95: 2-5). Committee member Judge Tim Jolley testified that the result of the committee was

4

legislation in the form of House Bill 282. (Doc. 209-2 at 107:18-109:2).  When asked how the committee went about achieving its purpose, committee member Win Johnson answered, "the legislation that was proposed, that was drafted." (Doc. 209-1 at 31: 1-4). The testimony supports that the exploratory committee, which included the Legislators, discussed and modified a draft bill ultimately passed into legislation.  Because the finding that the exploratory committee was engaged in the proposal, formulation, and passage of legislation is not clearly erroneous, it also was not contrary-to-law for the Magistrate Judge to conclude that the legislative privilege applies to activity of the Legislators while serving on that committee. *In re Hubbard*, 803 F.3d at 1308.

The Magistrate Judge also concluded that merely because some exploratory committee members were not legislators does not mean that the legislative privilege was waived, based on *In re Hubbard*, 803 F.3d at 1308, where the legislative privilege was applied to a group of lawmakers which included a governor and former governor. (Doc. 199 at 6).  The Plaintiffs object in response that applying the privilege in this case limitlessly expands it.

The Legislators do not claim that the legislative privilege covers every act they performed, but instead that the "privilege applies to inquiries regarding their participation in the Exploratory Committee as an independently privileged legislative act or as an act undertaken in connection with or in aid of a legislative act." (Doc. 146 at 10 & n.12).

Other district courts within this circuit have concluded that the legislative privilege is not waived simply because a legislator has communicated with third parties, if the

communication was part of the formulation of legislation. *See Greater Birmingham Ministries v. Merrill*, 2:15cv2193 (N.D. Ala. 2017) (Doc. 133-3 at 22) (finding that "the privilege should be applied to protect legislators from having to produce documents shared with third parties or communications between themselves and third parties where they engaged in such sharing or communications for the purpose of exploring and formulating legislation); *Dyas v. City of Fairhope*, 2009 WL 3151879, at *8 (S.D. Ala. Sept. 24, 2009) (a "privilege that prohibits a plaintiff from asking a legislator what was said in the decisive meeting but allows questions concerning any potential influences on his or her decision—such as conversations with constituents, review of documents and other information-gathering, as well as potential bias—offers a legislator no protection worth having.").

This Court is persuaded by the reasoning of other courts that it is consistent with *In re Hubbard*, 803 F.3d at 1308, to conclude that activity engaged in by legislators is still protected by the legislative privilege even if there are communications with non-legislators, as long as the communications were pursuant to the proposal, formulation, and passage of legislation. *See Greater Birmingham Ministries*, Doc. 133-3 at 24.  While this Court will not attempt to define the limits of the legislative privilege, in this particular case, because it is not clearly erroneous to conclude that the exploratory committee was engaged in the proposal, formulation, and passage of legislation, this Court concludes that it is also not contrary to law to conclude that non-legislator members' involvement on the committee does not waive legislative privilege of the Legislators in this case.

The Plaintiffs also have argued that the privilege cedes to important interests in their federal claims. They object to the Magistrate Judge's decision as contrary to law because they read the Magistrate Judge's order as limiting any exception of the privilege to criminal cases. (Doc. 201 at 7).  Contrary to the Plaintiffs' interpretation of the Order, however, the Magistrate Judge concluded that it is not sufficient to overcome the legislative privilege simply to plead a federal constitutional claim in a civil action. (Doc. 199 at 7).  This Court, therefore, turns to an analysis of whether the legislative privilege must cede to the Plaintiffs' interests in their civil claims in this case.

It is true that the legislative privilege is not absolute and must cede where there are important interests, such as the enforcement of federal criminal statutes. *See United States v. Gillock*, 445 U.S. 360, 373 (1980).  Some courts also have found an exception to the privilege in legislative redistricting actions. *See, e.g., Page v. Virginia State Bd. of Elections*, 15 F. Supp. 3d 657 (E.D. Va. 2014).

The Legislators rely on *Greater Birmingham Ministries* from the Northern District of Alabama, which declined to extend the exception to the legislative privilege beyond criminal cases and redistricting cases.  *See* Doc. 133-3.  The court reasoned that the extension of the exception to redistricting cases makes sense because redistricting directly involves the self-interest of the legislators themselves.  *Id.* at 13 (quotation and citation omitted).  The court examined other cases declining to extend the exception to the privilege in Voting Rights Act cases and determined that limitation of the exception was appropriate. *Id.* at 16. The court acknowledged that enforcing rights under the Constitution and Voting

Rights Act advances an important interest and may require proof of intent, but reasoned that the plaintiffs could develop evidence through non-privileged sources. *Id.* at 18.

Another court similarly concluded that the importance of a Voting Rights Act claim or an equal protection claim is not enough to abrogate the legislative privilege. *See Florida v. United States*, 886 F. Supp. 2d 1301, 1304 (N.D. Fla. 2012) (stating "even if the state legislative privilege is qualified in civil as well as criminal cases, there is no reason not to recognize the privilege here. Voting Rights Act cases are important, but so are equal-protection challenges to many other state laws, and there is nothing unique about the issues of legislative purpose and privilege in Voting Rights Act cases.").

The principles which underlie the legislative privilege "include the burden that being compelled to testify would impose on state legislators, the chilling effect the prospect of having to testify might impose on legislators when considering proposed legislation and discussing it with staff members, and perhaps most importantly, the respect due a coordinate branch of government." *Id.* at 1303. Given "the principles that compel a vigorous application of the legislative privilege," *Greater Birmingham Ministries*, Doc. 133-3 at 8, this Court is persuaded that the law does not support an extension of the exception to the legislative privilege in this case. *See id.* at 17, 19-20 (noting criminal case and redistricting exceptions and distinguishing voter ID decisions). Further, here, as in *Greater Birmingham Ministries*, the Plaintiffs have access to non-privileged sources of information. The Magistrate Judge found that the Plaintiffs had not shown that non-privileged source of legislative purpose are inadequate. (Doc. 199 at 7). This finding is not

clearly erroneous because, as discussed previously, other members of the exploratory committee have given deposition testimony about the work of the committee. Therefore, the Court concludes that legislative privilege does not cede to the Plaintiffs' interests in their civil claims in this case.

With respect to the *ex post facto* claim specifically, the Magistrate Judge concluded that *In re Hubbard* does not create an exception for *ex post facto* claims and that the proof of intent needed for the *ex post facto* claim in this case could be gathered from non-privileged sources which the Plaintiffs have not shown are inadequate. (Doc. 199 at 7). The Plaintiffs object that the Magistrate Judge committed an error of law by disregarding *In re Hubbard*'s instruction that legislative intent is an appropriate inquiry for *ex post facto* claims. (Doc. 201 at 11 & n.2).

It appears to this Court that the Plaintiffs' objection with regard to the *ex post facto* claim is conflating two inquires. First, there is the question of whether intent is relevant to a claim. In *In re Hubbard*, the Eleventh Circuit noted that intent is relevant for an *ex post facto* claim. 803 F.3d at 1312 & n.14. Therefore, it is clear that intent is relevant for the *ex post facto* claim.

The second inquiry, however, is how such intent is proven. As the Legislators point out, generally, proof of intent with respect to legislation comes from the legislative record. *See Nixon v. Adm'r of Gen. Servs.*, 433 U.S. 425, 484 (1977). As explained by the Supreme Court, legislative history may be in "contemporary statements by members of the decisionmaking body, minutes of its meetings, or reports . . . [and] testimony frequently

9

will be barred by privilege." *Village of Arlington Heights v. Metro. Hous. Dev. Corp.*, 429 U.S. 252, 268 (1977).

The Magistrate Judge found that the Plaintiffs had not shown that non-privileged source of legislative purpose are inadequate. (Doc. 199 at 7).  This finding is not clearly erroneous.  In addition to access to the traditional sources acknowledged by the Supreme Court, in this case, the Plaintiffs have access to the depositions of other committee members, as discussed above.  Therefore, here, where evidence of legislative purpose can be gathered from non-privileged sources which have not been shown to be inadequate, the mere fact that legislative intent is relevant does not mean that there can be no legislative privilege.

Finally, the Plaintiffs contend that the Magistrate Judge erred by relieving the Legislators of the responsibility of providing a privilege log.  The Plaintiffs contend that there are communications which are not subject to the privilege which cannot be assessed because there is no privilege log identifying the recipients of the withheld communications. The Legislators respond that the materials sought by the Plaintiffs are clearly within the privilege and specifically identified enough so that a privilege log is not required.

In *In re Hubbard*, the Eleventh Circuit discussed the production of a privilege log and concluded that it was an error of law to require "the privileged documents be specifically designated and described, and that precise and certain reasons for preserving confidentiality be given" because Rule 45 only requires enough description to enable the parties to assess the claim. 803 F.3d at 1309.  The Plaintiffs attempt to distinguish *In re*

*Hubbard*, arguing that it was clear in that case that the only claim was subject to the legislative privilege, but in this case, a substantial portion of the documents requested in this case are not subject to the privilege or the privilege has been waived.

This Court finds *In re Hubbard* controlling because, as earlier discussed, the conclusion that the legislative privilege applies and was not waived is not contrary to law. Furthermore, in this case, the Magistrate Judge found that the extensive briefing on the privilege issues shows that the parties fully understand the claim, so no privilege log is required. (Doc. 199 at 8). This finding is not clearly erroneous. The subpoenas themselves and the briefing on these issues go into great detail in the nature of the information at issue. (Doc. 133-1 & Doc. 133-2). Therefore, the lack of a privilege log does not preclude the application of the legislative privilege in this case. *See Metzger v. Am. Fid. Assur. Co.*, 2007 WL 895141, at *4 (W.D. Okla. 2007) (stating even if no privilege log has been provided, the nature of the documents sought is clear from the text of plaintiff's request and that it is clear from plaintiff's lengthy response to the motion to quash that plaintiff's ability to contest the claim has been protected).

## III.   CONCLUSION

For the reasons discussed, it is hereby ORDERED that the Objections (doc. 201) are OVERRULED.

DONE this 19th day of May, 2020.

/s/ Emily C. Marks
EMILY C. MARKS
CHIEF UNITED STATES DISTRICT JUDGE