IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| TREVA THOMPSON, et al.,  ) | |
|  ) | |
|   Plaintiffs,  ) | |
|  ) | Civil Action No. 2:16-CV-783-ECM-SMD |
|  ) | |
| JOHN H. MERRILL, in his Official  ) | |
| Capacity as Secretary of State, et al.,  ) | |
|  ) | |
|   Defendants.  ) | |

**MOTION TO QUASH SUBPOENA AND TO ENJOIN
PLAINTIFFS FROM EFFECTING SAME UPON NON-PARTY
JEFF WOODARD, CLERK OF THE ALABAMA HOUSE OF REPRESENTATIVES**

**COMES NOW** Non-Party Jeff Woodard, Clerk of the Alabama House of Representatives ("Clerk Woodard"), and by and through his counsel makes this limited appearance solely for the purpose of moving this Court to enter an order (1) quashing service of Plaintiffs' July 1, 2020 subpoena commanding him to produce documents, information, or objects or to permit inspection of premises in this action, and (2) enjoining Plaintiffs from issuing subpoenas or attempting to effect any other service of process upon the Clerk of the Alabama House of Representatives.

As set out below, Plaintiffs' subpoena is due to be quashed pursuant to Rule 45(d)(3)(A)(iii), Fed. R. Civ. P., because it requires the potential disclosure of privileged and/or other protected matter. In support of this motion, Clerk Woodard states as follows:

### I.  INTRODUCTION

As famed New York Yankees catcher Yogi Berra once stated, "it's déjà vu all over again." This Court previously granted a motion to quash on May 19, 2020, enjoining Plaintiffs from seeking documents and communications from state legislators in violation of the legislative privilege. Not satisfied with that unappealed Order, Plaintiffs repackage the same prohibited

1

requests in a subpoena directed at the Clerk of the House of Representatives. **Exhibit A** (Subpoena to Jeff Woodard, Clerk of the House).

The fact that Plaintiffs have shifted the discovery battlefield away from individual legislators to a high-level legislative official does not overcome the privilege. The communications and documents Plaintiffs seek remain privileged because the work of the Clerk is sufficiently important to the functioning of the House of Representatives that it constitutes "an integral part of the deliberative and communicative process" by which legislators participate in legislative proceedings. *Gravel v. United States*, 408 U.S. 606, 625 (1972) (holding that, under certain circumstances, certain legislative staff members should be treated as the functional equivalent of legislators for the purpose of legislative immunity and legislative privilege). Specific to this case, the Clerk's job duties concern acts undertaken *in connection with or in aid of* a legislative act(s) – passage of Act Nos. 95-443, 2011-656, 2017-378, and Section 177(b) of the Alabama Constitution. In other words, the Court should not permit Plaintiffs to resurrect their previously quashed subpoenas by merely shifting the target from individual legislators to high-level legislative officials. Such a result would constitute an end run around this Court's May 19, 2020 Order.

In addition, on its face, Plaintiffs' subpoena clearly seeks documents and communications for the illicit purpose of establishing—through indirect evidence—improper legislative motive. In particular, Plaintiffs seek documents and communications related to "the purpose, design, drafting, passages, implementation, or effect" of various Alabama Acts and constitutional provisions related to the voting rights of convicted felons. The legislative privilege, however, "protects against inquiry into acts that occur in the regular course of the legislative process *and into the motivation for those acts*." *United States v. Brewster*, 408 U.S. 501, 525 (1972) (emphasis added).

Finally, Plaintiffs have an abundant source of non-privileged information, including unfettered access to legislative materials maintained by the Alabama Secretary of State and the Alabama Department of Archives and History, which are the primary repositories of the legislative materials made the bases of Plaintiffs' subpoenas.[1] At a minimum, the Court should require Plaintiffs to exhaust these nonprivileged sources of the legislative information before allowing them to potentially invade the privilege in their continuing search for illicit motive.

## II.   STATEMENT OF RELEVANT FACTS

**A.   Plaintiffs' Surviving Claims.**

Plaintiffs challenge Alabama's constitutional and statutory scheme for the disenfranchisement and re-enfranchisement of individuals convicted of crimes of moral turpitude. A 1996 amendment to the Alabama Constitution stripped felons convicted of crimes involving moral turpitude from voting until their civil and political rights had been restored. ALA. CONST. art. VIII, §177(b). (Doc. 178) at 2. Alabama provided statutory procedures for such individuals to have their voting rights restored in ALA. CODE § 15-22-36.1(a). *Id.* In 2016, Plaintiffs filed a class-action complaint challenging the constitutional amendment and the statute. In 2017, Alabama enacted the Definition of Moral Turpitude Act of 2017, which listed 47 qualifying crimes of moral turpitude. ALA. CODE § 17-3-30.1 ("HB 282" or "Act 2017-378"). *Id.*

Plaintiffs assert constitutional challenges to both the Alabama constitutional amendment and HB 282, claiming the amendment is racially discriminatory, unconstitutionally retroactive, and that it unconstitutionally restricts voting on the basis of financial obligations. (Docs. 1, 93). In their supplemental complaint, filed after enactment of HB 282, plaintiffs allege, *inter alia*, that the

---

[1] Despite having several years to issue the current subpoena, Plaintiffs waited until the last minute, scheduling the last day of discovery (July 20, 2020) as the date for production.

3

statute imposes retroactive punishment in violation of the U.S. Constitution's prohibition on ex post facto laws. (Doc. 93) at 13-14.

**B.     The Previous Subpoena Fight.**

During the course of discovery, Plaintiffs subpoenaed non-parties David Faulkner, Representative of Alabama House District 46, and Cam Ward, Senator of Alabama Senate District 14 (collectively "the Legislators"), seeking to depose them during the 2019 legislative session and further commanding them to produce documents and communications related to the legislative consideration and process behind HB 282. (Doc. 133, Exhibits A & B). The Legislators moved to quash the subpoenas on the ground of legislative privilege. *Id.*

On March 20, 2020, the Magistrate Judge granted the Legislators' Motion to Quash, finding, among other things, that the legislative privilege applied and was not waived or overcome by the Plaintiffs' interest in their federal claims. (Doc. No. 199 at 6-7). The order precluded Plaintiffs from deposing the Legislators and from requiring them to produce documents related to the legislative consideration and process behind HB 282. (Doc. No. 199). Thereafter, Plaintiffs objected to the Magistrate Judge's order (Doc. 201), and the Legislators and Defendants filed responses to those objections. (Docs. 209 & 210). On May 19, 2020, the Court overruled Plaintiffs' objections, effectively quashing the subpoenas and upholding application of the legislative privilege. (Doc. 212 at 4).[2]

---

[2] Of particular relevance to the current motion is this Court's prior citation to *Greater Birmingham Ministries v. Merrill*, 2:15cv2193 (N.D. Ala. 2017) (Doc. 133-3 at 22) (finding that the privilege should be applied to protect legislators from having to produce documents shared with third parties or communications between themselves and third parties where they engaged in such sharing or communications for the purpose of exploring and formulating legislation).

## C.     A Second Bite At The Apple.

On July 1, 2020, Plaintiffs sought a second bite at the apple by issuing a substantially similar subpoena to the Clerk of the House. In that subpoena, Plaintiffs command production of virtually the same documents previously sought from Senator Ward and Representative Faulkner, *e.g.*, documents relating to the purpose, design, passage, implementation, or effect of House Bill 282 and Section 177(b) of the Alabama Constitution. The specific requests are as follows:

> 1.     All documents and communications in your possession, custody, or control that relate in any way to Amendment 579 to the Alabama Constitution of 1901 ("Amendment 579"), also known as Act No. 95-443, including but not limited to any documents or communications concerning the purpose, design, drafting, passage, implementation, or effect of Act No. 95-443 or Amendment 579.
>
> 2.     All documents and communications in your possession, custody, or control that relate in any way to the "Right-to-Work" Constitutional Amendment ("HB 64"), also known as House Bill 64, HB 64, or Act No. 2011-656, including but not limited to any documents or communications concerning the purpose, design, drafting, passage, implementation, or effect of Act No. 2011-656.[3]
>
> 3.     All documents and communications in your possession, custody, or control that relate in any way to the Definition of Moral Turpitude Act of 2017 ("HB 282"), also known as House Bill 282, HB 282, or Act No. 2017-378, including but not limited to any documents or communications concerning the purpose, design, drafting, passage, implementation, or effect of Act No. 2017-378.
>
> 4.     All documents, communications, and materials in your possession, custody, or control created or revised on or after January 1, 2016, that relate to the disqualification from registering to vote, or voting, of citizens with felony convictions or restoration of voting rights for citizens with felony convictions.
>
> 5.     All documents, communications, and materials in your possession, custody, or control created or revised on or after January 1, 2016, that relate in any way to Section 177(b) of the Alabama Constitution, including but not limited to:
>
>> a.     Any documents, communications, and materials regarding or related to proposed legislation to interpret, clarify, define, explain, amend, repeal, replace, or otherwise impose or remove legal obligations related to Section 177(b) of the Alabama Constitution.
>>
>> b.     Any documents, communications, and materials regarding or related to the decision to draft, support, oppose, define, amend, lobby,

---

[3] The Legislature passed House Bill 64, HB 64, or Act No. 2011-656 in 2011, and the Alabama voters approved adoption of the resulting constitutional amendment in 2012. The legislation is relevant to this litigation in that it includes and reaffirms Section 177(b) of the Alabama Constitution.

> discuss, revise, or otherwise argue for or against legislation related to Section 177(b) of the Alabama Constitution and/or the legal obligations, restrictions, or structures imposed thereunder.
>
> c. Any legislation to interpret, clarify, define, explain, amend, repeal, replace, or otherwise impose or remove legal obligations related to Section 177(b) of the Alabama Constitution.

**Exhibit A** (Subpoena to Jeff Woodard, Clerk of the House). The request for documents set forth in the subpoena is substantially similar to Plaintiffs' previous requests to Representative Faulkner and Senator Ward.[4] The subpoena seeks the production of said documents by July 20, 2020. *Id.*

### III.   ARGUMENT

**A.   Legislative Privilege Applies To Legislative Officials And Staff Who Participate In The Legislative Process.**

Under Federal Rule of Civil Procedure 45, a district court "must quash or modify a subpoena that ... requires disclosure of privileged or other protected matter." FED. R. CIV. P. 45(d)(3)(A)(iii). The federal courts have the authority and duty to recognize claims of privilege that are valid under common law. FED. R. EVID. 501. To assert a privilege claim, a person "must: (i) expressly make the claim; and (ii) describe the nature of the withheld documents . . . in a manner that . . . will enable the parties to assess the claim."[5] FED. R. CIV. P. 45(e)(2)(A).

It is well-established that the legislative privilege must "be read broadly to effectuate its purposes." *United States v. Johnson*, 383 U.S. 169, 180 (1965). This Court cogently described the nature of the legislative privilege in its May 19, 2020 Memorandum Opinion and Order as follows:

> The legislative privilege is important <u>because it protects the legislative</u>

---

[4] For example, the current requests set forth in Paragraphs 5(a) and (b) of Plaintiffs' subpoena are substantially identical to Paragraph II.3(a) & (b) in the Faulkner/Ward subpoenas; Paragraph 3 of Plaintiffs' current subpoena is substantially similar to Paragraph II.1 in the Faulkner/Ward subpoena requests; and Paragraph 4 of Plaintiffs' current subpoena is substantially similar to Paragraph II.2 & 4 in the Faulkner/Ward subpoena requests. *See* Faulkner Subpoena (Doc. 133-1 at ¶II.1 through ¶II.3); Ward Subpoena (Doc. 133-2 at ¶II.1 through ¶II.3). The remaining requests set forth in the current subpoena seeks documents and communications regarding the passage of Act Nos. 95-443, 2011-656, 2017-378, and Section 177(b) of the Alabama Constitution.

[5] Clerk Woodard asserts the legislative privilege in his capacity as a legislative official. To the extent necessary, and for purposes of this motion, however, Representative Faulkner consents to the assertion of the legislative privilege on his behalf by Clerk Woodard.

> process itself. *In re Hubbard*, 803 F.3d 1298, 1307-08 (11th Cir. 2015) (applying the legislative privilege in a case challenging Alabama state legislation). The legislative privilege covers actions in the "proposal, formulation, and passage" of legislation. *Id.* at 1308. The privilege "applies whether or not the legislators themselves have been sued." *Id.* (quotation and citation omitted). The legislative privilege "protects against inquiry into acts that occur in the regular course of the legislative process and *into the motivation for those acts*." *Id.* at 1310 (emphasis in original, quotation and citation omitted). "That is why the privilege extends to discovery requests, even when the lawmaker is not a named party in the suit: complying with such requests detracts from the performance of official duties" *Id.* (citation omitted).

(Doc. No. 212 at 3) (emphasis).

In the instant case, Plaintiffs' subpoena seeks "documents or communications concerning the purpose, design, drafting, passage, implementation" of legislation and is plainly directed at probing the motivation for acts occurring during the course of the legislative process and constitutes a blatant attempt to circumvent the Court's prior decision on this matter. As the Eleventh Circuit explained in *In re Hubbard*, 803 F.3d 1298 (11th Cir. 2015), the legislative privilege "protects the legislative process itself" and "protects against inquiry into acts that occur in the regular course of the legislative process and *into the motivation for those acts*." *Id.* at 1310 (emphasis original) (internal quotation marks and citation omitted). The *Hubbard* Court further noted the Supreme Court's admonition "'that it [i]s not consonant with our scheme of government for a court to inquire into the motives of legislators.'" *Id.* (quoting *Tenney v. Brandhove*, 341 U.S. 367, 377 (1951)). "The privilege applies with full force against requests for information about the motives for legislative votes and legislative enactments." *Id.* (emphasis added).

Although Plaintiffs redirected the instant subpoena to a high-ranking legislative official rather than an individual legislator, "[t]he privilege also applies, albeit with less strength, to "legislative staff members, officers, or other employees of a legislative body." *Bethune-Hill v. Virginia State Bd. of Elections*, 114 F. Supp.3d 323, 343 (E.D. Va. 2015). *See also Dombrowski*

7

*v. Eastland*, 387 U.S. 82, 85 (1967) (holding that legislative privilege extends as well to legislative staff members, officers, or other employees of the legislative body, but, as to them, it is "less absolute" than to the "legislators themselves."); *Floyd v. Baltimore City Council*, 209 A.2d 766, 774 (Md. App. 2019) (same). Indeed, the privilege "covers all those properly acting in a legislative capacity, not just actual officeholders." *E.E.O.C. v. Wash. Suburban Sanitary Comm'n*, 631 F.3d 174, 181 (4th Cir. 2011) (citing *Supreme Ct. of Va. v. Consumers Union of U.S., Inc.*, 446 U.S. 719, 731–34 (1980)).

As cogently stated by Steven Huefner in his seminal article addressing legislative privilege in state legislatures,

> The privilege should extend to the work of a <u>legislature's professional staff organization</u> in drafting or analyzing proposed bills at members requests. Alter egos include <u>a legislature's professional staff</u>, an individual legislator's personal staff, and caucus personnel, whenever they perform acts that would be performed by a member. The refusal to extend the privilege to their activities risks significantly curtailing the appropriate scope of legislators' deliberative freedom.

Steven F. Huefner, *The Neglected Value of the Legislative Privilege in State Legislature*, 45 WM. & MARY L. REV. 221, 294 (2003) (emphasis added).

As in the instant case, legislators communicate with the Clerk of the House as part of the exploration and formulation of legislation and to ensure that bills and resolutions are accurately reflected in the House Journal. The Clerk performs these acts in furtherance of his legislative duties and in connection with or in aid of a legislative act, in this case, the enactment of Act Nos. 95-443, 2011-656, 2017-378, and Section 177(b) of the Alabama Constitution. His work is sufficiently important to the functioning of the House of Representatives that it is "an integral part of the deliberative and communicative process" by which legislators participate in legislative proceedings. *Gravel*, 408 U.S. at 625 (holding that, under certain circumstances, certain legislative staff members should be treated as the functional equivalent of legislators for the purpose of

legislative immunity and legislative privilege). Thus, the documents and communications Plaintiffs seek are worthy of protection under the legislative privilege because they serve as integral parts of the communicative process by which legislative members participate in House proceedings.

Furthermore, allowing Plaintiffs' subpoena to issue based on an illicit search for legislative motive would eviscerate the privilege and foster an explosion of discovery directed at legislative officials. *See Dyas v. City of Fairhope*, Civ. A. No. 08-0232-WS-N, 2009 WL 3151879, at *8 (S.D. Ala. Sept. 24, 2009) (holding that, it is equally impermissible to allow discovery directed at legislators for the purpose of proving the Legislature's intent or motive through indirect means – such as inquiring into "the historical background of past official actions; the sequence of events leading up to the challenged decisions; departures from normal procedural sequences; substantive factors usually considered important in such decisions; and the legislative history of the decisions.").

At least two Alabama decisions have applied the privilege a step further removed from internal communications with legislative officials or staff by applying the privilege to legislators' external communications with third-parties for purposes of information gathering, or exploring and formulating legislation. *See, e.g.*, *Greater Birmingham Ministries v. Merrill*, 2:15cv2193 (N.D. Ala. 2017) (Doc. 133-3 at 22) (finding that "the privilege should be applied to protect legislators from having to produce documents shared with third parties or communications between themselves and third parties where they engaged in such sharing or communications for the purpose of exploring and formulating legislation); *Dyas*, 2009 WL 3151879, at *8 (a "privilege that prohibits a plaintiff from asking a legislator what was said in the decisive meeting but allows questions concerning any potential influences on his or her decision— such as conversations with constituents, review of documents and other information-gathering, as well as potential bias—

9

offers a legislator no protection worth having.").[6]

Although application of legislative privilege to legislative staff and high-ranking legislative officials may be derivative and less absolute than the scope of the privilege asserted directly by a legislator, Plaintiffs can offer no reason in this case why the same documents they previously sought directly from individual legislators are somehow entitled to less protection merely because they have shifted the target of their subpoena to the Clerk of the House.[7] This is particularly true in light of the key purposes of the privilege − to prevent intrusions in the legislative process and to avoid disruption caused by the disclosure of legislative material. *United States v. Rayburn House Office Bldg., Room 2113*, 497 F.3d 654, 660 (D.C. Cir. 2007).[8]

The privilege should encompass communications undertaken by high-ranking legislative officials in the discharge of legislative duties. Importantly, Clerk Woodard does not claim that the acts of all legislative employees are shielded by legislative privilege. Rather, consistent with the

---

[6] *See also Campaign for Fiscal Equity v. State*, 179 Misc.2d 907, 687 N.Y.S.2d 227 (N.Y. 1999) ("The privilege is also designed to provide state legislators and other state officials acting within the legislative sphere with "breathing room" to debate and decide on policy and mold it into legislation. Discovery of background documents and data would defeat this purpose of the immunity."). Other federal courts have recognized that legislative privilege applies to internal congressional communications, and internal drafts of unprivileged communications, on the basis that such internal communications are "an integral part" of the legislative process and that permitting discovery of such internal matters would cause a "significant entrenchment on legislative independence." *United Transp. Union v. Springfield Terminal Ry. Co.*, 132 F.R.D. 4, 6-9 (D. Me. 1990); *see also Miller v. Transamerican Press, Inc.*, 709 F.2d 524, 530-31 (9th Cir. 1983).

[7] Requiring the production of internal communications between individual legislators and high-ranking legislative staff, such as the Clerk of the House, also raises serious concerns regarding direct intrusion into internal legislative affairs and the potential to inhibit full and frank deliberations in legislative activity. Legislators' communications with the Clerk of the House are an integral part of the legislative process. If not protected, they may become wary about their future communications.

[8] *See also Church v. Montgomery Cnty, Md.*, 335 F.Supp.3d 758, 769 (D. Md. 2018) ("One express purpose of the legislative privilege is to allow lawmakers and staff to focus on public duties by removing the costs and distractions of attending lawsuits."); *League of Women Voters of Mich. v. Johnson*, 2018 WL 2335805,*3 (E.D. Mich., May 23, 2018) ("For state legislators involved in federal question cases, legislative privilege protects state legislators and their legislative staff from compelled disclosure of documentary or testimonial evidence relating to actions taken within the scope of legitimate legislative activity."); *North Carolina State Conf. v. McCrory*, 2015 WL 12683665, *6 (M.D.N.C., Feb. 4, 2015) ("The value and importance of the legislative privilege is lost if it is not applied to legislative staff and aides."); *EEOC v. Wash. Suburban Sanitary Comm'n*, 631 F.3d 174, 181 (4th Cir. 2011) ("Legislative privilege also enables legislators and their staff to focus on their public duties by removing the costs and distractions attending lawsuits.").

Supreme Court's guidance in *Gravel*, the official's actions must be "an integral part of the deliberative and communicative process" by which legislators participate in legislative proceedings. Here, the Clerk is the highest ranking employee directly employed by the House of Representatives outside of elected officials, a factor which provides a sensible and defensible bulwark against excessive use of the privilege.

**B.    Plaintiffs Have Failed To Avail Themselves of Non-Privileged Sources of Information.**

Finally, as in *Greater Birmingham Ministries*, Plaintiffs have access to abundant, publicly available sources of non-privileged information. *See Nixon v. Adm'r of Gen. Servs.*, 433 U.S. 425, 484 (1977). As explained by the Supreme Court, legislative history may be in "contemporary statements by members of the decision making body, minutes of its meetings, or reports . . . [and] testimony frequently will be barred by privilege." *Village of Arlington Heights v. Metro. Hous. Dev. Corp.*, 429 U.S. 252, 268 (1977). In the instant case, in addition to the dozens of paragraphs in their Complaint and Supplemental Allegations regarding discriminatory motive and intent, Plaintiffs have unfettered access to the Alabama Secretary of State and the Alabama Department of Archives and History (ADAH), which are the primary repository of the legislative materials made the bases of their subpoenas. By law, within 16 weeks after final adjournment of any session of the House of Representatives, the Clerk must transfer the House Journal to the Secretary of State, where it is made publicly available. *See* ALA. CODE § 29-1-12. *See also* https://www.sos.alabama.gov/government-records/legislative-acts (publicly available SOS search engine for all legislative acts from 1987 to the present).

After a period of time, the legislative records are transferred to the Alabama Department of Archives and History (ADAH). In fact, the ADAH website describes the following legislative materials available to the public through its Alabama Legislative Acts, Journals, and Constitutions

Collection:

> **About this collection**
>
> The Alabama Legislative Acts, Journals, and Constitutions Collection consists of the nineteenth century House and Senate journals; the nineteenth and twentieth century acts; and the six state constitutions and related material.
>
> For more recent legislative acts, visit the **website of the Alabama Secretary of State**. There you can search all acts from 1987 to the present. Basic descriptions are available for the entire period, and complete copies of the acts are included from mid-1999 (Act 1999-319) forward. For House journals dating from 1998 to the present, see the **ADAH Electronic Records Collections**.
>
> (The legislative acts from 1818 to 1999 are also available at the **Internet Archive**. There the volumes can be more easily browsed and downloaded, though keyword searching in the nineteenth century acts will not be as accurate.)

*See* http://digital.archives.alabama.gov/cdm/landingpage/collection/legislature. Here, all of the laws at issue have been on the books since at least 2017. Therefore, Plaintiffs have access to these legislative materials through the SOS or the ADAH.

Moreover, Defendants previously have provided the following materials to Plaintiffs regarding some of the legislation made the bases of their subpoena:

- All Entries of Journals of the House of Representatives of the State of Alabama for the 1995 Regular Session Pertaining to the Passage of House Bill 38, Act No. 1995-443;

- Transcript of the Journal of the Senate of Alabama, Regular Session 1995 (Showing Passage Through Senate of House Bill 38, Act No. 1995-443);

- All Entries of Journals of the House of Representatives of the State of Alabama for the 1983 Regular Session Pertaining to the Passage of Senate Bill 58, Act No. 83-683, Through the House of Representatives; and

- Senate Transcript Showing Passage of SB58 1983 Regular Session Through the Senate.

In sum, Plaintiffs apparently have not availed themselves of the alternative, non-privileged sources of legislative information and, therefore, cannot establish their inadequacy.

### IV. CONCLUSION

Plaintiffs have had their bite at the legislative privilege apple. Allowing them to obtain from a high-level legislative official the same documents and communications they could not obtain from individual legislators would render the privilege useless and disrupt and foster intrusions in the legislative process. At a minimum, before addressing the scope of the legislative privilege, the Court should require Plaintiffs to exhaust the non-privileged sources available within the offices of the Secretary of State and the Alabama Department of Archives and History.

For these reasons, the Court should quash the subpoena issued to Jeff Woodard, Clerk of the Alabama House of Representatives.

Respectfully submitted this 15th day of July, 2020.

                /s/ Christopher W. Weller
                CHRISTOPHER W. WELLER (WEL020)
                Attorney for Clerk Jeff Woodard

OF COUNSEL
CAPELL & HOWARD, P.C.
P. O. Box 2069
Montgomery, AL  36102-2069
(334) 241-8000
(334) 241-8266
Chris.weller@chlaw.com

## CERTIFICATE OF SERVICE

I hereby certify that, on the 15th day of July, 2020, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:

Armand G. Derfner (aderfner@derneraltman.com);

Danielle Lang (dlang@campaignlegalcenter.org);

James U. Blacksher (jblacksher@ns.sympatico.ca);

Jessica Ring Amunson (jamunson@jenner.com);

J. Gerald Herbert (gherbert@campaignlegalcenter.org);

J. Mitch McGuire (jmcguire@mandabusinesslaw.com);

Mark P. Gaber (mgaber@campaignlegalcenter.org);

Michael E. Stewart (mstewart@jenner.com)

James W. Davis (jimdavis@ago.state.al.us)

Misty S. Fairbanks Messick (mmessick@ago.state.al.us)

Brad A. Chynoweth (bchynoweth@ago.state.al.us)

Laura E. Howell (lhowell@ago.state.al.us)

Winfield Sinclair (wsinclair@ago.state.al.us)

**And by U.S. Mail:**

Aderson B. Francois
Institute for Public Representation
Georgetown University Law Center
600 New Jersey Avenue NW
Washington, DC 20001

Pamela Karlan
Stanford Law School
Nathan Abbott Way at Alvarado Row
Stanford, CA 94305

                                          /s/ Christopher W. Weller
                                          Of Counsel