# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF ALABAMA
# NORTHERN DIVISION

| | |
|---|---|
| TREVA THOMPSON, et al.,  )<br> )<br>　　　Plaintiffs,　　　 )<br> )<br>　　　v.　　　 )<br> )<br>JOHN MERRILL, in his Official Capacity )<br>as Secretary of State of Alabama, et al., )<br> )<br>　　　Defendants.　　　 )  | CIVIL ACTION NO.<br>**2:16-cv-783-ECM-WMD** |

## PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT AS TO COUNT 18 (VIOLATION OF THE NATIONAL VOTER REGISTRATION ACT)

Danielle Lang
Mark Gaber
J. Gerald Hebert
Molly Danahy
Jonathan Diaz
Campaign Legal Center
1101 14th St. NW, Ste. 400
Washington, DC 20005
(202) 736-2200

Jason Hipp
Jenner & Block LLP
919 Third Avenue
New York, NY 10022
(212) 407-1784

Jessica Ring Amunson
Jenner & Block LLP
1099 New York Ave. NW,
Ste. 900
Washington, DC 20001
(202) 736-6000

J. Mitch McGuire
McGuire & Associates, LLC
31 Clayton Street
Montgomery, AL 36104
(334) 517-1000

James U. Blacksher
825 Linwood Road
Birmingham, AL 35222
(205) 612-3752

Pamela Karlan
Stanford Law School
559 Nathan Abbott Way
Stanford, CA 94305
(650) 725-4851

Armand G. Derfner
Derfner & Altman
575 King Street, Suite B
Charleston, S.C. 29403
(843) 723-9804

Aderson B. Francois
Institute for Public
Representation
Georgetown University Law
 Center
600 New Jersey Avenue NW
Washington, DC 20001
(202) 662-6721

*Counsel for Plaintiffs*

## STATEMENT OF UNDISPUTED MATERIAL FACTS

Section 177 of the Alabama State Constitution disenfranchises those "convicted of a felony involving moral turpitude . . . until restoration of civil and political rights." Ala. Const. VIII, § 177(b). Until 2017, there was "no comprehensive list of felonies that involve moral turpitude which disqualify a person from exercising his or her right to vote," and "[n]either individuals with felony convictions nor election officials ha[d] a comprehensive, authoritative source for determining if a felony conviction involves moral turpitude and is therefore a disqualifying felony." Ala. Stat. § 17-3-30.1(b)(1)(b). In 2017, the Alabama Legislature passed the Felony Voter Disqualification Act, which "provide[s] a comprehensive list of acts that constitute moral turpitude for the limited purpose of disqualifying a person from exercising his or her right to vote." *Id.* § 17-3-30.1(b)(2)(c). The felonies listed in § 17-3-30.1 are "the only felonies for which a person, upon conviction, may be disqualified from voting." *Id.* § 17-3-30.1(e).

Even after the passage of the Felony Voter Disqualification Act, Alabama's Mail-In Voter Registration Form (the "State Form") did not specify the voter eligibility requirements for people with felony convictions. Instead, the State Form stated that each voter must "[n]ot have been convicted of a disqualifying felony, or if [s/he has] been convicted, [s/he] must have had [his or her] civil rights restored." Doc. 95-1 at 6. It then required each voter to sign under penalty of perjury the following statement: "I am not barred from voting by reason of a disqualifying felony conviction." *Id.* On March 1, 2018, Plaintiff Greater Birmingham Ministries ("GBM") filed a supplemental complaint alleging that the State Form violates the National Voter Registration Act ("NVRA") because it fails to "specif[y] each eligibility requirement." Doc. 93 at 21 (alteration in original) (quoting 52 U.S.C. § 20508(b)(2)(A)). Plaintiff GBM also alleged that the state-specific instructions on the National Mail Registration Form ("Federal Form")—which instructed Alabama

1

voters that to register to vote "you must: . . . not have been convicted of a felony involving moral turpitude (or have had your civil and political rights restored)"—violated the NVRA. *Id.* at 5. Further, GBM alleged that the Secretary had failed to notify the Election Assistance Commission (EAC) of the changes in its voter eligibility requirements pursuant to 11 C.F.R. § 9428.6after the passage of the Felony Voter Disqualification Act. *Id.* at 21. Plaintiff GBM uses the State Form to conduct its voter registration activities and specifically works to help people with felony convictions register to vote where they are eligible. Ex. 1 (Douglas Dep.) at 33:22-38:4; 73:8-12.

On April 11, 2018, Secretary Merrill sent the then-Executive Director of the EAC, Brian Newby, a letter informing the EAC of the Felony Voter Disqualification Act. Plaintiffs agreed that this action rendered their NVRA claim against Secretary Merrill moot with respect to the Federal Form. Doc. 108 at 1 n.1.[1] On July 25, 2018, staff from the EAC contacted Secretary Merrill's office and asked it to "advise how the Felony Voter Disqualification Act will change [Alabama's] existing instructions." Ex. 2 (Packard Emails with EAC) at 7. In response, Ed Packard, who then served as Administrator of Elections, drafted at least three versions of proposed instructions to send the EAC. Ex. 3 (Packard Dep.) at 279:10-282:8. One version included the full list of moral turpitude felonies, including the statutory code sections; another included the full list of moral turpitude felonies, but without the statutory code sections; and the final version did not include the list of moral turpitude felonies but instructed voters they must "not have been convicted of a felony involving moral turpitude (or have had [their] civil and political rights restored)" and then referred voters to the Secretary of State's website for the list of moral turpitude felonies. Ex. 4 (collected draft EAC instructions). Ed Packard sent only the latter draft—referencing the website in lieu of

---

[1] Plaintiffs did not admit that the Federal Form complied with the requirements of the NVRA to specify eligibility requirements but merely acknowledged that Secretary Merrill had fulfilled his role and was no longer the proper Defendant for such a claim with respect to the Federal Form.

2

the list of disqualifying felony convictions—to the Election Assistance Commission, because "it was the decision of the team that it was more concise and pointed people to the right information rather than being a lengthy exposé on all the crimes." Ex. 3 (Packard Dep.) at 282:11-14. The Federal Form now contains the precise language recommended by the Secretary of State's office:

> 9. **Signature.** To register in Alabama you must:
> • be a citizen of the United States
> • be a resident of Alabama and your county at the time of registration
> • be 18 years old before any election
> • not have been convicted of a felony involving moral turpitude (or have had your civil and political rights restored). The list of moral turpitude felonies is available on the Secretary of State web site at: sos.alabama.gov/mtfelonies
> • not currently be declared mentally incompetent through a competency hearing
> • swear or affirm to "support and defend the Constitution of the U.S. and the State of Alabama and further disavow any belief or affiliation with any group which advocates the overthrow of the governments of the U.S. or the State of Alabama by unlawful means and that the information contained herein is true, so help me God"

Ex. 5 (Federal Form) at 1.

Around the same time, the Secretary's office began to consider revisions to the State Form. Ex. 3 (Packard Dep.) at 285:13-23. As of September 2018, the Secretary's office was considering a draft State Form that retained all of the same language but added a box stating the following: "The Code of Alabama designates a number of felony convictions that cause a voter to be considered ineligible to vote unless they have met certain parameters outlined in information provided by the Alabama State Department of Corrections. For a full list of these crimes, please visit alabamavotes.gov/felony or text MT to ALVOTE (2586837)." Ex. 6 (draft state form) at 1. The text message option contemplated in that draft was never implemented. In March 2019, the Secretary of State gave notice of proposed changes to the State Form, which were approved on June 27, 2019. *See* Doc. 161 at ¶ 1; Doc. 171-1 at ¶ 3. The only relevant change on the new State Form is the inclusion of a reference to the Secretary of State's website for a list of disqualifying

felonies in the voter declaration box. The relevant portions of the State Form now appear as follows:

> **To register to vote in the State of Alabama, you must:**
> - Be a citizen of the United States.
> - Live in Alabama.
> - Be at least 18 years of age on or before election day.
> - Not have been convicted of a disqualifying felony, or if you have been convicted, you must have had your civil rights restored.
> - Not have been declared "mentally incompetent" by a court.
>
> **Voter Declaration - Read and Sign Under Penalty of Perjury**
>
> - I am a U.S. citizen
> - I live in the State of Alabama
> - I will be at least 18 years of age on or before election day
> - I am not barred from voting by reason of a disqualifying felony conviction (The list of disqualifying felonies is available on the Secretary of State's web site at: sos.alabama.gov/mtfelonies)
> - I have not been judged "mentally incompetent" in a court of law
>
> I solemnly swear or affirm to support and defend the constitution of the United States and the State of Alabama and further disavow any belief or affiliation with any group which advocates the overthrow of the governments of the United States or the State of Alabama by unlawful means and that the information contained herein is true, so help me God.

Ex. 7 (2019 State Form) at 1. Nothing on the State Form specifies which felony convictions are disqualifying.

## LEGAL STANDARD

Summary judgment is appropriate where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *see* Fed. R. Civ. P. 56(c); *Strickland v. Norfolk S. Ry. Co.*, 692 F.3d 1151, 1154 (11th Cir. 2012).[2] Facts are only material when their

---

[2] "When evaluating cross-motions for summary judgment, the Court analyzes each individual motion on its own merits and thus views the facts on each motion in the light most favorable to the respective nonmovant." *Adega v. State Farm Fire & Cas. Ins. Co.*, No. 07-20696-CIV, 2009 WL 3387689, at *3 (S.D. Fla. Oct. 16, 2009).

4

resolution will affect the outcome of the lawsuit. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). As explained herein, there are no genuine disputes of material fact with respect to Plaintiff's NVRA claim and Plaintiff is entitled to summary judgment as a matter of law.

## ARGUMENT

Plaintiff GBM's NVRA claim raises a straightforward question of statutory interpretation. Under the NVRA, Alabama's State Form must "include a statement that . . . specifies each eligibility requirement (including citizenship)." 52 U.S.C. § 20508(b)(2); *see also* 52 U.S.C. § 20505(a)(2) (stating that "a State may develop and use a mail voter registration form that meets all of the criteria . . . [of] 52 U.S.C. § 20508(b)"). As this Court has noted, "'[s]pecify' is defined in BLACK'S LAW DICTIONARY as 'to mention specifically; to state in full and explicit terms; to point out; to tell or state precisely or in detail; to particularize; or to distinguish by words one thing from another.'" Doc. 178 at 21 (quoting BLACK'S LAW DICTIONARY (6th ed. 1990)). But Alabama does not state in full and explicit terms its eligibility requirement related to felony convictions. Under Alabama law, only certain felony convictions are disqualifying. And while the State Form mentions the existence of "disqualifying felonies," it does not specify. Accordingly, because Defendant Merrill has violated and will continue to violate the NVRA, this Court should grant Plaintiff GBM summary judgment on Count 18.

**I.      Alabama's Vague Reference to "Disqualifying Felonies" Does Not Satisfy the Plain Meaning of the Statute.**

"It is well established that, when the statutory language is plain, [federal courts] must enforce it according to its terms." *Jimenez v. Quarterman*, 555 U.S. 113, 118 (2009); *see also Hartford Underwriters Ins. Co. v. Union Planters Bank, N.A.*, 530 U.S. 1, 6 (2000); Doc. 178 at 20.  In other words, where the language of a statute "is 'unambiguous,' '[the] inquiry begins with the statutory text, and ends there as well.'" *Nat'l Ass'n of Mfrs. v. Dep't of Def.*, 138 S. Ct. 617,

631 (2018) (quoting *BedRoc Limited, LLC v. United States,* 541 U.S. 176, 183 (2004) (plurality opinion)). And "[i]n interpreting the language of a statute, [courts] generally give the words used their ordinary meaning." *In re Griffith*, 206 F.3d 1389, 1393 (11th Cir. 2000) (quoting *Moskal v. United States*, 498 U.S. 103, 108 (1990)) (internal quotation marks omitted); *see also Bostock v. Clayton County, Ga.*, 140 S.Ct. 1731, 1738-39, 1754 (2020).

The NVRA provides that any state-issued mail-in voter registration form used to register voters for federal elections "*shall* include a statement that . . . specifies each eligibility requirement (including citizenship)." 52 U.S.C. § 20508(b)(2)(A) (emphasis added). The meaning of this command—to *specify* eligibility requirements—is plain and unambiguous. It requires a State to not merely reference the existence of eligibility requirements—*i.e.*, "disqualifying felonies"—but inform the reader of the *specific* eligibility requirements that apply. When Congress uses the word "specify," it means "to name or state explicitly or in detail." *Kucana v. Holder*, 558 U.S. 233, 243 n.10 (2010) (quoting WEBSTER'S NEW COLLEGIATE DICTIONARY 1116 (1974)); *see also* Doc. 178 at 21 (collecting similar definitions of "specify" such as "to mention or name in a specific or explicit manner," and "to give a specific character or application to").

The State Form does not "specify" the voter eligibility requirement related to felony convictions in Alabama. Indeed, Defendants' position that the State Form satisfies the NVRA by obliquely referring to "disqualifying felon[ies]"—when in fact there are 46 *specific* disqualifying felonies and all other felonies are *not* disqualifying—is foreclosed by the plain meaning of the word "specify." As the Supreme Court has explained, "marginally ambiguous" language does not suffice to "specify" something. *Kucana,* 558 U.S. at 243 n.10 (internal quotation omitted). And "disqualifying felonies" is not a "marginally ambiguous" phrase; it is wholly ambiguous. A reader could not even begin to guess which felonies are disqualifying based on the State Form. Indeed,

6

given the lack of additional specifications, a reader could reasonably interpret the word "disqualifying" to be *describing* felonies as disqualifying rather than *modifying* the term felonies to indicate that only a discrete set of felonies is disqualifying. This is not a marginal point: most felony convictions in Alabama are not disqualifying, *see* Ala. Code § 17-3-30.1(c), and most people with felony convictions in Alabama are not disqualified due to their criminal records, *see* Ex. 8 (Smith Report) at 22 & tbl.1 (concluding that less than forty percent of people with felony convictions have disqualifying convictions).

Although the State Form provides people notice that there *is* an eligibility requirement generally related to felony status, it does not *specify* what that eligibility requirement is. This stands in contrast to the Form's specification of citizenship, residency, and age eligibility requirements. The Form specifies these requirements by providing that one must "[b]e a citizen of the United States," "[l]ive in Alabama," and "[b]e at least 18 years of age on or before election day." Ex. 7 (2019 State Form) at 1. The Form would violate the NVRA if it instead provided that one must "not be disqualified by reason of country of citizenship," "not be disqualified by reason of state of residency," or "not be of a disqualifying age." Like the current statement regarding disqualifying felonies, these statements would provide notice that citizenship, residency, and age eligibility requirements existed, but they would not specify what those requirements were. *See* Doc. 178 at 19 ("[T]he form does not merely state that there is a minimum age requirement, but instead specifies that to register to vote, a person must be at least 18 years of age on or before Election

Day.").[3] The NVRA requires that the actual eligibility requirements be specified,[4] not merely that the *subject matter* of those requirements be listed.

## II. The NVRA's Structure, Purpose, and Legislative History Support Its Plain Meaning.

The plain meaning of 52 U.S.C. § 20508(b)(2)(A) is reinforced by the structure, purpose, and legislative history of the statute. The mandate that States provide accurate and specific information to prospective voters about voter eligibility requirements runs throughout the NVRA. This fundamental prerequisite to a functional voter registration system is included in every provision related to the various avenues of registration established by the Act as well as in the general provision governing the responsibilities of states under the Act.

Like mail registrations, which are governed by 52 U.S.C. § 20508(b)(2)(A), voter registration applications completed through a State's motor vehicle agency must "include a statement that . . . states each eligibility requirement." 52 U.S.C. § 20504(c)(2)(C). And, again,

---

[3] Notably, before the State realized that the NVRA actually does use the term "specify," it suggested that the term's alleged absence was meaningful because if "Congress intended the forms to 'specify' eligibility requirements, Congress would have used a world like 'describe,' 'explain,' 'detail,' or 'specify.'" Doc. 95 at 21. In other words, the State's own definition of specify "supports the Plaintiffs' interpretation that specify means more than what the State has included on its form." Doc. 178 at 21.

[4] Despite Defendants' assertion to the contrary, this would not require the State to list every out-of-state or federal conviction that falls under the Felony Voter Disqualification Act's catchall provision. Alabama's voter eligibility requirements include a set of Alabama convictions that are disqualifying and a catchall provision to encompass convictions in other jurisdictions "which, if committed in [Alabama] would constitute" one of the specified convictions. Ala. Code. § 17-3-30.1(c)(48). That "aspect of the eligibility requirement [could] be placed on the form," Doc. 178 at 24, by including all of the named disqualifying convictions and this catchall provision as well. By doing so, the Form would "specify" the eligibility requirements outlined in Alabama law even if it did not "interpret" the requirement as applied to various factual scenarios. Voters would have all the information in the law available to assess their eligibility. In any event, Defendants' argument proves too much. If the catchall provision is not specific enough to advise voters of the eligibility requirements and allow them to assess their eligibility, it raises much more serious constitutional concerns.

with respect to voter registration at designated agencies, the forms used must "specif[y] each eligibility requirement (including citizenship.)" *Id.* § 20506(a)(6)(A)(i)(I); *see also id.* § 20506(a)(6)(A)(ii) (allowing use of an agency-created form so long as it meets the requirements of § 20508(b)). Finally, the NVRA restates in § 20507 the general requirement that States "inform" applicants that apply through the various means of registration of the "voter eligibility requirements." *Id.* § 20507(a)(5).

The reason for these exhaustive provisions is obvious on its face. In order to create a functional voter registration system that "promote[s] the exercise of [the fundamental] right [to vote]," *id.* § 20501(a)(2), potential voters need to be able to easily assess their eligibility when using the various avenues for registration provided by the NVRA. Providing ample access to voter registration—the primary goal of the NVRA's provisions—is relatively useless if voters using those avenues are not able to determine whether they are eligible to register.

The legislative history of the Act confirms the importance of these requirements to the overall scheme of facilitating several avenues of registration through mail-in forms and various public service agencies. In both the House and Senate reports for the NVRA, Congress noted the importance that every applicant "be advised of the voting requirements and the need to decline to register if he or she does not meet the requirements," and explained that "[t]he bill provides that all registration requirements should be set forth in the application to register to vote so that they will be readily available for each applicant to review during the application process." S. Rep. No. 103-6, at 24 (1993); H.R. Rep. No. 103-9, at 7-8 (1993) (similar).[5] The reports also noted the

---

[5] As both this legislative history and the provisions regarding registration at agencies indicate, merely including a link to the State's website does not satisfy the NVRA's standard. After all, someone seeking to register to vote while at a motor vehicle agency or other government agency may have no access to the Internet at the time, defeating the purpose of allowing registration in those locations. In any event, the NVRA was passed in 1993, before the Internet existed; it clearly

importance of the voter eligibility specifications to maintaining accurate lists of only eligible voters and preventing fraud. S. Rep. No. 103-6, at 11 ("Under the provisions of this bill, every application for voter registration must include a statement that sets forth all the requirements for eligibility, including citizenship, and requires that the applicant sign an attestation clause, under penalty of perjury, that the applicant meets those requirements."); H.R. Rep. No. 103-9, at 8 (similar).

Finally, and importantly in this case, both reports note that the requirement of specific eligibility requirements on all registration forms allows the potential voter to determine privately their eligibility from the face of the application without disclosing personal private information, such as past criminal convictions. H.R. Rep. No. 103-9, at 7-8 ("Since some of the reasons for declining to register to vote may involve matters of personal privacy, such as ineligibility under State law due to mental incompetence or a criminal conviction, an individual who declines to register to vote shall not be questioned as to the reasons for such action."); S. Rep. No. 103-6, at 24 (same).

Congress included the numerous provisions requiring states to specify eligibility requirements on all registration forms to ease voting access by allowing voters to assess their eligibility at the point of potential registration—whether it be at a voter registration drive, a motor vehicles department, or another public interest agency. But, simply put, the State Form does not allow people with past convictions to do that. The language on the State Form does not provide the key information necessary for a prospective voter with a past felony conviction to assess his or her eligibility at the point of registration. Defendants do not argue otherwise.

---

did not contemplate that states could specify eligibility requirements by pointing potential voters to a website instead of specifying the requirements on the registration forms themselves.

10

Congress indicated that another purpose of these provisions was to ensure that only eligible voters register to vote. By failing to provide enough information for voters to assess their eligibility, the Form also undermines this goal. The legislative history also indicates that Congress was sensitive to the privacy concerns associated with past convictions, and by requiring written qualifications, sought to avoid potential voters having to disclose that information to determine eligibility. On this count, too, the Form also fails.

These provisions also serve another function. They ensure that agencies that do not focus on elections can fulfill their own voter registration duties under the NVRA. The NVRA strictly and unambiguously requires that agencies conducting voter registration provide "the same degree of assistance with regard to the completion of the registration application form as is provided by the office with regard to the completion of its own forms." 52 U.S.C. § 20506(a)(6)(C); *see also United States v. Louisiana*, 196 F. Supp. 3d 612, 673 (M.D. La. 2016) ("[I]n light of the NVRA's plainness, this Court reads Section 7 to prescribe strict compliance with its commands, finding no support for any other standard in the NVRA's plain and unambiguous language."), *vacated because of settlement*, No. 11-CV-470, 2017 WL 4118969 (M.D. La. Aug. 21, 2017).

As the statements of representatives of several such agencies make clear, however, the Alabama Secretary of State has provided no guidance to agencies on how to assess whether a prospective voter is disqualified due to felony conviction. *See* Ex. 9 (Deposition of Chief Deena Pregno, Alabama Law Enforcement Agency) at 41:9-11 ("We did not receive any information from the Secretary of State's Office."); *see also* Ex. 10 (Medicaid Resp. to Subpoena) at 2 (finding that the agency had "no responsive documents" regarding what crimes are disqualifying for voter registration). As a result, agencies do not assist potential voters with past convictions in assessing their eligibility. Ex. 9 at 27:9-11 ("We tell them we don't have that information [about voter

eligibility], they need to contact the voter registration office."). This does not meet the NVRA standard of providing "the same degree of assistance . . . as is provided by the office with regard to the completion of its own forms." 52 U.S.C. § 20506(a)(6)(C). If the Form itself provided adequate eligibility information, this shortcoming in NVRA compliance would be largely resolved.

Finally, the current instructions on the State Form undermine the overall goals of the NVRA:

> (1) to establish procedures that will increase the number of eligible citizens who register to vote in elections for Federal office;
> (2) to make it possible for Federal, State, and local governments to implement this chapter in a manner that enhances the participation of eligible citizens as voters in elections for Federal office;
> (3) to protect the integrity of the electoral process; and
> (4) to ensure that accurate and current voter registration rolls are maintained.

52 U.S.C. § 20501(b). By providing ambiguous and incomplete information about eligibility requirements, the instructions will both dissuade eligible voters from registering and undermine the effectiveness of the perjury attestation as a means to ensure that ineligible individuals are not registered.

## CONCLUSION

Plaintiff's NVRA claim raises a straightforward question of statutory interpretation. There are no disputed facts material to that question. The NVRA's requirement is plain and unambiguous. Alabama must specify its voter eligibility requirements on its voter registration form, and its oblique reference to "disqualifying felonies" does not do so. This Court should grant Plaintiff GBM summary judgment on Count 18.

Respectfully submitted,

/s/ *Mark P. Gaber*
Mark P. Gaber (DC Bar: 988077)
Danielle Lang (CA Bar: 304450)
J. Gerald Hebert (VA Bar: 38432)

Molly Danahy (DC Bar No. 1643411)
Campaign Legal Center
1101 14th St. NW, Ste. 400
Washington, DC 20005
(202) 736-2200
dlang@campaignlegalcenter.org
ghebert@campaignlegalcenter.org
mgaber@campaignlegalcenter.org
mdanahy@campaignlegalcenter.org

J. Mitch McGuire (AL Bar: ASB-8317-S69M)
McGuire & Associates LLC
31 Clayton Street
Montgomery, AL 36104
(334) 517-1000
jmcguire@mandabusinesslaw.com

James U. Blacksher (AL Bar: ASB-2381-S82J)
P.O. Box 636
Birmingham, AL 35201
(205) 591-7238
jblacksher@ns.sympatico.ca

Jessica Ring Amunson (DC Bar: 497223)
Jenner & Block LLP
1099 New York Ave. NW, Suite 900
Washington, DC 20001
(202) 736-6000
jamunson@jenner.com

Jason Hipp (NY Bar: 5232277)
Jenner & Block LLP
919 Third Avenue
New York, NY 10022
(212) 407-1784
jhipp@jenner.com

Pamela Karlan (NY Bar: 2116994)
Stanford Law School
559 Nathan Abbott Way
Stanford, CA 94305
(650) 725-4851
karlan@stanford.edu

Aderson B. Francois (DC Bar: 498544)
Institute for Public Representation
Georgetown University Law Center
600 New Jersey Ave. NW
Washington, DC 20001
(202) 662-6721
abf48@georgetown.edu

Armand Derfner (SC Bar: 1650)
Derfner & Altman
575 King Street, Suite B
Charleston, SC 29403
(843) 723-9804
aderfner@derfneraltman.com

*Counsel for Plaintiffs*

## CERTIFICATE OF SERVICE

I hereby certify that, on September 2, 2020, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to all counsel of record as listed below.

/s/ *Mark P. Gaber*
Mark P. Gaber
*Counsel for Plaintiffs*

James William Davis
State of Alabama
Office of the Attorney General
P O Box 300152
Montgomery, AL 36130-0152
334-353-1356
Fax: 334-353-8440
Email: jimdavis@ago.state.al.us

Laura Elizabeth Howell
Office of the Alabama Attorney General
P O Box 300152
Montgomery, AL 36130
334-353-1018
Fax: 334-353-8440
Email: lhowell@ago.state.al.us

Misty Shawn Fairbanks Messick
Office of the Attorney General
P O Box 300152
Montgomery, AL 36130-0152
334-353-8674
Fax: 334-353-8440
Email: mmessick@ago.state.al.us

Winfield James Sinclair
Office of the Attorney General
P o Box 300152
Montgomery, AL 36130
334-242-7300
Fax: 334-353-8440
Email: wsinclair@ago.state.al.us

*Counsel for Defendants*